Richard S. Falcone, Bar No. 95265
PAYNE & FEARS LLP
Attorneys at Law
One Embarcadero Center, Suite 2300
San Francisco, CA 94111
Telephone: (415) 398-7860
Facsimile: (415) 398-7863
rsf@paynefears.com

Attorneys for Defendants
QUALMARK CORPORATION and
QUALMARK LING CORPORATION

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| DATA PHYSICS CORPORATION, a California Corporation,<br><br>              Plaintiff,<br><br>     v.<br><br>QUALMARK CORPORATION, a Colorado Corporation; QUALMARK LING CORPORATION, a Colorado Corporation; and DOES 1 - 30, inclusive,<br><br>              Defendants. | CASE NO. C08 01717 MMC<br><br>**DECLARATION OF BENJAMIN B. LIEB IN SUPPORT OF DEFENDANTS QUALMARK CORPORATION'S AND QUALMARK LING CORPORATION'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE DISTRICT OF COLORADO**<br><br>Hearing Date:     May 9, 2008<br>Time:               9:00 a.m.<br>Courtroom:       7, 19th Floor<br>Judge:             Hon. Maxine M. Chesney |

I, BENJAMIN B. LIEB, hereby declare as follows:

1.      I am over the age of 18.  I have personal knowledge of the facts set forth below and, if called upon to do so, could and would competently testify thereto.

2.      I am a patent attorney and a shareholder of the law firm of Sheridan Ross P.C., located in Denver, Colorado.  Sheridan Ross currently is outside counsel of record to Qualmark Corporation and Qualmark Ling Corporation, which is adverse to Data Physics Corporation, in a lawsuit currently pending in United States District Court for the District of Colorado, Case No. 1:07-cv-02665-REB-KLM (the "Colorado Action").

PAYNE & FEARS LLP
ATTORNEYS AT LAW
ONE EMBARCADERO CENTER, SUITE 2300
SAN FRANCISCO, CA 94111
(415) 398-7860

3.    A true and correct copy of the Complaint and exhibits filed by Qualmark Corporation and Qualmark Ling Corporation on December 21, 2007 in the Colorado Action is attached hereto as Exhibit 1.

4.    A true and correct copy of the Answer filed by Data Physics Corporation on February 4, 2008 in the Colorado Action is attached hereto as Exhibit 2.

5.    A true and correct copy of the Order Setting Scheduling/Planning Conference entered on January 2, 2008 in the Colorado Action is attached hereto as Exhibit 3.

6.    A true and correct copy of the Motion to Transfer Venue filed by Data Physics Corporation on March 19, 2008 in the Colorado Action is attached hereto as Exhibit 4.

7.    A true and accurate copy of the Order staying Data Physics Corporation's Opposition filed with the Trademark Trial and Appeal Board entered on March 5, 2008 is attached hereto as Exhibit 5.

8.    A true and correct copy of the Complaint filed by Data Physics Corporation on February 28, 2008 in Superior Court of California, County of Santa Clara, San Jose Division, Case No. 1:08-cv-106987 is attached hereto as Exhibit 6.

Executed this 4th day of April 2008, in Denver, Colorado.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.



By:_____
                    BENJAMIN B. LIEB

392287.1

PAYNE & FEARS LLP
ATTORNEYS AT LAW
ONE EMBARCADERO CENTER, SUITE 2300
SAN FRANCISCO, CA 94111
(415) 398-7860

2

# PROOF OF SERVICE

*Data Physics Corporation v. Qualmark Corporation et al.*
United States District Court for the Northern District of California

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

I am employed in the County of San Francisco, State of California. I am over the age of 18 years and am not a party to the within action; my business address is One Embarcadero Center, Suite 2300, San Francisco, California 94111.

On April 4, 2008, I served the following document(s) described as

**DECLARATION OF BENJAMIN B. LIEB IN SUPPORT OF DEFENDANTS QUALMARK CORPORATION'S AND QUALMARK LING CORPORATION'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE DISTRICT OF COLORADO**

on interested parties in this action by placing a true copy thereof enclosed in sealed envelopes as follows:

Robert W. Payne                     Attorneys for Data Physics Corporation
Alan E. Engle
Nicole A. Smith
LARIVIERE, GRUBMAN & PAYNE LLP
19 Upper Ragsdale Drive
Monterey, CA  93942-3140

☐ **(BY U.S. Mail)** I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter is more than one day after date of deposit for mailing in affidavit. I deposited such envelope(s) with postage thereon fully prepaid to be placed in the United States Mail at San Francisco, California.

☐ **(By Personal Service)** I delivered by hand on the interested parties in this action by placing the above mentioned document(s) thereof in envelope addressed to the office of the addressee(s) listed above or on attached sheet.

☐ **(By Facsimile)** I served a true and correct copy by facsimile pursuant to C.C.P. 1013(e), calling for agreement and written confirmation of that agreement or court order, to the number(s) listed above or on attached sheet. Said transmission was reported complete and without error.

☒ **(By Overnight Courier)** served the above referenced document(s) enclosed in a sealed package, for collection by Overnite Express, and for delivery marked for next day delivery in the ordinary course of business, addressed to the office of the addressee(s) listed above or on attached sheet.

☐ **(By E-Mail)** I transmitted a copy of the foregoing documents(s) via e-mail to the addressee(s).

☒ **(FEDERAL)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. Executed on April 4, 2008, at San Francisco, California.

*Bliss Birchett*
BLISS BIRCHETT

PAYNE & FEARS LLP
ATTORNEYS AT LAW
ONE EMBARCADERO CENTER, SUITE 2300
SAN FRANCISCO, CA 94111
(415) 398-7860

392372.1

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

QUALMARK CORPORATION, and
QUALMARK LING CORPORATION,
Both Colorado corporations,

     Plaintiffs,

v.

DATA PHYSICS CORPORATION, a California corporation,

     Defendant.

---

### COMPLAINT AND JURY DEMAND

---

For its Complaint against Defendant Data Physics Corporation ("DPC"), Plaintiffs QualMark Corporation ("QC") and QualMark Ling Corporation ("QLC"), state and allege:

### I.  THE PARTIES AND DISPUTE OVERVIEW

1.    QC is a Colorado corporation having a principal place of business at 4580 Florence Street, Denver, Colorado 80238. QC was founded in 1991 as a specialty manufacturer of equipment used to test the reliability, quality, dependability and longevity of devices built by others. QC is now a world leader in designing, manufacturing and marketing such equipment. Information concerning specific products offered by QC can be found on its website located at www.qualmark.com, selected pages of which are attached as Exhibit 1 and which are incorporated herein by reference.

2.     SatCon Power Systems, Inc., a division of SatCon Technology Corporation (NASDAQ: SATC) ("SatCon"), operated a business unit under the name LING Electronics. That business unit sold electronic shaker and related testing equipment under the name LING for several years. QC purchased from SatCon the LING Electronics operating unit in December 2005, being assigned the LING and LING Electronics trademarks and service marks. QC continues to sell electronic shaker and related testing equipment under LING and LING ELECTRONICS nationally and internationally. Information concerning SatCon and acquisition of its LING Electronics business unit by QC can be found on the SatCon website located at www.satcon.com, selected pages of which are attached as Exhibit 2 and which are incorporated by reference.

3.     QLC is a Colorado corporation located at 4580 Florence Street, Denver, Colorado 80238. QLC is a wholly-owned subsidiary of QC formed to facilitate the transfer of SatCon's LING Electronics assets to QC.

4.     DPC is a California corporation having a place of business at 1741 Technology Drive, Suite 260, San Jose, California 95110. DPC sells a variety of products, including equipment used to test the reliability, quality, dependability and longevity of devices built by others. For several years, DPC purchased for resale electronic shaker equipment branded with the name LING and LING ELECTRONICS from SatCon. Upon information and belief, DPC resold that equipment under a distribution agreement it had with SatCon. Upon information and belief, DPC did not acquire any rights in and to the marks LING or LING ELECTRONICS through its relationship with SatCon. DPC nevertheless continues to sell shaker testing and related equipment under the marks LING and LING ELECTRONICS. Information concerning

these products and DPC's sales channels is available on DPC's website located at www.dataphysics.com, several relevant pages of which are attached as Exhibit 3 and incorporated herein.

## II. JURISDICTION AND VENUE

5.      The present action includes claims for a declaration of trademark ownership, federal and common law trademark infringement and other related claims. The Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201-2202, and 15 U.S.C. § 1121.

6.      DPC does business in and committed tortious acts in this judicial district and thus is subject to personal jurisdiction in this judicial district.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## III. RELEVANT FACTS

8.      Upon information and belief, entrepreneur James Ling founded an electronic contracting business in Dallas, Texas in 1947. That business operated under the name Ling Electronic Company.

9.      Upon information and belief, Ling Electronic Company purchased United Electronics of Newark, New Jersey and Caledyne Company of Winchester, Massachusetts in about 1958. Upon information and belief, these three companies were subsequently merged to form LING Electronics. Upon information and belief, LING Electronics designed and manufactured vibration test equipment, known in the industry as ED shakers, which were sold to companies throughout the United States and the world.

3

10.     Upon information and belief, LING Electronics merged with Altec, a leading acoustic company, in 1959. The new company was registered in Delaware and operated under the name LING-Altec. Upon information and belief, that company continued to sell ED shakers and developed, manufactured and sold other related equipment all under the name LING and through a division known as LING Electronics.

11.     Upon information and belief, LING-Altec merged with Temco and Vought (defense contractors) in about 1960, creating a new company named LTV LING Altec. Apparently, the new company moved to Anaheim, California and continued to manufacture and sell existing products, as well as introduced a variety of new products to industry. Upon information and belief, that company continued to sell ED shakers and related test equipment throughout the United States and the world under the trademark LING through its LING Electronics operating division.

12.     Upon information and belief, LTV LING Altec began selling corporate assets in 1972. The LING Electronics assets were then, upon information and belief, specifically assigned to a newly formed company known as Altec Corporation. Altec Corporation did well for more than a decade, but in 1983, filed for Chapter 11 bankruptcy. Upon information and belief, Altec Corporation then sold its LING Electronics division and related assets to Mechanical Technology, Inc. ("MTI").

13.     Upon information and belief, MTI continued to operate the LING Electronics division, selling ED shakers and related test equipment to entities located throughout the United States and the world under the trademark LING. MTI sold its LING Electronics operating unit, specifically including its LING trademarks, to SatCon in 1999.

4

14.    Upon information and belief, SatCon continued operating the LING Electronics division, selling ED shakers and related test equipment under the LING trademark for several years.

15.    DPC filed with the California Secretary of State an application to incorporate "Ling Electronics Corporation" as a wholly-owned subsidiary on September 23, 2003.

16.    Upon information and belief, SatCon entered into a world sales agent and distribution agreement with DPC in October 2003. Upon information and belief, under that agreement SatCon manufactured ED shakers and related testing equipment, providing that equipment to DPC for resale. The agency/distribution agreement between SatCon and DPC ended in October 2005.

17.    On December 13, 2005, QLC entered an Asset Purchase Agreement with SatCon. Pursuant to that Agreement, QLC purchased SatCon's LING Electronics operating unit, specifically including the trademarks LING and LING ELECTRONICS and related logos. Shortly thereafter, QC began selling ED shakers and related test equipment under the marks LING and LING ELECTRONICS and with the approval of QLC. QC has continued to sell such products under these marks ever since.

18.    QC filed for and was granted a California trademark registration for the mark LING ELECTRONICS to be used on or in connection with ED shakers and amplifiers for testing electronics and electromechanical devices. The Registration was issued in March of 2006 and remains valid and enforceable until March 2016. A copy of that Registration is attached as Exhibit 4 and is incorporated by reference.

19.     QLC filed an application to register LING for electrical and scientific apparatus, namely, a vibration table and control apparatus for use in testing industrial, electronic and electromechanical components and part, ED shakers and amplifiers, vibration and environmental test equipment and components and parts therefor with the United States Patent and Trademark Office ("USPTO") on March 14, 2006. A copy of that application is attached as Exhibit 5 and is incorporated by reference. The application was subsequently allowed by the USPTO and published for opposition. DPC filed several Notices for Extension of Time to Oppose. Copies of these Notices are attached as Exhibit 6 and are incorporated by reference.

20.     Counsel for Plaintiffs subsequently contacted counsel for DPC by letter dated August 29, 2007, a copy of which is attached as Exhibit 7 and which is incorporated by reference. In that letter, Plaintiffs relevantly stated:

> QualMark and its predecessors-in-interest have claimed the trademarks LING and LING ELECTRONICS, in addition to stylized versions of these marks, (collectively, the "LING trademarks"), and used them in conjunction with the sale of their shaker products since the 1940s. QualMark has a California registration on the mark LING ELECTRONICS . . . and, as you know, has applied for federal registration of the mark LING. . . . Data Physics' use of these marks, as well as its use of a stylized version of the LING ELECTRONICS mark, also belonging to QualMark, constitutes federal and state trademark infringement under the Lanham Act . . . and under the California Business and Professional Code §§ 14320, *et seq.*
>
> . . . .
> As you know, Data Physics formerly distributed LING shakers manufactured by SatCon . . . , QualMark's predecessor-in-interest. It would appear that when that relationship dissolved, Data Physics continued to use the LING trademarks with shakers of other origins. These actions deceived customers and took unfair advantage of the previous relationship with SatCon. It would be hard to conceive of a more nefarious form of trademark infringement.
> . . . .
> In view of the foregoing, we demand that Data Physics immediately take the following actions:

6

1.  Publish a retraction in every online or print publication in which Data Physics has used any of the LING trademarks (including but not limited to Data Physics' home page), properly attributing trademark ownership to QualMark.

2.  Notify all customers and potential customers with whom Data Physics has used any of the LING trademarks that such trademarks are owned by QualMark, and that Data Physics does not manufacture or sell LING products.

3.  Refrain from any further representation stating or implying that any LING trademark is owned or may be used by Data Physics Corporation or any person other than QualMark.

4.  Identify and return to QualMark all intellectual property of SatCon and QualMark (including all copies thereof) in the possession of Data Physics, or in the possession of third parties as a result of actions by Data Physics.

5.  Cease the marketing and sale of any products incorporating any intellectual property of SatCon or QualMark.

21.     By letter dated September 9, 2007, a copy of which is attached as Exhibit 8 and which is incorporated by reference, counsel for DPC responded.  There, counsel requested specific information concerning Plaintiffs' ownership of the LING and LING ELECTRONICS trademarks and suggested that DPC had the right to use LING on and in connection with ED shakers and related test equipment based upon its filing of Articles of Incorporation for LING Electronics Incorporated.

22.     Plaintiffs responded by letter of October 12, 2007, providing requested information and rebutting positions asserted by DPC.  A copy of that letter is attached as Exhibit 9 and is incorporated by reference.  Apparently, DPC did not accept Plaintiffs' position, choosing to file a Notice of Opposition with the Trademark Trial and Appeal Board ("TTAB") of the USPTO, seeking to preclude issuance of QLC's federal trademark application for LING.

7

23.    In its Notice, DPC claimed that it would be damaged by registration of LING on the following grounds:

Data Physics, since 2003, has owned a subsidiary California corporation named LING Electronics Corporation, [which allegedly] sells and provides services for various different types of vibration testing equipment including shakers [under the name LING].

. . . .

The term "ling" as applied to shakers or to services for shakers is primarily merely the surname of the founder, i.e., James J. (Jimmy) Ling, of at least one of QualMark's predecessor(s) in interest LING Electronics Company and/or LING Electronics, Inc., and consequently 15 U.S.C. § 1052(e)(4) bars Applicant QualMark's registration of the surname "ling" as a trademark for shakers or service mark for shaker services.

. . . .

The mark sought to be registered, LING, has lost its significance as an indication of source for the sales of shakers and/or as an indication of source for providing services for shakers due to Applicant QualMark's predecessor(s) in interest failing for many years in the past to:

(a) exercise exclusive rights in the term "ling" standing alone, when applied to shakers and/or services for shakers; and

(b) control the quality of:

(i) shakers being sold by others under trade name(s) which include the term "Ling"; and/or

(ii) shaker repair, maintenance and/or installation services being provided by others under trade name(s) which include the term "Ling"; and/or

(c) on information and belief, oppose use of the term "Ling" in connection with:

(i) the sale of shakers by competitor(s) of Applicant's predecessor(s) in interest; and/or

(ii) providing shaker repair, maintenance and/or installation services by competitor(s) of Applicant's predecessor(s) in interest; and

8

therefore, pursuant to 15 U.S.C. § 1127, upon information and belief, Applicant QualMark's predecessor(s) in interest have abandoned exclusive rights in the term, Ling, for the sales of shakers and/or for providing services for shakers.

A copy of the Notice of Opposition is attached as Exhibit 10 and is incorporated by reference.

24.    Through years of uninterrupted use of the marks LING and LING ELECTRONICS on or in connection with ED shakers and related testing equipment, Plaintiffs' predecessors-in-interest developed strong common law trademark rights in and to those marks. Indeed, the marks have acquired strong secondary meaning as to source and affiliation for ED shaker and related testing equipment.    Further, upon information and belief, Plaintiffs' predecessors-in-interest did practice adequate quality control of products and did police products and services offered under the name LING to maintain protectable rights in and to the mark. Plaintiffs thus own protectable trademark and service mark rights in and to LING and LING ELECTRONICS for use on or in connection with ED shakers and amplifiers, vibration and environmental testing equipment, components and parts therefor and services to be provided to others relating to such equipment.

25.    DPC has and continues to use the LING and LING ELECTRONICS trademarks without authorization from Plaintiffs and with knowledge of Plaintiffs' preexisting rights in and to those marks.    Upon information and belief, DPC purposely chose to identify itself with Plaintiffs by use of their trademarks to more easily reach Plaintiffs' established customers, to penetrate their market and to otherwise free ride on Plaintiffs' business values and goodwill. DPC's misappropriation and use of Plaintiffs' goodwill and reputation, by unauthorized use of Plaintiffs' trademarks, trade names, etc., was simply to provide DPC with a proven identity and to make the sale of its ED shaker and related test equipment easier.

9

26.    DPC's actions are likely to and have caused actual consumer confusion or mistake and/or have deceived the public as to the source and/or quality of products and services offered under LING and LING ELECTRONICS.

27.    DPC's continued unauthorized use of Plaintiffs' trademarks, trade names, etc., will deceive the relevant purchasing public as to the source, origin or affiliation of DPC's products which are being sold under and in connection with Plaintiffs' property.  DPC's actions have been motivated exclusively by financial gain, have been taken with full knowledge of Plaintiffs' superior legal rights and/or without regard to the public policy right of consumers to be free from confusion as to the source or origin of products and services.  DPC's continued infringing use of Plaintiffs' property evidences a wrongful intent to trade upon Plaintiffs' goodwill and reputation.

28.    DPC has been put on notice of its infringing and improper use of Plaintiffs' property as early as August 2007.  Despite actual notice, DPC has continued to willfully infringe and impinge upon Plaintiffs' superior rights.

## IV.  FIRST CLAIM FOR RELIEF
### (Declaration of Trademark Ownership)

29.    Plaintiffs incorporate and reallege paragraphs 1-28 as though fully set forth herein.

30.    DPC disputes Plaintiffs' ownership of the LING and LING ELECTRONICS trademarks.

31.    Plaintiffs request that the Court resolve that trademark ownership dispute by declaring that Plaintiffs are the true and correct owners of the LING and LING ELETRONICS trademarks.

Exhibit 1, Page 10

## V.  SECOND CLAIM FOR RELIEF
### (Federal Trademark Infringement)

32.     Plaintiffs incorporate and reallege paragraphs 1-31 as though fully set forth herein.

33.     DPC promoted and sold and continues to promote and sell in interstate commerce ED shaker and related testing equipment under Plaintiffs' LING and LING ELECTRONICS trademarks.  In so doing, DPC has falsely described and misrepresented its goods to the consuming public.

34.     DPC's actions have created a likelihood of consumer confusion as to the affiliation, connection or association of themselves with Plaintiffs and as to the origin, sponsorship or approval of DPC's goods with or by Plaintiffs.

35.     DPC's unauthorized use of Plaintiffs' LING and LING ELECTRONICS trademarks in connection with the marketing and sale of competing ED shakers and related equipment is a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

36.     DPC adopted and continues to use Plaintiffs' LING and LING ELECTRONICS trademark with full knowledge of Plaintiffs' superior rights, but without their authorization. DPC's tortious acts constitute willful and deliberate trademark infringement under 15 U.S.C. § 1114 and are in willful and wanton disregard of Plaintiffs' established and superior rights.

37.     As a result of DPC's unlawful actions, Plaintiffs have suffered commercial harm.

38.     Plaintiffs have also been, and continue to be, harmed irreparably by DPC's unlawful actions and Plaintiffs have no adequate remedy at law.

## VI. THIRD CLAIM FOR RELIEF
### (Common Law Trademark Infringement)

11

39.     Plaintiffs incorporate and reallege paragraphs 1-38 as though fully set forth herein.

40.     DPC's actions as described above have caused and are likely to cause confusion with Plaintiffs' established and superior trademark rights in and to LING and LING ELECTRONICS and otherwise unfairly compete with Plaintiffs.     As such, DPC's actions constitute unfair competition and trademark infringement under Colorado common law.

41.     DPC's unlawful actions were committed with willful and wanton disregard for Plaintiffs' superior rights.

42.     As a result of DPC's unlawful actions, Plaintiffs have suffered commercial harm.

43.     Plaintiffs have also been, and continue to be, harmed irreparably by DPC's unlawful actions and Plaintiffs have no adequate remedy at law.

### VII.     FOURTH CLAIM FOR RELIEF
### (Violation of the CCPA)

44.     Plaintiffs incorporate and reallege paragraphs 1-43 as though fully set forth herein.

45.     By its actions described above, DPC has engaged in deceptive trade practices, as defined by the Colorado Consumer Protection Act ("CCPA"), C.R.S. §§ 6-1-105.

46.     DPC's wrongful actions were committed with willful and wanton disregard of the laws of the state of Colorado and Plaintiffs' superior rights.

47.     As a result of DPC's unlawful actions, Plaintiffs have suffered commercial harm.

48.     Plaintiffs have been and will continue to be harmed irreparably by DPC's unlawful actions and Plaintiffs have no adequate remedy at law.

12

## VIII.   FIFTH CLAIM FOR RELIEF
### (Misappropriation of Business Values)

49.    Plaintiffs incorporate and reallege paragraphs 1-48 as though fully set forth herein.

50.    Plaintiffs have, through the expenditure of time, effort and money, acquired substantial business values in and to LING and LING ELECTRONICS.  These names are thus protectable business values of Plaintiffs.

51.    DPC has taken, without compensation to Plaintiffs, one or more of their protectable business values.

52.    As a result of DPC's unlawful actions, Plaintiffs have suffered commercial harm.

53.    DPC's wrongful actions were committed with willful and wanton disregard of the laws of the State of Colorado.

## IX. SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment)

54.    Plaintiffs incorporate and reallege paragraphs 1-53 as though fully set forth herein.

55.    DPC has received benefits at Plaintiffs' expense by marketing ED shaker and related testing equipment under the names LING and LING ELECTRONICS.

56.    Plaintiffs have suffered damages as a result of DPC's conduct and are entitled to, *inter alia*, actual economic damages and other consequential damages and interest for DPC's unjust enrichment, all in amounts to be proven at trial.

57.    It would be inequitable for DPC to retain the benefits conferred by Plaintiffs to DPC without payment.

13

## X.  SEVENTH CLAIM FOR RELIEF
### (Infringement of California Trademark Registration)

58.     Plaintiffs incorporate and reallege paragraphs 1-57 as though fully set forth herein.

59.     QC owns a valid California trademark registration for the mark LING ELECTRONICS.

60.     DPC has willfully infringed upon QC's California trademark registration by unauthorized use of the mark LING ELECTRONICS and thus causing marketplace confusion.

61.     As a result of DPC's unlawful actions, QC has suffered commercial harm.

62.     DPC's wrongful actions were committed with willful and wanton disregard of the laws of the State of California or the preexisting rights of QC.

63.     QC has been and will continue to be harmed irreparably by DPC's unlawful actions and has no adequate remedy at law.

## XI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment in its favor and against DPC as follows:

A.     That the Court declare Plaintiffs to be the true, proper and only owners of protectable trademark and service mark rights in and to the marks LING and LING ELECTRONICS for use on or in connection with ED shaker and related testing equipment, parts therefore and services related thereto;

B.     That DPC, its agents, servants, officers, directors, employees, attorneys, privies, representatives, successors, assigns and parent and subsidiary corporations or other related entities, and any and all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

14

(1)     any further use of Plaintiffs' LING and LING ELECTRONICS trademarks or any other mark which is confusingly similar thereto in connection with the advertising or sale of electronic shaker testing and related equipment;

(2)     directly or indirectly using Plaintiffs' LING and LING ELECTRONICS trademarks or any confusingly similar mark or material, either alone or in combination with other marks, symbols or trade dress;

(3)     any further use of Plaintiffs' LING and LING ELECTRONICS trademarks or any element thereof, in connection with the marketing or sale of electronic shaker testing and related equipment;

(4)     performing any action or using any name, mark, symbol, imagery or slogan which is likely to cause confusion or mistake, or to deceive or otherwise mislead the trade and/or the public into believing that Plaintiffs and DPC are one and the same, or in some way connected, or that Plaintiffs are the sponsor of DPC, or that DPC is in some manner affiliated or associated with, or under the supervision or control of, Plaintiffs, or that DPC's services originate with Plaintiffs, or are connected or offered with the approval, consent, authorization, or under the supervision of Plaintiffs;

(5)     manufacturing, marketing or selling any product or material containing or utilizing Plaintiffs' intellectual property and/or business values; or

(6)     any other conduct constituting unfair competition with or misappropriation of Plaintiffs' property or values;

C.     That DPC be ordered to deliver up to Plaintiffs for destruction, or certify destruction of, all products that contain Plaintiffs' LING and LING ELECTRONICS trademarks

15

used in connection with the manufacture, marketing or sale of electronic shaker testing and related equipment;

      D.     That DPC be ordered to file with the Court and serve on Plaintiffs, within thirty (30) days after the entry of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which DPC have complied with any ordered injunction;

      E.     That DPC pay Plaintiffs a sum sufficient to cover the cost of corrective advertising necessary to alleviate any existing confusion resulting from DPC's unauthorized use of Plaintiffs' LING and LING ELECTRONICS trademarks;

      F.     That Plaintiffs be awarded damages in an amount to be determined at trial;

      G.     That the Court declare Plaintiffs to be the sole and exclusive owners of the LING and LING ELECTRONICS trademarks;

      H.     That Plaintiffs be awarded treble actual damages and attorneys' fees;

      I.     That Plaintiffs be awarded pre-judgment and post-judgment interest;

      J.     That Plaintiffs be awarded costs and expenses incurred in prosecuting this action, including expert witness fees and attorney's fees; and

      K.     That such other and further preliminary and permanent relief be awarded to Plaintiffs as the Court deems appropriate.

## XII.    DEMAND FOR JURY

Plaintiffs requests a jury on all issues so triable.

Exhibit 1, Page 16

Respectfully submitted,

Dated:  December 21, 2007       By:  s/ Robert R. Brunelli

           Robert R. Brunelli
              rbrunelli@sheridanross.com
           Sabrina C. Stavish
              sstavish@sheridanross.com
           Paul S. Cha
              pcha@sheridanross.com
           SHERIDAN ROSS P.C.
           1560 Broadway, Suite 1200
           Denver, Colorado  80202-5141
           Telephone:   303-863-9700
           Facsimile:    303-863-0223
           E-mail:        litigation@sheridanross.com

           ATTORNEYS FOR PLAINTIFFS
           QUALMARK CORPORATION and QUALMARK
           LING CORPORATION

Case 3:08-cv-01717-MMC    Document 9-2    Filed 04/04/2008    Page 19 of 72

HALT/HASS Chambers & Electrodynamic shakers Case 3:07-cv-02663-REB Document 1-2    Filed 12/21/2007    Page 1 of 8 Page 1 of 1



## Vibration & Temperature Testing Equipment and Services
*Leading Products In The Industry*





# HALT/HASS Chambers     Electrodynamic Shakers

Qualmark is awarded the Governor's Award for Ex

**Governor's Release**





Qualmark Acquires ACG 2004

Qualmark Acquires Ling Electronics 2006

Qualmark Acquires Dorritron 2007

*Qualmark helps the world's top manufacturing companies increase profits and market share, by improving both product reliability and time-to-market. Qualmark is the market leader in accelerated reliability solutions for design and manufacturing, with a worldwide installed base of over 6500 systems. Qualmark is profitably growing organically and through strategic acquisitions.*

**Keep Pace With Technology Advancements ----- Find Product Failures**
**Reduce Your Warranty Costs ----- Improve Reliability**

-------------------- ©2007 Qualmark --------------------

Exhibit 1, Page 18



## ABOUT US -



Investors
Leadership
Partners

### Company Background/History

Qualmark Corporation was founded in 1991 as a specialty manufacturer of accelerated stress equipment. Qualmark's products and services are designed and refined as a result of continual and extensive research and development. Qualmark has since evolved into a full service, global organization offering:

- HALT/HASS Systems and Electrodynamic Shakers
- Slip tables
- Components, Parts, Repair and Services
- Test Lab Services
- Training Programs
- Project Management

Today, more than ever, testing programs are driven by market demand to provide reliable products whose timely releases keep pace with technology advancements. Qualmark's continued growth, both organically and through acquisition, reflects our commitment to offer relevant solutions for customers caught in an increasingly competitive marketplace.

**HALT HASS Systems**
Our HALT/HASS equipment is the best-selling line in the world and allows design labs to ensure robust product designs and production-line managers to eliminate all failure modes before products are shipped. Qualmark also offers a rich array of training and consulting services in the areas of accelerated testing and product design improvement. *With more than 4,000 tests conducted in Qualmark's lab facilities, and installation and maintenance of over 700 chambers in 36 countries, Qualmark has earned the position as the Knowledge Leader in Accelerated Testing Methods.*

**Electrodynamic Shakers - Ling Electronics & ACG**
Ling Electronics is one of the nation's most experienced manufacturers of vibration, shock test systems and fixtures. There are over 4,000 electrodynamic shaker systems installed worldwide by Ling and its subsidiaries. Serving an international cross-section of governmental, industrial and scientific markets, Ling has been a leading manufacturer of Vibration and Acoustic Testing Systems for over 45 years.



- ***Ling Electronics***, a Qualmark Company, manufactures standard electrodynamic vibration test systems and provides Qualmark with the unique capability to also support standard MIL

SPEC and qualification vibration testing requirements.

- *ACG Dynamics*, also a Qualmark Company, can service, rebuild and refurbish all domestic brands of electrodynamic shaker vibration test systems. This combination of support for our customers is unmatched by any other competitor.
- *Kimball Industries* has been in the business of designing and producing slip tables, load supports, fixtures and head-expanders for nearly 45 years. Their products round out the Ling and ACG ED shakers, giving our customers complete ED testing packages from a single vendor.
- *Derritron* amplifiers and low-force shakers are known throughout the world as being best-in-class. In April of 2007, these product lines joined those of the other Qualmark companies under the Ling Electronics name.

### Our Product Value

Qualmark specializes in vibration and temperature testing equipment and processes with the greatest depth of expertise in the technology. Qualmark's experts are continuously keeping up with new technology, which enables Qualmark to design and build the most effective vibration system on the market.

Qualmark brings the best combination of support and technology to make our customers' testing programs successful. Qualmark's industry leading Lowest Total Cost of Ownership will enable our customers to continue saving throughout the lifetime of the machine. This can amount to tens of thousands of dollars per year. Additionally, our customers worldwide receive a valuable resource through our Training, Support and Service that helps them to have a higher Return on Investment.

### Industries



Our customers are some of the biggest manufactures of consumer products, members of the Fortune 500 and the Fortune 1000 such as Dell, Compaq, Ericsson, Hewlett Packard, IBM, Samsung, and Microsoft, and have partnered with Qualmark to implement and manage corporate-wide testing programs. These programs are driven by market demand to provide reliable products whose timely releases keep pace with technology advancements.

- **Optical Communication Switches/Equipment**
- **Defense Electronics**
- **Gas Detection Devices**
- **Computers**
- **Electronic Test Equipment**
- **Microwave Electronics**
- **Printers/Plotters**
- **Supercomputers**
- **Automotive Electronics**
- **Automotive Actuators and Indicators**
- **Cellular Communications Equipment, Portable and Base Stations**
- **Consumer Electronics**
- **Avionics**
- **LAN/WAN Equipment**
- **Telephone/Telecom Equipment**
- **Power Supplies**
- **Monitors/Displays**

Exhibit 1, Page 20

- Storage Devices; Hard Drives, Tape Drives,Tape Libraries
- Pumps, Motors & Fluidic Handling Assemblies
- Medical Electronics

---

©2007 Qualmark

HOME --------------- WEBSITE MAP --------------- CONTACT US

Exhibit 1, Page 21



**QUALMARK**
CORPORATION

*ABOUT US     PRODUCTS     SUPPORT & SERVICES     TECHNICAL REFERENCE     TRAINING / EVENTS     CONTACT US     LOGIN*

## *PRODUCTS ▾*

- ▸ Technology
- ▸ Typhoon Chambers / ED Shakers
- ▸ Accessories
- ▸ Upgrades
- ▸ Refurbished Equipment
- Custom Equipment / Designs

### *HALT/HASS Typhoon Chambers*

HALT and HASS Chambers are designed and manufactured by Qualmark specifically to provide the industry with Accelerated Testing systems. We have matured the product from a thermal chamber with a vibration table and independent controls to an integrated HALT/HASS chamber. This design is the most energy efficient on the market; with a fourth generation advanced vibration system, broad spectrum of vibration energy between 10 Hz to above 5,000Hz, a consistent power spectral density profile with a minimum variation from one end of the spectrum to the other and has consistent energy fill that eliminates Picket Fencing. Qualmark's HALT/HASS chambers reflect powerful new engineering designs to deliver optimum test performance in conjunction with the lowest total cost of ownership in the industry.

Our latest system, the Typhoon series, delivers impressive thermal performance, six-degree-of-freedom and only consumes 30% to 60% of the utilities of most competitive models. The thermal system in the Typhoon series has been carefully engineered to have superior thermal efficiency when compared to other chambers. Key design elements such as our patented blower technology, highly efficient air flow characteristics and careful choice of materials have combined to keep liquid nitrogen and electricity costs down without compromising our industry standard thermal performance.

We offer our smallest Typhoon-1.5 system, with a 18" x 18" vibration table to a Typhoon 8.0 system with a 100" x 48" vibration table.

### <u>Learning How to Read Between the Lines of Accelerated Testing Chamber Specifications (PDF Download)</u>



Exhibit 1, Page 22

Case 3:08-cv-01717-MMC    Document 9-2    Filed 04/04/2008    Page 24 of 72

HALT HASS Equipment Electrodynamic Shaker                                    Page 2 of 2
    Case 1:07-cv-02665-REB-KLM    Document 1-2    Filed 12/21/2007    Page 6 of 13

### *Electrodynamic Shaker Vibration Systems*

Ling Electronics, a Qualmark Company, manufactures standard electrodynamic vibration systems and provides Qualmark with the unique capability to also support standard MIL SPEC and qualification vibration testing requirements. In addition to Ling Electronics, ACG Dynamics, also a Qualmark Company, can rebuild and refurbish all domestic brands of electrodynamic shaker vibration systems. This combination of support for our customers is unmatched by any other competitor.

Ling Electronics is one of the nation's most experienced manufacturers of vibration, shock test systems and fixtures. There are over 4,000 electrodynamic shaker systems installed worldwide. Serving an international cross-section of governmental, industrial and scientific markets, Ling has been a leading manufacturer of Vibration and Acoustic Testing Systems for over 45 years.

Ling's line of electrodynamic shakers offers a wide variety of configurations designed to meet any vibration testing needs including: low-cost and high-efficiency systems rated under 100 force pounds, medium force systems with high performance rated between 2,700 to 12,000 force pounds, high force systems rated between 20 to 45 force pounds and custom designed systems engineered to meet your most rugged testing requirements with unmatched performance.



©2007 Qualmark

HOME----------WEBSITE MAP----------CONTACT US

Exhibit 1, Page 23



### QUALMARK CORPORATION ACQUIRES LING ELECTRONICS

DENVER—December 14, 2005–QualMark Corporation (OTCBB:QMRK), a world leader in designing, manufacturing and marketing HALT (Highly Accelerated Life Testing), HASS (Highly Accelerated Stress Screening) and electro-dynamic systems, today announced the acquisition of Massachusetts-based Ling Electronics from SatCon Power Systems, Inc., a division of SatCon Technology Corporation (Nasdaq:SATC).

"Ling Electronics (Ling), the most recognized name in vibration testing, now gives QualMark the leading position in both its traditional HALT/HASS marketplace and its newly diversified Electro-Dynamic Shaker marketplace. Ling Electronics has delivered more than 6,000 electro-dynamic shakers to more than 20 countries worldwide and has been a leader in the vibration test market since its founding in 1957 by Jimmy Ling. Ling manufactures the most complete line of electro-dynamic shakers and amplifiers in the world ranging from 100 force pounds to 40,000 force pounds to meet the most rigorous test specifications. Ling also offers a full range of the Kimball slip table line. This acquisition continues QualMark's strategy to be the world leader in vibration testing. With QualMark's acquisition one year ago of ACG Dynamics, the leader in service, repair and rebuilding of electro-dynamic shakers, we now offer a full complement of service and electro-dynamic shaker equipment. Ling also has a dominant presence in the defense industry, which we will leverage to grow our traditional HALT/HASS line of business," commented Mr. Charles Johnston, QualMark's President and CEO.

Mr. Johnston continued, "This acquisition continues to strategically expand QualMark's total available vibration market to over $125 million and will add approximately $3 million in revenue to QualMark's existing revenue base."

QualMark intends to immediately relocate the Ling Electronics assets to its West Haven, Connecticut, manufacturing facility and commence operations. The acquisition consisted of the primary Ling Electronics' business assets and was consummated with cash, which will not result in any additional dilution to shareholders.

QualMark Corporation, headquartered in Denver, Colorado, is the leader in designing, marketing, and manufacturing accelerated life-testing systems providing the world's largest corporations with solutions that improve product reliability and allow them to get to market faster. The Company has installed more than 600 of its proprietary testing systems in 25 countries. The Company operates and partners with 10 testing facilities worldwide.

The Company also offers electrodynamic vibration solutions through its subsidiary, QualMark ACG Corporation.

QualMark ACG Corporation, headquartered in West Haven, Connecticut, is the leader in supplying electrodynamic systems, components, and service to the worldwide vibration test equipment market. For over 30 years, QualMark ACG ( formerly ACG Dynamics, Inc.) has been supplying quality replacement parts and field service for most brands of vibration equipment.

SatCon Technology Corporation is a developer and manufacturer of electronics and motors for the Alternative Energy, Hybrid-Electric Vehicle, Grid Support, High Reliability Electronics and Advanced Power Technology markets. For further information, please visit the new SatCon website at www.satcon.com.

*The statements included in this press release concerning predictions of economic performance and management's plans and objectives constitute forward- looking statements made pursuant to the safe harbor provisions of Section 21E of the Securities Exchange Act of 1934, as amended, and Section 27A of the Securities Act of 1933, as amended. These statements involve risks and uncertainties that could cause actual results to differ materially from the forward-looking*

● Page 2                                                    December 28, 2005

*statements. Factors which could cause or contribute to such differences include, but are not limited to, factors detailed in the Company's Securities and Exchange Commission filings; downturns in the Company's primary markets; variability of order flow, future economic conditions; competitive products and pricing; new product development; disruptions in the Company's operations from acts of God or extended maintenance; transportation difficulties; or the delivery of product under existing contracts and other factors.*

*Contact:* _____
   QualMark Corporation
   Charles Johnston, President and CEO
   Anthony Scalese, CFO
   303/254-8800    www.qualmark.com



ABOUT US    PRODUCTS    SUPPORT & SERVICES    TECHNICAL REFERENCE    TRAINING / EVENTS    CONTACT US    LOGIN

*PRODUCTS ▾*

- ▸ Technology
- ▸ Typhoon Chambers / ED Shakers
- ▸ Accessories
- ▸ Upgrades
- ▸ Refurbished Equipment
- ▸ Custom Equipment / Designs

### *Electrodynamic Shakers*

### High Force Shakers

**12,000 +
FORCE POUNDS**

The large force shakers are designed for vibration testing of large specimens over the frequency range of 3000 Hz. Heavy-duty hexagonal head raised armature table inserts provide rigid attachment for the test fixtures. These large force shakers are water-cooled. The complex system delivers a full 2.0-inch continuous stroke with the capabilities to increase to 3.0-inch stroke upon request. These systems can be custom built to your specification.



**Models:**

2016
4022
4522LX
**Request for Information/Quote** or E-Mail
sales@qualmark.com

### Medium Force Shakers

**1,000 to 12,000
FORCE POUNDS**

These air-cooled electrodynamic shakers are designed for continuous vibration and shock testing for small-medium size components, ideally suited for product qualification, reliability and stress screen tests.





Exhibit 1, Page 26

Available with Ling's exclusive Lin-E-Air Isolation System, suspending the shaker on air springs located at the trunnions.

**Models:**

308
612, 616
624
812, 816
1216
1224
**Request for Information/Quote** or E-Mail sales@qualmark.com

**Small Force Shakers**

0 to 1,000
FORCE POUNDS

Designed as portable wideband excitation source for screening of electronics components. These unique designs use the "Dual Magnetic Structure" which allows these shakers to be one quarter the size of a standard shaker and maximizes the permanent magnet field strength while maintaining a small physical size.



**Models:**

LMT-100
LS-100

**Request for Information/Quote** or E-Mail sales@qualmark.com

*Controllers*

**The Puma, Cougar, Lynx and Jaguar Controller**

*New Ways to Control the Old Problems*

- Large Channel Count Control and Measurement System
- Sun Microsystems Based – Very stable, very fast and very scalable Puma Solaris, the

Exhibit 1, Page 27

Case 3:08-cv-01717-MMC    Document 9-2    Filed 04/04/2008    Page 29 of 72
Ling Electrodynamic Shaker Models                                    Page 3 of 3
Case 1:07-cv-02665-REB-KLM    Document 1-2    Filed 12/21/2007    Page 11 of 13



Sun version of Unix
Intel Based
Workstations –

- Very stable, very fast, very cabable – permits customer to feel that he can maintain the HW himself
- Runs Linux, the "other" Unix Input Channel Count from 8 to 588
- 40KHz Bandwidth on ALL channels
- The BEST phase and amplitude accuracy Totally synchronized between channels
- Output Channel Count from 1 to 24

**Request for Information/Quote** or E-Mail
sales@qualmark.com

*Amplifiers*



- Power and space efficiency
- Offers complete control of shaker system
- Energy efficient

Each amplifier includes full instrumentation, field power supply, cooling power and protection interlocks in addition to high quality power amplification for nearly any manufacturers electrodynamic shakers. Amplifiers can be manufactured in a manner to be compliant with CE requirements. They have Enhanced Reliability Advances in chip technology that allow for a 250% increase in power device silicon. This means more safety margin, eliminating silicon as the weak link. We also have additional fast acting current limiting that allows high peaks for random as well as additional level of protection for the balance of the system.

Ling's systems utilize plug-in modular construction allowing instant assembly of systems at nearly any power level. All amplifiers are housed in an attractive main frame providing the AC and DC power distribution as well as vacant space for optional features.
**Request for Information/Quote**

## MODEL 2016 ELECTRODYNAMIC SHAKER

### 20,000 TO 50,000 FORCE POUNDS



# LiNG
## ELECTRONICS
### *A Qualmark Company*



The Ling Electronics Model 2016 Shaker is the next generation of closed-loop, water-cooled shakers. The 2016 can be configured with the DMA 1212E for an "enduro-performance" system rated at 18,000-lbf Sine and 13,000-lbf Random; with the DMA 4016E for 20,000-lbf Sine and 16,000 Random; or the DMA 4020 and a chiller when a full 20,000-lbf Random force rating is required.

The shaker is mounted in a standard, low-profile trunnion base and can be rotated 90 degrees for horizontal operation and 180 degrees for easy maintenance. The 2016 utilizes Ling's Comp-FlexTM flexures constructed of state-of-the-art composite carbon material that provides long life, reliable operation, and excellent stability. Installed in a flat configuration with foreshortening compensation, the Comp-Flex system delivers a full 2.0-inch (50.8-mm) continuous stroke.

► New Armature design
► 20,000 pounds force (89kN) Sine & Random
► Dual hydrostatic bearings for lateral support
► 2" (50.8mm) stroke
► Lin-E-AirTM isolation system
► 2000 (907 kg) pounds payload support

Designed for heavy-duty service, the 2016's dual hydrostatic bearings reduce cross-axis motion and allow heavy side loading. Ling's unique OPCS-100 optical centering system controls the pneumatic load support system and automatically centers the armature and test specimens in the vertical axis with loads up to 2,000 pounds (907 kg).

The newly designed double-ended magnetic field structure is water-cooled for high efficiency. The continuously wound copper field coils are highly reliable with no internal joints or connections. The armature combines a stiff, cast-aluminum structure with a lightweight, hollow aluminum driver coil. The low-mass coil allows the testing of heavy specimens with minimal change in axial resonance frequency, remaining above 2,000 Hz with a 1,000-pound load.

## *Over 50 Years of Proven Reliability!*

Toll Free: 1.866.611.5464
Direct: 203.933.8000
sales@qualmark.com



### WWW.LING-ELECTRONICS.COM

©Qualmark Corporation 2007

**MODEL 2016 ELECTRODYNAMIC SHAKER SPECIFICATIONS**

**20,000 TO 50,000 FORCE POUNDS**



| | |
|---|---|
| AXIAL STIFFNESS: | 320 lbs. per inch (56 kN/m) |
| ARMATURE DIAMETER: | 17.25 inch (438.1 mm) with 16 inch bolt pattern |
| ARMATURE MASS: | 123 lbs. (55.79kg) nominal |
| ARMATURE SUSPENSION: | Four flat CompFlex, carbon composite flexures and two Hydrostatic oil bearings |
| STATIC LOAD SUPPORT: | 2000 lbs. (906 kg) |
| DISPLACEMENT: | 2.0 inch p-p (50.8 mm) continuous, 2.2 inch p-p (55.9 mm) between mechanical limits |
| FORCE RATING: | 20,000 lbf (89kN) Sine Vector, 20,000 lbf (89kN) RMS random 50,000 (222.5kN) Shock |
| MAXIMUM VELOCITY: | 70 IPS (1.78 m/s), bare table as limited by Amplifier voltage |
| MAXIMUM ACCELERATION: | 150g sine vector |
| FREQUENCY RANGE: | 5 to 3000 Hz |
| UTILITY POWER: | 290 MAX kVA |
| STRAY MAGNETIC FIELD: | Less than 8 gauss (0.8 mT) at 6 inch (152.4 mm) above table |
| TEMPERATURE RANGE: | Thermal Chamber Operation: -40° to 150° F (-40° to +65.5° C) Piggy-Back Operation: -100° to +350° F (piggyback) (-73° to +177°C) |
| RAW WATER TEMPERATURE: | 40° to 85° F (4.40° to 29.40° C) |
| COOLING METHOD: | Closed loop system circulates distilled water through armature and field coils. Heat is transferred through a water to water heat exchanger. Standard cooling units provided for cooling tower or chilled |

*Comes equipped with 16 removable stainless steel inserts*









ARMATURE PATTERN



Toll Free: 1.866.611.5464
Direct: 203.933.8000
sales@qualmark.com
**WWW.LING-ELECTRONICS.COM**

Exhibit 1, Page 30



032007B

Home

**ELECTRONICS**

High Reliability Power
Management and
Microelectronic Solutions

GO

**POWER
SYSTEMS**

Providing Distributed
Power Systems
and Products

GO

**APPLIED
TECHNOLOGY**

Developing Power
Technology for
Emerging Markets

GO

**INVESTORS**

Investor Facts
Governance
Financial Information
Stock Information
Shareholder Services

**NEWS & EVENTS**

Press Releases
Scheduled Events
White Papers

**ABOUT SATCON**

About SatCon
Management Team
Board of Directors

**CONTACT SATCON**

Locations
Human Resources
Investor Inquiries
Webmaster

© Copyright | Feedback    SatCon

Exhibit 1, Page 31

▸ Divisions
▸ Investors
▸ News & Events
▸ About SatCon
▸ Contact SatCon
▸ SatCon Home

▸ Investors

▸ SatCon Electronics

▸ SatCon Power Systems

▸ SatCon Applied Technology

[                    ] SEARCH

### About SatCon Technology

SatCon Technology Corporation, incorporated in 1985, is an industry leader in the development and manufacturer of power electronics and control systems. SatCon offers diversified and sophisticated power products for the Alternative Energy, Hybrid-Electric Vehicle, Grid Support, High Reliability Electronics and Advanced Power Technology markets.



SatCon has a reputation for providing power products that enable reliable, affordable and clean solutions for electrical power needs. Products designed by SatCon engineers address the enormous demand for reliable power -- from microwatt scale to megawatt scale advanced electronic components, subsystems and systems.

SatCon is building on its history as a developer of sophisticated and precise power management and control equipment.

SatCon's product areas include:

▸ Alternative Energy Power Conversion
▸ Hybrid Electric Vehicle Power Trains
▸ Grid Support & Power Quality
▸ Electronic Components
▸ Engineering Services

SatCon has been awarded 71 patents and holds rights to an additional 38 patents in conjunction with Chrysler Corp. for a total of 109 patents.

With corporate headquarters located on the picturesque Boston Harbor in Boston, Massachusetts, SatCon Corporation employees over 225 individuals. A significant number of employees are engineers with advanced degrees in a broad spectrum of disciplines including electrical, mechanical, controls, magnetics and systems engineering. The corporation manages in excess of 140,000 square feet of office, research, development and manufacturing space for its use.

SatCon has three business units with facilities located in both the United States and Canada.

SatCon Power Systems manufactures and sells static power conversion and energy management systems utilizing power electronics and advanced controls. The division offers power system solutions for a variety of alternative energy, power delivery and test & measurement applications. Alternative Energy applications include systems for solar photovoltaic, stationary fuel cells, wind-turbines, energy storage and a variety of other energy sources from hydraulic applications to micro-turbines. SatCon has significant experience with integrating alternative energy sources with energy storage devices to form micro-grids either in a grid connected or grid independent configuration. Power delivery applications include industrial DC power, frequency conversion utilizing the same base technology as that used for alternative energy applications. SatCon Power Systems has supplied over 450 MW of high-power DC power distribution equipment utilizing power transistor (IGBT) technology, more than any other company in the world.

In addition, SatCon Power Systems manufactures and sells medium voltage power quality systems including static transfer switches and low voltage static ride through equipment.

SatCon Electronics manufactures and sells regulators, power MOSFETS; motor controllers, DC:DC converters; RF devices; amplifiers; telecommunications electronics; and hybrid microcircuits for industrial, medical, and aerospace applications.

SatCon Applied Technology develops advanced technology in power conversion electronics; power management & distribution systems; hybrid electric vehicle technology, electric machinery; and advanced electronic material applications. SatCon Applied Technology is a leader in strategically transitioning these advanced technologies into reliable and efficient products.

With our innovative alternative energy technology, a world-class team of employees and a wide range of product offerings, serving a varied market, SatCon is well positioned to lead a renewed interest in meeting the enormous

SatCon Technology Corporation

demand for reEable energy solutions.

© Copyright | Feedback   SatCon

Exhibit 1, Page 33

| About SatCon Electronics | Power Management Products | Microwave & RF Products | Analog Signal Processing Products | Motor Controllers | Thin Film Products | Contact SatCon Electronics |
| --- | --- | --- | --- | --- | --- | --- |

### About SatCon Electronics

SatCon Electronics, located in Marlborough, MA is the center of excellence with in the corporation for microelectronics design and manufacturing. Our 30,000 sq ft manufacturing operation is an ISO 9001 Registered facility fully certified to MIL-PRF-38534 Class H and Class K standards. A leader in design and production of power circuitry we utilize our vast experience and state of the art facility to solve the most complex challenges in the Communications, Aerospace, Industrial and Defense industries.

**Power Products** – A leader in power conversion microelectronics for high reliability and space level applications SatCon offers standard product lines of linear regulators, switching regulators, high current motor drivers, and DC to DC converters....COTS to Class K.

**Analog Products** – SatCon offers a comprehensive line of high-speed amplifiers, precision voltage references, diode drivers, and high accuracy data converters including a number of Standard Military Drawings (SMD's).

**RF and Custom Products** – DC to 50GHz, SatCon's broad spectrum of design and manufacturing capability allow us to bring your designs from prototype to high volume production for a variety of custom RF, power, and analog mixed signal circuitry. Manufacturing and assembly capability include high volume surface mount, flip chip, chip & wire, chip on board, and precision bare die placement.

**Thin Film** – A core capability of SatCon is our internal thin film manufacturing. We offer a complete line of precision resistor chips, attenuators, networks, and metalized substrates. Various base materials such as alumina, aluminum nitride, silicon, and BeO are available with fine lines, wraps, plated through holes, and solid vias.

  

Investors | News & Events | About SatCon | Contact SatCon | SatCon Home

© Copyright | Feedback    SatCon

Exhibit 1, Page 34

FOR IMMEDIATE RELEASE

CONTACT:
SatCon Technology Corporation®
Dan Gladkowski, VP, Administration
617-897-2411

### SatCon sells the Ling Shaker and Amplifier product line to QualMark Corporation

Boston, MA – December 14, 2005 -- SatCon Technology Corporation® (Nasdaq NM: SATC), a developer and manufacturer of power electronics and motors for the alternative energy markets, today announced that it has sold its Ling Shaker and Amplifier product line to QualMark Corporation of Denver, Colorado for approximately $2.3 million in cash. Under the Ling Products name, SatCon has manufactured and sold electrodynamic shakers through the Power Systems Division located in Worcester, Massachusetts. This asset sale includes the intellectual property, manufacturing equipment and tooling and inventory for the Ling shaker products and the Kimball shaker accessories line.

"Selling this business will facilitate SatCon's Power Systems increasing focus on the alternative energy markets, providing high power solar, fuel cell and wind inverters and precision motors and components to the hybrid electric vehicle markets" noted Millard Firebaugh, SatCon President and Chief Operating Officer. He added that, "We are very pleased to sell this business to a quality company such as QualMark that has many years of experience in the shaker market."

QualMark President Charles Johnston said, "We are pleased to be able to obtain the rights to the strong brand name of the Ling and Kimball Products. We believe that this brand, combined with our expertise in the service and repair of these products will give us a prominence in this specialty test and measure marketplace." Mr. Johnston continued, "We look forward to relocating this business to our QualMark ACG facility in West Haven CT as soon as possible, and will take over the management of this product line immediately."

SatCon Power Systems Division will continue to design, manufacture, market and service the Starsine variable frequency converters under the SatCon trademark.

About SatCon Technology Corporation
SatCon Technology Corporation is a developer and manufacturer of electronics and motors for the Alternative Energy, Hybrid-Electric Vehicle, Grid Support, High Reliability Electronics and Advanced Power Technology markets. For further information, please visit the new SatCon website at www.satcon.com.

About QualMark Corporation
QualMark Corporation, headquartered in Denver, Colorado, is the leader in designing, marketing, and manufacturing accelerated life-testing systems providing the world's largest corporations with solutions that improve product reliability and allow them to get to market faster. The Company has installed more than 600 of its proprietary testing systems in 25 countries. The Company operates and partners with ten testing facilities worldwide.

The Company also offers electrodynamic vibration solutions through its subsidiary, QualMark ACG Corporation.

QualMark ACG Corporation, headquartered in West Haven, Connecticut, is the leader in supplying electrodynamic systems, components, and service to the worldwide vibration test equipment market. For over 30 years, QualMark ACG (formerly ACG Dynamics, Inc.) has been supplying quality replacement parts and field Service for most brands of vibration equipment.

*Statements made in this document that are not historical facts or which apply prospectively are forward-looking statements that involve risks and uncertainties. These forward-looking statements are identified by the use of terms and phrases such as "believes," "expects," "plans," "anticipates" and similar expressions. Investors should not rely on forward looking statements because they are subject to a variety of risks and uncertainties and other factors that could cause actual results to differ materially from the Companies' expectations. Additional information concerning risk factors is contained from time to time in the Companies' SEC filings. The Companies expressly disclaim any obligation to update the information contained in this release.*

*IR Contact*
*Alex Lewis*
*Aurelius Consulting*
*www.runonideas.com*
T: (800)-644-6297

Dynamic Signal Analyzers, Vibration Controllers, Electrodynamic Shakers & Accessories    Page 1 of 1

Case 3:07-cv-02635-REB-KLM    Document 14    Filed 12/21/2007    Page 1 of 4



Exhibit 1, Page 37

Data Physics Corporation Contacts Worldwide                                        Page 1 of 1







> Contact > Domestic

For Products & Services contact Sales
Access Customer Tech Support system
Go to scheduled WebEx Demo
New Customer Registration

**Domestic Contacts**
Click on map to view Sales & Support by Region

Data Physics US Headquarters

**Data Physics**
1741 Technology Drive, Suite 260      TEL: 408-437-0100
San Jose, CA 95110                    FAX: 408-437-0509
USA                                   Email

**Ling Electronics**
548 Malloy Court                      TEL: 408-437-0100
Corona, CA 92880                      FAX: 408-437-0509
USA                                   Email

**Data Physics International**

Exhibit 1, Page 38

Data Physics Domestic Contacts
Page 1 of 1



Exhibit 1, Page 39

Data Physics Corporation Contacts Worldwide





Contact

About    Products    Support

Events

**Data Physics USA**
Head Office

1741 Technology Drive, Ste. 260
San Jose, CA 95110, USA
TEL: 408-437-0100
FAX : 408-437-0509

For Products & Services contact
Sales
Access Tech Support system
Go to scheduled WebEx Demo
New Customer Registration

**Gearing & Watson Electronics Ltd**
(Data Physics UK Ltd.)
South Road
Hailsham
East Sussex
BN27 3JJ United Kingdom

TEL: +44-(0)-1-886-884489
FAX: +44-(0)-1-886-884483
Email

**Data Physics (Deutschland) GmbH**
Theodor Heuss Strasse 21
D-61118 Bad Vilbel
Deutschland

TEL: +49-(0)-6101-50-95-61
FAX: +49-(0)-6101-50-95-62
Email

**Data Physics (France) S.A.**
22 Rue Jean Bart
78960 Voisins le Bretonneux
France

TEL: +33-(0)-1-39-30-50-60
FAX: +33-(0)-1-39-30-50-79
Email

**Data Physics (China)**
Suite 1605, LT Square
500 Chengdu Road North
Huangpu District, Shanghai
P.R. China 200003

TEL: +86-21-621-86533
TEL: +86-21-632-71692
FAX: +86-21-632-72021
Email

**Data Physics (Bharat) Pvt. Ltd.**
411, 15th Cross
2nd Block, Jayanagar
Bangalore - 560011, India

TEL: +91-80-2656-5810
FAX: +91-80-2656-2609
Email

**Gearing & Watson Electronics Ltd.**
South Road, Hailsham
East Sussex
BN27 3JJ, United Kingdom

TEL +44-(0)-1323-846464
FAX +44-(0)-1323-847550
Email

Argentina
Australia
Austria
Brazil
Canada
CIS & Baltic States
Czech & Slovak Republics
Finland
France
Italy
Japan
Malaysia
Mexico
Philippines
Poland
Portugal
Russian Federation
Singapore
South Africa
South Korea
Spain
Sweden
Switzerland
Taiwan R.O.C
Thailand
Turkey
Vietnam

Mouse-over the links to view the
contact information for a distributor
near you. Click to email

Exhibit 1, Page 40

Case 3:08-cv-01717-MMC    Document 9-2    Filed 04/04/2008    Page 42 of 72

Case 1:07-cv-02665-REB-KLM    Document 1-5    Filed 12/21/2007    Page 1 of 1    p. 1
Jg 28 2007 10:18AM   Qualmark Corporation        303.254.8343

# State of California
## Secretary of State

3'66

Trademark Reg. No. 0111646   Class No. 9
## CERTIFICATE OF REGISTRATION OF TRADEMARK

*I, BRUCE McPHERSON,* Secretary of State of the State of California, hereby certify:

That in accordance with the application filed in this office the TRADEMARK described below has been duly registered in this office on behalf of:

Name of Applicant:   Qualmark Corporation
Business Address:   4580 Florence Street, Denver, CO 80238
Date first used in California:   1948
Date first used anywhere:   1948
Description of Trademark:   "LING ELECTRONICS"-block letter, white on brown background (Disclaimer: "ELECTRONICS")
Description of Goods on which the Trademark is used:   Electrodynamic shakers and amplifiers for testing electronics and electromeln devices
A copy, specimen, facsimile, counterpart or a reproduction of the mark is attached
Date of Registration:   March 28, 2006
Term of Registration Extends to and Includes:   March 28, 2016



IN WITNESS WHEREOF, I execute this certificate and affix the Great Seal of the State of California this 13th day of April, 2006.

BRUCE McPHERSON
Secretary of State

Exhibit 1, Page 41

NP-25 (REV 03/01/05)

Case 3:08-cv-01717-MMC    Document 9-2    Filed 04/04/2008    Page 43 of 72

Trademark/Service Mark Application, Principal Register    Page 1 of 7
Case 1:07-cv-02663-REB-KLM    Document 1-6    Filed 12/21/2007    Page 1 of 7

Document Description: **Application**    Mail / Create Date: **14-Mar-2006**

| Previous Page | Next Page | You are currently on page 1 of 4 | |

PTO Form 1478 (Rev 6/2005)
OMB No. 0651-0009 (Exp xx/xx/xxxx)

# Trademark/Service Mark Application, Principal Register

### Serial Number: 78836304
### Filing Date: 03/14/2006

---

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **MARK SECTION** | |
| MARK | LING |
| STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| LITERAL ELEMENT | LING |
| MARK STATEMENT | The mark consists of standard characters, without claim to any particular font, style, size, or color. |
| **OWNER SECTION** | |
| NAME | QualMark Ling Corporation |
| STREET | 4580 Florence Street |
| CITY | Denver |
| STATE | Colorado |
| ZIP/POSTAL CODE | 80238 |
| COUNTRY | United States |
| PHONE | 303-254-8800 |
| FAX | 303-254-8343 |
| AUTHORIZED EMAIL COMMUNICATION | No |
| **LEGAL ENTITY SECTION** | |
| TYPE | CORPORATION |

Exhibit 1, Page 42

Case 3:08-cv-01717-MMC    Document 9-2    Filed 04/04/2008    Page 44 of 72

Trademark/Service Mark Application, Principal Register    Page 2 of 7
Case 3:07-cv-02663-REB-BNB    Document 1-6    Filed 12/21/2007    Page 2 of 7

| STATE/COUNTRY OF INCORPORATION | Colorado |
|---|---|
| **GOODS AND/OR SERVICES SECTION** | |
| INTERNATIONAL CLASS | 009 |
| DESCRIPTION | Electrical and scientific apparatus, namely, vibration table and control apparatus for use in testing industrial, electronic and electromechanical components and parts; electro-dynamic shakers and amplifiers; vibration and environmental test equipment, and components and parts therefor. |
| FILING BASIS | Section 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 00/00/1999 |
| FIRST USE IN COMMERCE DATE | At least as early as 00/00/1999 |
| SPECIMEN FILE NAME(S) | \\TICRS\EXPORT6\IMAGEOUT6 \788 \363\78836304\xml1\AP P0003.JPG |
| SPECIMEN DESCRIPTION | Product label |
| **GOODS AND/OR SERVICES SECTION** | |
| INTERNATIONAL CLASS | 037 |
| DESCRIPTION | Repair, maintenance, and installation of testing equipment. |
| FILING BASIS | Section 1(a) |
| FIRST USE ANYWHERE DATE | At least as early as 00/00/1999 |
| FIRST USE IN COMMERCE DATE | At least as early as 00/00/1999 |
| SPECIMEN FILE NAME(S) | \\TICRS\EXPORT6\IMAGEOUT6 \788 \363\78836304\xml1\AP P0004.JPG |
| SPECIMEN DESCRIPTION | Advertisement for services |
| **SIGNATURE SECTION** | |
| SIGNATURE | /mark w. reinhardt/ |
| SIGNATORY NAME | Mark W. Reinhardt |
| SIGNATORY DATE | 03/14/2006 |
| SIGNATORY POSITION | Attorney |
| **PAYMENT SECTION** | |
| NUMBER OF CLASSES | 2 |

Exhibit 1, Page 43

| | |
|---|---|
| NUMBER OF CLASSES PAID | 2 |
| SUBTOTAL AMOUNT | 650 |
| TOTAL AMOUNT | 650 |
| PAYMENT METHOD | CC |
| **ATTORNEY** | |
| NAME | Mark W. Reinhardt |
| FIRM NAME | Reinhardt & Associates, LLC |
| STREET | 440 Williams Street |
| CITY | Denver |
| STATE | Colorado |
| ZIP/POSTAL CODE | 80218 |
| COUNTRY | United States |
| PHONE | 720-201-4016 |
| FAX | 303-759-5676 |
| EMAIL | markr@rpcounsel.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| **CORRESPONDENCE SECTION** | |
| NAME | Mark W. Reinhardt |
| FIRM NAME | Reinhardt & Associates, LLC |
| STREET | 440 Williams Street |
| CITY | Denver |
| STATE | Colorado |
| ZIP/POSTAL CODE | 80218 |
| COUNTRY | United States |
| PHONE | 720-201-4016 |
| FAX | 303-759-5676 |
| EMAIL | markr@rpcounsel.com |
| AUTHORIZED EMAIL COMMUNICATION | Yes |
| **FILING INFORMATION** | |
| SUBMIT DATE | Tue Mar 14 10:05:01 EST 2006 |

Exhibit 1, Page 44

| TEAS STAMP | USPTO/BAS-713140175-20060<br>314100501444444-78836304-<br>200a347a385ee38a2b4172ddc<br>d49e726f17-CC-1299-200603<br>14095703033215 |
| --- | --- |

Exhibit 1, Page 45

PTO Form 1478 (Rev 6/2005)
OMB No. 0651-0009 (Exp xx/xx/xxxx)

# Trademark/Service Mark Application, Principal Register

## Serial Number: 78836304
## Filing Date: 03/14/2006

## To the Commissioner for Trademarks:

**MARK:** (Standard Characters, see mark)

The mark consists of standard characters, without claim to any particular font, style, size, or color.

The literal element of the mark consists of LING.

The applicant, QualMark Ling Corporation, a corporation of Colorado, residing at 4580 Florence Street, Denver, Colorado, United States, 80238, requests registration of the trademark/service mark identified above in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq.), as amended.

The applicant, or the applicant's related company or licensee, is using the mark in commerce, and lists below the dates of use by the applicant, or the applicant's related company, licensee, or predecessor in interest, of the mark on or in connection with the identified goods and/or services. 15 U.S.C. Section 1051(a), as amended.

International Class 009: Electrical and scientific apparatus, namely, vibration table and control apparatus for use in testing industrial, electronic and electromechanical components and parts; electro-dynamic shakers and amplifiers; vibration and environmental test equipment, and components and parts therefor.
International Class 037: Repair, maintenance, and installation of testing equipment.

In International Class 009, the mark was first used at least as early as 00/00/1999, and first used in commerce at least as early as 00/00/1999, and is now in use in such commerce. The applicant is submitting or will submit one specimen for *each class* showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) Product label.

Specimen - 1

In International Class 037, the mark was first used at least as early as 00/00/1999, and first used in commerce at least as early as 00/00/1999, and is now in use in such commerce. The applicant is submitting or will submit one specimen for *each class* showing the mark as used in commerce on or in connection with any item in the class of listed goods and/or services, consisting of a(n) Advertisement for services.

Specimen - 1

The applicant hereby appoints Mark W. Reinhardt of Reinhardt & Associates, LLC, 440 Williams Street, Denver, Colorado, United States, 80218 to submit this application on behalf of the applicant.

Exhibit 1, Page 46

Case 1:07-cv-02669-REB-KLM     Document 1-6     Filed 12/21/2007     Page 6 of 7

The USPTO is authorized to communicate with the applicant or its representative at the following email address: markr@rpcounsel.com.

A fee payment in the amount of $650 will be submitted with the application, representing payment for 2 class(es).

## Declaration

The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true.


Signature: /mark w. reinhardt/   Date: 03/14/2006
Signatory's Name: Mark W. Reinhardt
Signatory's Position: Attorney


Mailing Address:
   Mark W. Reinhardt
   440 Williams Street
   Denver, Colorado 80218

RAM Sale Number: 1299
RAM Accounting Date: 03/14/2006

Serial Number: 78836304
Internet Transmission Date: Tue Mar 14 10:05:01 EST 2006
TEAS Stamp: USPTO/BAS-713140175-20060314100501444444
-78836304-200a347a385ee38a2b4172ddcd49e7
26f17-CC-1299-20060314095703033215

TDR Home

This document may be displayed as a PDF file containing images without text. You may view online or save the entire document by clicking on the file download icon in the upper right corner of this page.
[required PDF viewer]
FAQ: Are you seeing only the first page of this PDF document?

Exhibit 1, Page 47

Trademark/Service Mark Application, Principal Register                    Page 7 of 7

*If you need help:*

- **General trademark information:** *Please e-mail* <u>*TrademarkAssistanceCenter@uspto.gov*</u>*, or telephone either 571-272-9250 or 1-800-786-9199.*
- **Technical help:** *For instructions on how to use TDR, or help in resolving* **technical glitches***, please e-mail* <u>*TDR@uspto.gov*</u>*. If outside of the normal business hours of the USPTO, please e-mail* <u>*Electronic Business Support*</u>*, or call 1-800-786-9199.*
- **Questions about USPTO programs:** *Please e-mail* <u>*USPTO Contact Center (UCC)*</u>*.*

**NOTE:** *Within any e-mail, please include your telephone number so we can talk to you directly, if necessary. Also, include the relevant serial number or registration number, if existing.*

Exhibit 1, Page 48

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

Donald E. Schreiber
Donald E. Schreiber A Professional Corporation
Post Office Box 2926
Kings Beach, CA 96143-2926

Mailed:  July 17, 2007

Serial No.: 78836304
ESTTA TRACKING NO:    ESTTA151525

The request to extend time to oppose is granted until
8/25/2007 on behalf of potential opposer **Data Physics
Corporation**

Please do not hesitate to contact the Trademark Trial and
Appeal Board at (571)272-8500 if you have any questions
relating to this extension.

<u>New Developments at the Trademark Trial and Appeal Board</u>

TTAB forms for electronic filing of extensions of time to
oppose, notices of opposition, petition for cancellation, notice
of ex parte appeal, and inter partes filings are now available
at <u>http://estta.uspto.gov</u>. Images of TTAB proceeding files can
be viewed using TTABVue at <u>http://ttabvue.uspto.gov</u>.

Parties should also be aware of changes in the rules affecting
trademark matters, including rules of practice before the TTAB.
*See* <u>Rules of Practice for Trademark-Related Filings Under the
Madrid Protocol Implementation Act</u>, 68 Fed. R. 55,748 (September
26, 2003) (effective November 2, 2003) <u>Reorganization of
Correspondence and Other Provisions</u>, 68 Fed. Reg. 48,286 (August
13, 2003) (effective September 12, 2003). Notices concerning the
rules changes are available at <u>www.uspto.gov</u>.

Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov

ESTTA Tracking number:     **ESTTA151525**

Filing date:     **07/17/2007**

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **QualMark Ling Corporation** |
| Application Serial Number: | **78836304** |
| Application Filing Date: | **03/14/2006** |
| Mark: | **LING** |
| Date of Publication | **06/26/2007** |

## First 30 Day Request for Extension of Time to Oppose

Pursuant to 37 C.F.R. Section 2.102, Data Physics Corporation, 2025 Gateway Place Ste.260, San Jose, CA 95110, UNITED STATES, a corporation organized under the laws of California , respectfully requests that it be granted a 30-day extension of time to file a notice of opposition against the above-identified mark .

The time within which to file a notice of opposition is set to expire on 07/26/2007. Data Physics Corporation respectfully requests that the time period within which to file an opposition be extended until 08/25/2007.

Respectfully submitted,
/Donald E. Schreiber/
07/17/2007
**Donald E. Schreiber**
**Donald E. Schreiber A Professional Corporation**
**Post Office Box 2926**
**Kings Beach, CA 96143-2926**
**UNITED STATES**
**DONALD.SCHREIBER@WORLDNET.ATT.NET**
**(530) 546-6041**

UNITED STATES PATENT AND TRADEMARK OFFICE
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA  22313-1451

MARK W. REINHARDT
REINHARDT & ASSOCIATES, LLC
440 WILLIAMS STREET
DENVER, CO 80218
UNITED STATES

**Mailed:  August 23, 2007**

**Serial No.: 78836304**

**Veronica P. White, Paralegal Specialist:**

The request to extend time to oppose is granted until
**10/24/07** on behalf of potential opposer **Data Physics
Corporation.**

Please do not hesitate to contact the Trademark Trial and
Appeal Board for any questions relating to this extension.

**New Developments at the Trademark Trial and Appeal Board**

TTAB forms for electronic filing of extensions of time to
oppose, notices of opposition, and inter partes filings are now
available at http://estta.uspto.gov. Images of TTAB proceeding
files can be viewed using TTABVue at http://ttabvue.uspto.gov.

Parties should also be aware of changes in the rules affecting
trademark matters, including rules of practice before the TTAB.
*See* Rules of Practice for Trademark-Related Filings Under the
Madrid Protocol Implementation Act, 68 Fed. R. 55,748 (September
26, 2003) (effective November 2, 2003) Reorganization of
Correspondence and Other Provisions, 68 Fed. Reg. 48,286 (August
13, 2003) (effective September 12, 2003). Notices concerning the
rules changes are available at www.uspto.gov.

Trademark Trial and Appeal Board Electronic Filing System. http://estta.uspto.gov
ESTTA Tracking number:    **ESTTA158631**
Filing date:    08/23/2007

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

| | |
|---|---|
| Applicant: | **QualMark Ling Corporation** |
| Application Serial Number: | **78836304** |
| Application Filing Date: | **03/14/2006** |
| Mark: | **LING** |
| Date of Publication | **06/26/2007** |

## 60 Day Request for Extension of Time to Oppose for Good Cause

Pursuant to 37 C.F.R. Section 2.102, Data Physics Corporation, 2025 Gateway Place Ste.260, San Jose, CA 95110, UNITED STATES respectfully requests that he/she/it be granted an additional 60-day extension of time to file a notice of opposition against the above-identified mark for cause shown .

Potential opposer believes that good cause is established for this request by:

- *Attorney for the potential opposer, a solo practicioner, became ill with a flu-like illnes on Monday, August 20th. The attorney had a 102.1 fever on Tuesday evening, August 21st. Yesterday, Wednesday August 22nd, the attorney began a five (5) day regimen of Tamiflu, and had a temperature of 101 degrees. If it were possible to attach a file to this communication, the attorney could provide a copy of the pharmacy's sheet for the medication Tamiflu showing that the prescription was filled on August 22, 2007. Due to his illness for the past four (4) days, attorney for the potential opposer requests a further extension of the time in which to oppose the mark's registration. Donald E. Schreiber (530) 546-6041*

The time within which to file a notice of opposition is set to expire on 08/25/2007. Data Physics Corporation respectfully requests that the time period within which to file an opposition be extended until 10/24/2007.

Respectfully submitted,
/Donald E. Schreiber/
08/23/2007
**Donald E. Schreiber**
**Donald E. Schreiber A Professional Corporation**
**Post Office Box 2926**
**Kings Beach, CA 96143-2926**
**UNITED STATES**
**DONALD.SCHREIBER@WORLDNET.ATT.NET**
**(530) 546-6041**



**REINHARDT & ASSOCIATES, LLC**
440 WILLIAMS STREET
DENVER, CO 80218

Mark W. Reinhardt
Attorney
720-201-4016
Fax: 303-759-5676
mark@cstew.com

August 29, 2007

Donald E. Schreiber, Esq.
Donald E. Schreiber A Professional Corporation
Post Office Box 2926
Kings Beach, CA 96143-2926

Re: Infringement of LING trademarks

Dear Mr. Schreiber:

I am writing to you in your capacity as trademark counsel for Data Physics Corporation. This office represents Qualmark Corporation and its wholly-owned subsidiary Qualmark Ling Corporation (collectively and individually "Qualmark") with respect to trademark matters.

Our client has brought to our attention the fact that a recent advertisement in *Test Engineering & Management* magazine placed by Data Physics Corporation infringes several Qualmark trademarks. (The advertisement appears in the August/September issue of the magazine, Volume 69, Number 4, at page 4.)

Qualmark and its predecessors in interest have claimed the trademarks LING and LING ELECTRONICS, in addition to stylized versions of these marks, (collectively, the "LING trademarks"), and used them in conjunction with the sale of their shaker products since the 1940s. Qualmark has a California registration on the mark LING ELECTRONICS (Trademark Reg. No. 0111646) and, as you know, has applied for federal registration of the mark LING (Serial No. 78836304). Data Physics' use of these marks, as well as its use of a stylized version of the LING ELECTRONICS mark also belonging to Qualmark, constitutes federal and state trademark infringement under the Lanham Act (15 USC §§1114, *et seq.*) and under the California Business and Professions Code §§14320, *et seq.*

Our client has evidence of further use of its LING trademarks by Data Physics in advertisements and in its marketing to potential customers. We have documented evidence of customer confusion caused by this infringement, resulting in economic damage to Qualmark.

As you know, Data Physics formerly distributed Ling shakers manufactured by SatCon Power Systems, Inc., Qualmark's predecessor-in-interest. It would appear that when that relationship dissolved, Data Physics continued to use the LING trademarks with shakers of other origins. These actions deceived customers and took unfair advantage of the previous relationship with SatCon. It would be hard to conceive of a more nefarious form of trademark infringement.

In addition to the above, Qualmark has evidence that Data Physics may be using proprietary intellectual property of Qualmark, including but not limited to product drawings and specifications, to manufacture (or have manufactured)

Exhibit 1, Page 53

– 2 –

Donald E. Schreiber, Esq.
August 29, 2007

certain Data Physics products. On information and belief, this intellectual property may have been misappropriated by Data Physics from SatCon as part of their former business relationship. Needless to say, its use to manufacture other Data Physics products, if true, would constitute bad-faith breach of contract, as well as being a violation of, *inter alia*, US and foreign copyright laws, the California Uniform Trade Secrets Act and 18 U.S.C. 1832.

In view of the foregoing, we demand that Data Physics immediately take the following actions:

1. Publish a retraction in every online or print publication in which Data Physics has used any of the LING trademarks (including but not limited to Data Physics' homepage), properly attributing trademark ownership to Qualmark
2. Notify all customers and potential customers with whom Data Physics has used any of the LING trademarks that such trademarks are owned by Qualmark, and that Data Physics does not manufacture or sell Ling products
3. Refrain from any future representation stating or implying that any LING trademark is owned or may be used by Data Physics Corporation or any person other than Qualmark
4. Identify and return to Qualmark all intellectual property of SatCon and Qualmark (including all copies thereof) in the possession of Data Physics, or in the possession of third parties as a result of actions by Data Physics
5. Cease the marketing and sale of any products incorporating any intellectual property of SatCon or Qualmark

Please contact me at the above telephone number to confirm your intent to comply with these requests. Nothing in this letter shall constitute or imply the settlement or compromise of any claim Qualmark may have against Data Physics Corporation or any individuals, nor shall anything in this letter constitute a waiver of any rights Qualmark may have under applicable contract law, intellectual property laws, or otherwise, including but not limited to possible claims for false advertising, unfair competition, or tortuous interference with business relations.

Thank you for your prompt attention to this very serious matter. It is our sincere hope that this situation can be resolved quickly and amicably.

Sincerely,

Mark W. Reinhardt

Mark W. Reinhardt

DONALD E. SCHREIBER
A Professional Corporation
Post Office Box 2926
Kings Beach, California 96143-2926

Telephone
(530) 546-6041

Facsimile
(530) 546-2341

E-Mail
70402.2102@COMPUSERVE.COM
September 9, 2007

Mark W. Reinhardt, Esq.
Reinhardt & Associates, LLC
440 Williams Street
Denver, Colorado  80218

      Re:  Response to Your August
          30, 2007, Correspondence

Dear Mr. Reinhardt:

    Thank you for your August 30, 2007, correspondence alleging, *inter alia*, that Data Physics Corporation lacks any right to use the term "Ling" in connection with selling products or providing services.  Unfortunately, presently I am unable to properly advise Data Physics Corporation regarding the letter's various allegations because, while the letter presents several different claims, in almost all instances the letter lacks detailed factual information that is essential to a cogent analysis of each claim's merit.

**LING and LING ELECTRONICS**

    A portion of your letter alleges that "QualMark and its predecessors in interest have claimed the trademarks LING and LING ELECTRONICS, . . . , and used them in conjunction with the sale of their shaker products since the 1940s."

    So I can properly advise Data Physics Corporation regarding QualMark's claim, please provide me with a factually detailed account of everything QualMark and its predecessors in interest have done in claiming rights in the terms "Ling" and "Ling Electronics" since the 1940s, with particular emphasis on facts showing that they have exercised exclusive rights in those terms as applied to shaker and shaker related products.

Mark W. Reinhardt, Esq.
Page 2
September 9, 2007

**Registered California Trademark**

Your letter also advises me that "QualMark has a California registration on the mark LING ELECTRONICS (Trademark Reg. No. 0111646) . . . ."

Please be advised that a California corporation, Ling Electronics Corporation, was incorporated in 2003, and presently is active and in good standing. California Business and Professions Code ("BPC") § 14415 provides in pertinent part that:

> [t]he filing of articles of incorporation pursuant to Section 200 of the Corporations Code, in the case of a domestic corporation, . . . , shall establish a rebuttable presumption that **the corporation has the** <u>**exclusive**</u> **right to use as a trade name**, in the state the <u>corporate</u> name set forth in the articles or certificate, as well as any confusingly similar trade name, if the corporation is the first to have filed the articles or obtained the certificate containing the corporate name, and is actually engaged in a trade or business utilizing that corporate name or a confusingly similar name. (Emphasis supplied.)

So I can properly advise Data Physics Corporation concerning QualMark's trademark rights under California law, please explain how QualMark's registration during 2006, of a LING ELECTRONICS trademark in California, subsequent to incorporation Ling Electronics Corporation, extinguishes the corporation's right under BPC § 14415 to use its corporate name as a trade name.


**Proprietary Intellectual Property**

Your letter further alleges that "QualMark has evidence that Data Physics may be using proprietary intellectual property of QualMark, including but not limited to product drawings and specifications, to manufacture (or have manufactured) certain Data Physics products."

Again, so I can properly advise Data Physics Corporation concerning what might truly constitute QualMark's proprietary intellectual property, please specifically identify that property together with evidence establishing that QualMark owns the property. If QualMark is claiming that any of its proprietary intellectual property constitutes a trade secret, please specifically identify the trade secret and describe all steps that QualMark and its predecessors in interest have taken to preserve the information's secrecy.

Mark W. Reinhardt, Esq.
Page 3
September 9, 2007

**Bad-Faith Breach of Contract**

Near the top of the second page there is an allegation that
Data Physics Corporation is engaged in a bad-faith breach of a con-
tract.

Again, so I can properly advise Data Physics Corporation
please specifically identify the contract and provide me with a
copy thereof.


**Alleged Copyright Violation**

Again near the top of the letter's second page, there is an
implicit allegation that Data Physics Corporation is infringing
upon copyright owned by QualMark.

Again, so I can properly advise Data Physics Corporation
please specifically identify the works for which QualMark alleges
that it owns copyright that Data Physics Corporation is allegedly
infringing specifically detailing how QualMark and its predecessors
in interest acquired ownership of the copyright, and have in all
instances notified 3rd parties of the alleged copyright ownership
with particular emphasis on copies thereof published by QualMark's
predecessors in interest during the interval preceding March 1,
1989, when the United States joined the Berne Convention for the
Protection of Literary and Artistic Works.


*Test Engineering & Management*
Magazine Advertisement

Regarding the advertisement that appears in the August/Sep-
tember issue of *Test Engineering & Management* magazine, Volume 69,
Number 4, at page 4, I am advised by Data Physics Corporation that
the advertisement erroneously includes a copy of a logotype that
has been previously used by SatCon Technology Corporation for its
shaker products.  I am further advised by Data Physics Corporation
that:

  1.  prior to the advertisement's publication, Data Physics
      Corporation had provided its agency with a different
      logotype for use in the advertisement; and
  2.  inclusion of SatCon's logotype in the advertisement
      occurred due to an error by Data Physics Corporation's
      advertising agency.

I have already counseled Data Physics Corporation to do everything
feasible to ensure that the SatCon logotype never again appears in
anything sponsored by Data Physics Corporation.

Mark W. Reinhardt, Esq.
Page 4
September 9, 2007

On behalf of Data Physics Corporation, I apologize to QualMark Corporation for the erroneous inclusion of the logotype previously used by SatCon Technology Corporation.  Unfortunately, despite ones best intentions whenever human beings are involved there always exists a possibility for an honest mistake.


I look forward to receiving the information requested in this letter so I can properly counsel Data Physics Corporation regarding the issues raised in your August 30, 2007, correspondence.


Sincerely yours,

Donald E. Schreiber

cc:  Sri Welaratna, President
     Data Physics Corporation



R E I N H A R D T   &   A S S O C I A T E S ,   L L C
440 WILLIAMS STREET
DENVER, CO 80218

Mark W. Reinhardt
Attorney
720-201-4016
Fax: 303-759-5676
mark@cstew.com

October 12, 2007

Donald E. Schreiber, Esq.
Donald E. Schreiber A Professional Corporation
Post Office Box 2926
Kings Beach, CA 96143-2926

Re: Infringement of LING trademarks

Dear Mr. Schreiber:

Thank you for your September 9, 2007 letter responding to Qualmark Corporation's concerns regarding the use of its LING trademarks by Data Physics Corporation. In your letter you ask for additional information, and make various statements on behalf of your client. Below I respond to each of these points in order.

**Use of the trademarks LING and LING ELECTRONICS**

Attached to this letter is a timeline for the Ling shaker products. It clearly shows a continuity of title to the product line from the time Ling Electric Company was started by James Ling in 1947 through the 2005 acquisition by Qualmark. Examples of use of the trademark over this time period (including its use by Data Physics, where it is made clear that the manufacturer of the products was SatCon) are available and can be produced by Qualmark. As you know specimens of Qualmark's current use of the LING trademark are included in our registration application pending before the USPTO.

**California Trademark**

In your letter you cite your client's 2003 incorporation of "Ling Electronics Corporation" in California as giving Data Physics the exclusive right to use that name as a trade name. I won't use this forum to debate the differences between a trademark and a trade name, nor to speculate as to whether California trademark or trade name law takes precedence. While we cannot speak for SatCon on this matter, the fundamental facts seem clear. Data Physics used the corporation in question as part of its distribution agreement with SatCon Power Systems to sell Ling products manufactured by SatCon. There was a license, either expressed or implied, to use the trademark in conjunction with that agreement. That certainly did *not* give Data Physics the right to use the name once the distribution agreement

Exhibit 1, Page 59

– 2 –

Donald E. Schreiber, Esq.
October 12, 2007

terminated. Indeed, as stated in my August 30 letter, continuing use of the name and the relationships developed under that distribution agreement to now compete with legitimate Ling shakers in the marketplace is the vilest and most blatant form of trademark infringement.

It should also be pointed out that earlier corporations (including Ling Electronics, Inc. and Ling Electronics, Ltd.) that are direct predecessors-in-interest to Qualmark marketed under the LING trademark and made sales in California well before the 2003 incorporation of "Ling Electronics Corporation." Further, on information and belief, the corporate standing of "Ling Electronics Corporation" was allowed to lapse, and indeed that corporation was inactive when Qualmark received its California registration on LING ELECTRONICS. It was only when this dispute arose that Data Physics sought to revive the corporation in a desperate attempt to lay claim to the name. That revival, and the current use of the corporate name, constitutes an additional act of infringement by Data Physics.

**Proprietary Intellectual Property/Copyright Infringement**

Qualmark has evidence from various vendors, from various customers, and from its own analysis of Data Physics products in the marketplace indicating that Data Physics has used product design drawings and other intellectual property of SatCon and other Qualmark predecessors-in-interest in its manufacture of infringing products. Qualmark is currently developing this evidence in preparation for litigation. Obviously such use by Data Physics would be a copyright violation as well as a violation of trade secret laws. There is no question that Qualmark, SatCon and the other historical owners of the Ling product line had and have appropriate procedures in place for the marking of copyrighted works (pre and post Berne Convention) and for the protection of trade secrets.

**Bad-Faith Breach of Contract**

I do not currently have a copy of the distributor agreement between SatCon and Data Physics. This is a matter we are pursuing with SatCon. In the meantime, if your client has a copy of the agreement, or, alternately, disputes its existence, please advise. On information and belief it is possible that an agreement was never signed. Nevertheless, whether the agreement was in writing or oral, the parties clearly performed under it for a period of 2 years (see attached timeline). Again, if the facts are as we currently believe they are, it would be hard to imagine a clearer case of bad-faith breach.

*Test Engineering and Management* Advertisement

Thank you for the information you supplied regarding the erroneous inclusion of the SatCon logotype in the advertisement. We understand that mistakes can happen, and it is not Qualmark's intention to prosecute inadvertent use. Nevertheless, Qualmark disputes the right of Data Physics to place any ad inappropriately using LING, LING ELECTRONICS, or Qualmark's other trademarks, or misrepresenting the source of Ling shakers.

Mr. Schreiber, a couple of other points should be made. First, several of the issues raised in our correspondence may involve SatCon. Nothing in this letter should be taken as representing or in any way prejudicing SatCon's position in this matter. Second, I wanted to get back to you quickly and give you additional information that was readily available. Nevertheless, I realize that this letter may not include all the information you will need to advise your client on these matters. Much of that information is already in the hands of your client and, to be frank, your September 9 letter provided very little information about Data Physics' position on any of these matters. It certainly did not contest the majority of Qualmark's allegations. It looks as though we are headed for litigation, both in court and before the Trademark Trial and Appeal Board, and certainly the discovery process will be one means of fully developing the facts.

Exhibit 1, Page 60

–3 –

Donald E. Schreiber, Esq.
October 12, 2007

Sincerely,

Mark W. Reinhardt

— 4 —

Donald E. Schreiber, Esq.
October 12, 2007

**About LING:**

Ling Electronics is one of the nation's most experienced manufacturers of vibration and shock environmental test systems and fixtures. To date, over 6,000 electro-dynamic shaker systems have been sold and supplied by Ling Electronics, Inc. Serving an international cross-section of governmental, industrial and scientific markets, Ling Electronics has been a leading manufacturer of Vibration and Acoustic Testing Systems for over 45 years.

New "state-of-the-art" concepts/products that Ling Electronics was FIRST to develop and introduce include:
- Continuously wound field coils,
- Low cost digital vibration controllers,
- Lin-E-Air™ load suspension systems, inductive drive (solid metal) armatures,
- Automated control variable AC Power Sources,
- Robust 45,000 force pound shaker systems, and
- TURNKEY Vibration Systems (shakers, slip tables, fixtures & amplifiers integrated and installed as single operational system). In fact, Ling is still the only U.S. manufacturer that builds complete turnkey solutions: including complex fixtures and head expanders.

Since its formation, Ling Electronics has been deeply involved in the business of environmental testing. Through participation in both commercial and government contracts, Ling Electronics has designed and manufactured sophisticated systems to perform complex vibration, high intensity sound and shock tests on all types of components, assemblies and aerospace vehicles. Test systems produced by Ling have contributed significantly to the high reliability of this country's space flight and exploration equipment.

**LING Historical Timeline:**

1947: Entrepreneur James Ling (born 1922) founded his own Dallas electrical contracting business, Ling Electric Company.

1958: Ling Electric purchased United Electronics of Newark, NJ and then paid $320,000 in cash and promissory notes for Calidyne Co. of Winchester, MA. Ling Electric merged these companies to form Ling Electronics and began manufacture of vibration testers (ED shakers).

1959: Ling Electronics merges with Altec (a leading acoustic company), becomes a Delaware company under the name Ling-Altec and files registration with the Securities and Exchange Commission.

1960: Ling-Altec merges with defense aerospace contractors Temco and Vought, creating the company name of LTV Ling Altec (Dallas, TX based, but the Ling operations were moved to Anehiem, CA).

1961: First solid state products produced, beginning the conversion of the entire product line.

1966: Plant space doubles, company now employs 680 people.

1968: Altec introduces AcoustaVoice, the visionary system of room equalization installed by trained contractors using 1/3-octave band EQ and a battery of calibrated test equipment.

1971: Rollout of AcoustaVoicing, an evolved system with active 1/3-octave graphic EQ stacks (AcoustaVoice model 9860A), and a real-time analyzer (model 8050A) for setup. This becomes reasonable enough even to install in the home.

1972: Bloated parent conglomerate Ling-Temco-Vought begins spinning off subsidiaries, and Ling-Altec becomes the public Altec Corporation. By 1974, sales are nearly $60 million a year, and in 1975 they will claim 1000 employees, more than JBL. Apparently, though, the company can never overcome debts stemming from the spin-off.

Exhibit 1, Page 62

– 5 –

Donald E. Schreiber, Esq.
October 12, 2007

1983: Altec files for Chapter 11 bankruptcy and goes into reorganization. The consumer products division is sold to Sparkomatic Corporation, makers of auto accessories and car radios. Remaining manufacturing moves to Oklahoma City, with other operations to follow a year later. Ling Electronics division purchased by Mechanical Technology Inc.

1999: SatCon Power Systems, Inc. (NASDAQ: SATC) purchases Ling Electronics from Mechanical Technology Inc.

2003 (Oct): Data Physics Corporation agrees to be world sales agent/distributor for Ling Electronics products, representing SatCon Power Systems, Inc.

2005 (Oct): Agreement with Data Physics ends.

2005 (Dec. 13): Qualmark Ling Corporation (OTCBB: QMRK) purchases Ling Electronics from SatCon Power Systems, Inc.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

5  In the Matter of Trademark Application Serial No. 78/836,304
For the Mark LING
Published in the Official Gazette on June 26, 2007

10  Data Physics Corporation

        v.                          Opposition No. _____

QualMark Ling Corporation
15

NOTICE OF OPPOSITION

        Data Physics Corporation, a California corporation having an

20  office at 1741 Technology Drive, Suite 260, San Jose, California

95110 ("Data Physics), believes that it will be damaged by

registration of the mark shown in the above-identified application,

and therefore opposes its registration for all classes identified

in the application.

25

        The grounds for opposition are as follows:

1.  A record obtained from the United States Patent and Trademark

    Office ("USPTO") Internet WEB site attached hereto as Exhibit

    A reports publication on June 26, 2007, in the *Official*

30  *Gazette* of an application by QualMark Ling Corporation to

    register under Section 1(a) of the Lanaham Act, 15 United

    States Code ("U.S.C.") § 1051(a), the term Ling:

    a.  as a trademark in International Class 009 for:

35          "electrical and scientific apparatus used to test
            industrial, electronic and electromechanical compo-
            nents and parts in the nature of an electro-dynamic
            shaker, namely, a stress screening vibrator and
            control apparatus to impart vibrational stimuli to
            a device or product located on a table connected to

such vibrator; an amplifier; and a power module;" and

    b.   as a service mark in International Class 037 for:

5          "repair, maintenance, and installation of testing equipment in the nature of an electro-dynamic shaker, namely, a stress screening vibrator and control apparatus to impart vibrational stimuli to a device or product located on a table connected to 10          such vibrator."

  2.   Data Physics, which since 2003, has owned a subsidiary California corporation named Ling Electronics Corporation, sells and provides services for various different types of 15  vibration testing equipment including shakers.

  3.   Counsel for applicant QualMark Ling Corporation, and/or for its parent corporation QualMark Corporation (as used herein either individually or collectively "QualMark"), have in writing alleged, both directly to Data Physics and to 3rd 20  parties unrelated to Data Physics, that Data Physics' use of the term "Ling" in advertisements for shaker products and/or services and/or in connection with the sale of such products and/or services violates Qualmark's rights in the term "Ling," standing alone, and/or in the phrase "Ling Electronics."

25  4.   The term "Ling" as applied to shakers or to services for shakers is primarily merely the surname of the founder, i.e. James J. (Jimmy) Ling, of at least one of QualMark's predecessor(s) in interest Ling Electronics Company and/or Ling Electronics, Inc., and consequently 15 U.S.C. §1052(e)(4) 30  bars Applicant QualMark's registration of the surname "Ling"

NOTICE OF OPPOSITION       - 2 -     App. Ser. No. 78/836,304

as a trademark for shakers or service mark for shaker services.

5.  Applicant QualMark, and its predecessor(s) in interest, have for many years in the past failed to exercise exclusive rights in the term "Ling," standing alone, when applied to:

   a.  the general class of goods for which applicant seeks to register the term, i.e. shakers in international class 009; and/or

   b.  the general class of services for which applicant seeks to register the term, i.e. the repair, maintenance and installation of shakers in international class 037.

6.  Applicant QualMark, and its predecessor(s) in interest, have for many years in the past failed to control the quality of shakers being sold by others under trade name(s) which include the term "Ling."

7.  Applicant QualMark, and its predecessor(s) in interest, have for many years in the past failed to control the quality of shaker repair, maintenance and/or installation services being provided by others under trade name(s) which include the term "Ling."

8.  On information and belief, predecessor(s) in interest to applicant QualMark have for many years in the past failed to oppose use of the term "Ling" in connection with the sale of shakers by competitors of applicant's predecessor(s) in interest in the sale of such goods.

NOTICE OF OPPOSITION         - 3 -      App. Ser. No. 78/836,304

9.  On information and belief, predecessor(s) in interest to applicant QualMark have for many years in the past failed to oppose use of the term "Ling" in connection with shaker repair, maintenance and/or installation services by competitors of applicant's predecessor(s) in interest providing such services.

10. In writing, counsel for QualMark have implicitly admitted that applicant possesses no exclusive right(s) in the term "Ling," standing alone, either as a trademark for the sales of shakers and/or service mark for providing services for shakers.

11. The mark sought to be registered, LING, has lost its significance as an indication of source for the sales of shakers and/or as an indication of source for providing services for shakers due to applicant Qualmark's predecessor(s) in interest failing for many years in the past to:

a.  exercise exclusive rights in the term "Ling," standing alone, when applied to shakers and/or services for shakers; and/or

b.  control the quality of:

    i.  shakers being sold by others under trade name(s) which include the term "Ling;" and/or

    ii. shaker repair, maintenance and/or installation services being provided by others under trade name(s) which include the term "Ling;" and/or

c.  on information and belief, oppose use of the term "Ling" in connection with:

NOTICE OF OPPOSITION          - 4 -          App. Ser. No. 78/836,304

Exhibit 1, Page 67

        i.   the sale of shakers by competitor(s) of applicant's

             predecessors(s) in interest; and/or

       ii.   providing shaker repair, maintenance and/or instal-

             lation services by competitor(s) of applicant's

5            predecessors(s) in interest; and

therefore, pursuant to 15 U.S.C. § 1127, on information and belief applicant Qualmark's predecessor(s) in interest have abandoned exclusive rights in the term, Ling, for the sales of shakers and/or for providing services for shakers.

10   12.  The present application to register the term "Ling" as a trademark and/or service mark related to shakers and/or shaker services is void *ab initio* because, on information and belief, applicant Qualmark knew, or in the exercise of due diligence should have known, that term "Ling" as applied to shakers or

15     to services for shakers is primarily merely the surname of the founder, i.e. James J. (Jimmy) Ling, of at least one of QualMark's predecessor(s) in interest, and also upon infor-mation and belief, in connection with the present application to register as a trademark and service mark the term "Ling,"

20     applicant QualMark neglected to disclose to the USPTO that it was attempting to register primarily merely a surname both as a trademark and service mark.

   13.  The present application to register the term "Ling" as a trademark and/or service mark related to shakers and/or shaker

25     services is void *ab initio* because, on information and belief, applicant Qualmark knew, or in the exercise of due diligence

should have known, that applicant's predecessor(s) in interest have for many years in the past failed to:

   a.   exercise exclusive rights in the term "Ling," standing alone, when applied to shakers and/or services for
5         shakers; and/or

   b.   control the quality of:

      i.   shakers being sold by others under trade name(s) which include the term "Ling;" and/or

     ii.  shaker repair, maintenance and/or installation
10           services being provided by others under trade name(s) which include the term "Ling;" and/or

   c.   oppose use of the term "Ling" in connection with:

      i.   the sale of shakers by competitor(s) of applicant's predecessors(s) in interest; and/or

     ii. providing shaker repair, maintenance and/or
15         installation services by competitor(s) of applicant's predecessors(s) in interest; and

also upon information and belief, in connection with the present application to register as a trademark and service
20 mark the term "Ling," applicant QualMark neglected to disclose to the USPTO any of the preceding failures of applicant's predecessor(s) in interest.

By   _(signature)_                Date  _22 October 2007_
25       Donald E. Schreiber
      Attorney for Opposer

NOTICE OF OPPOSITION      - 6 -     App. Ser. No. 78/836,304

Side - 1



NOTICE OF PUBLICATION UNDER §12(a)
MAILING DATE: Jun 6, 2007
PUBLICATION DATE:  Jun 26, 2007

The mark identified below will be published in the Official Gazette on Jun 26, 2007.  Any party who believes they will be damaged by registration of the mark may oppose its registration by filing an opposition to registration or a request to extend the time to oppose within thirty (30) days from the publication date on this notice.  If no opposition is filed within the time specified by law, the USPTO may issue a Certificate of Registration.

To view the Official Gazette online or to order a paper copy, visit the USPTO website at http://www.uspto.gov/web/trademarks/tmog/ any time within the five-week period after the date of publication.  You may also order a printed version from the U.S. Government Printing Office (GPO) at http://bookstore.gpo.gov or 202-512-1800.  To check the status of your application, go to http://tarr.uspto.gov/.

SERIAL NUMBER:     78836304
MARK:              LING
OWNER:             QualMark Ling Corporation

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA  22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

MARK W REINHARDT
REINHARDT & ASSOCIATES LLC
440 WILLIAMS ST
DENVER, CO   80218

**EXHIBIT A**

Exhibit 1, Page 70

Side - 1



NOTICE OF PUBLICATION UNDER §12(a)
MAILING DATE: Jun 6, 2007
PUBLICATION DATE:  Jun 26, 2007

The mark identified below will be published in the Official Gazette on Jun 26, 2007.  Any party who believes they will be damaged by registration of the mark may oppose its registration by filing an opposition to registration or a request to extend the time to oppose within thirty (30) days from the publication date on this notice.  If no opposition is filed within the time specified by law, the USPTO may issue a Certificate of Registration.

To view the Official Gazette online or to order a paper copy, visit the USPTO website at http://www.uspto.gov/web/trademarks/tmog/ any time within the five-week period after the date of publication.  You may also order a printed version from the U.S. Government Printing Office (GPO) at http://bookstore.gpo.gov or 202-512-1800.  To check the status of your application, go to http://tarr.uspto.gov/.

SERIAL NUMBER:        78836304
MARK:                 LING
OWNER:                QualMark Ling Corporation

Side - 2

UNITED STATES PATENT AND TRADEMARK OFFICE
COMMISSIONER FOR TRADEMARKS
P.O. BOX 1451
ALEXANDRIA, VA  22313-1451

FIRST-CLASS MAIL
U.S POSTAGE
PAID

MARK W REINHARDT
REINHARDT & ASSOCIATES LLC
440 WILLIAMS ST
DENVER, CO  80218

Exhibit 1, Page 71

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02665-REB-KLM

QUALMARK CORPORATION, and
QUALMARK LING CORPORATION,
Both Colorado corporations,

      Plaintiffs,

v.

DATA PHYSICS CORPORATION, a California corporation,

      Defendant.

---

### ANSWER OF DEFENDANT DATA PHYSICS CORPORATION

---

Defendant DATA PHYSICS CORPORATION ("DATA PHYSICS"), by and through its

undersigned counsel, files its Answer to the Complaint filed by Plaintiffs QUALMARK

CORPORATION, and QUALMARK LING CORPORATION ("QUALMARK" and/or

Plaintiff), filed on December 21, 2007 and in support thereof respectfully shows as follows:

### ANSWER TO COMPLAINT

Data Physics responds to the separately numbered paragraphs of the Complaint filed by

QualMark as follows:

    1.     Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the averments and allegations set forth in paragraph 1 and, on that basis, denies said

averments and allegations.

{00341632.1}
QUALMARK CORPORATION et al v. DATA PHYSICS CORPORATION
Civil Action No. 07-cv-02665-REB-KLM
ANSWER OF DEFENDANT DATA PHYSICS CORPORATION

1

Exhibit 2, Page 1

2.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 2 and, on that basis, denies said averments and allegations.

3.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 3 and, on that basis, denies said averments and allegations.

4.    Data Physics admits it is a California Corporation having a place of business at 1741 Technology Drive, Suite 260, San Jose, California 95110, and that it sells a variety of test products but denies the remaining averments and allegations set forth in paragraph.

5.    The averments and allegations set forth in paragraph 5 are denied to the extent that subject matter jurisdiction is not proper in this District.

6.    The averments and allegations set forth in paragraph 6 are denied.

7.    The averments and allegations set forth in paragraph 7 are denied to the extent that venue is not proper in this judicial district.

8.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 8 and, on that basis, denies said averments and allegations.

9.    Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 9 and, on that basis, denies said averments and allegations.

{00341632.1}
QUALMARK CORPORATION et al v. DATA PHYSICS CORPORATION
Civil Action No. 07-cv-02665-REB-KLM
ANSWER OF DEFENDANT DATA PHYSICS CORPORATION
2

Exhibit 2, Page 2

10.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 10 and, on that basis, denies said averments and allegations.

11.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 11 and, on that basis, denies said averments and allegations.

12.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 12 and, on that basis, denies said averments and allegations.

13.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 13 and, on that basis, denies said averments and allegations.

14.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 14 and, on that basis, denies said averments and allegations.

15.     The averments and allegations set forth in paragraph 15 are admitted.

16.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 16 and, on that basis, denies said averments and allegations.

17.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 17 and, on that basis, denies said averments and allegations.

18.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 18 and, on that basis, denies said averments and allegations.

19.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the averments and allegations set forth in paragraph 19 and, on that basis, denies said averments and allegations.

20.     Defendant admits that the described letter was sent, and the contents speak for themselves and Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments and allegations set forth in paragraph 20 and, on that basis, denies said averments and allegations.

21.     Defendant admits that the described letter was sent, and the contents speak for themselves and Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments and allegations set forth in paragraph 21 and, on that basis, denies said averments and allegations.

22.     Defendant admits that the described letter was sent, and the contents speak for themselves and Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments and allegations set forth in paragraph 22 and, on that basis, denies said averments and allegations.

{00341632.1}
QUALMARK CORPORATION et al v. DATA PHYSICS CORPORATION
Civil Action No. 07-cv-02665-REB-KLM
ANSWER OF DEFENDANT DATA PHYSICS CORPORATION
4

Exhibit 2, Page 4

23.     Defendant admits that the described letter was sent, and the contents speak for themselves and Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining averments and allegations set forth in paragraph 23 and, on that basis, denies said averments and allegations.

24.     The averments and allegations set forth in paragraph 24 are denied.

25.     The averments and allegations set forth in paragraph 25 are denied.

26.     The averments and allegations set forth in paragraph 26 are denied.

27.     The averments and allegations set forth in paragraph 27 are denied.

28.     The averments and allegations set forth in paragraph 28 are denied.

29.     Defendants incorporate its responses to paragraphs 1-28 as though fully set forth herein.

30.     The averments and allegations set forth in paragraph 30 are admitted.

31.     The averments and allegations set forth in paragraph 31 are denied to the extent it contends that Plaintiffs are the true and correct owners of the trademarks.

32.     Defendants incorporate its responses to paragraphs 1-31 as though fully set forth herein.

33.     The averments and allegations set forth in paragraph 33 are denied.

34.     The averments and allegations set forth in paragraph 34 are denied.

35.     The averments and allegations set forth in paragraph 35 are denied.

36.     The averments and allegations set forth in paragraph 36 are denied.

37.     The averments and allegations set forth in paragraph 37 are denied.

{00341632.1}
QUALMARK CORPORATION et al v. DATA PHYSICS CORPORATION
Civil Action No. 07-cv-02665-REB-KLM
ANSWER OF DEFENDANT DATA PHYSICS CORPORATION
5

Exhibit 2, Page 5

38.    The averments and allegations set forth in paragraph 38 are denied.

39.    Defendants incorporate its responses to paragraphs 1-38 as though fully set forth

herein.

40.    The averments and allegations set forth in paragraph 40 are denied.

41.    The averments and allegations set forth in paragraph 41 are denied.

42.    The averments and allegations set forth in paragraph 42 are denied.

43.    The averments and allegations set forth in paragraph 43 are denied.

44.    Defendants incorporate its responses to paragraphs 1-43 as though fully set forth

herein.

45.    The averments and allegations set forth in paragraph 45 are denied.

46.    The averments and allegations set forth in paragraph 46 are denied.

47.    The averments and allegations set forth in paragraph 47 are denied.

48.    The averments and allegations set forth in paragraph 48 are denied.

49.    Defendants incorporate its responses to paragraphs 1-48 as though fully set forth

herein.

50.    The averments and allegations set forth in paragraph 50 are denied.

51.    The averments and allegations set forth in paragraph 51 are denied.

52.    The averments and allegations set forth in paragraph 52 are denied.

53.    The averments and allegations set forth in paragraph 53 are denied.

54.    Defendants incorporate its responses to paragraphs 1-53 as though fully set forth

herein.

{00341632.1}
QUALMARK CORPORATION et al v. DATA PHYSICS CORPORATION
Civil Action No. 07-cv-02665-REB-KLM
ANSWER OF DEFENDANT DATA PHYSICS CORPORATION
6

Exhibit 2, Page 6

55.    The averments and allegations set forth in paragraph 55 are denied.

56.    The averments and allegations set forth in paragraph 56 are denied.

57.    The averments and allegations set forth in paragraph 57 are denied.

58.    Defendants incorporate its responses to paragraphs 1-57 as though fully set forth herein.

59.    The averments and allegations set forth in paragraph 59 are denied.

60.    The averments and allegations set forth in paragraph 60 are denied.

61.    The averments and allegations set forth in paragraph 61 are denied.

62.     The averments and allegations set forth in paragraph 62 are denied.

63.     The averments and allegations set forth in paragraph 63 are denied.

## PRAYER FOR RELIEF

In response to Plaintiff's prayer for relief, Defendant denies that Plaintiff is entitled to any relief from Defendant.

## AFFIRMATIVE DEFENSES

Defendant, Data Physics Corporation, reserves the right to rely at trial upon one or more of the following defenses:

## FIRST AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery, in whole or in part, by the doctrine of unclean hands.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery, in whole or in part, by the doctrine of estoppel.

{00341632.1}
QUALMARK CORPORATION et al v. DATA PHYSICS CORPORATION
Civil Action No. 07-cv-02665-REB-KLM
ANSWER OF DEFENDANT DATA PHYSICS CORPORATION
7

Exhibit 2, Page 7

THIRD AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery, in whole or in part, by the doctrine of waiver.

FOURTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery, in whole or in part, by the doctrine of laches.

FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred by lack of subject matter jurisdiction and/or improper

venue.

SIXTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery, in whole or in part, by failure to state a claim upon

which relief can be granted.

SEVENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery, in whole or in part, based upon Plaintiff's failure to

have any enforceable rights in any of its purported trademarks that have not been used, nor are

currently in use, irrespective of whether trademark applications have been filed for such marks.

EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery, in whole or in part, based upon Plaintiff's abandonment

of any rights in the marks asserted.

NINTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery, in whole or in part, due to Plaintiff's California

trademark being invalid and unenforceable.

{00341632.1}
QUALMARK CORPORATION et al v. DATA PHYSICS CORPORATION
Civil Action No. 07-cv-02665-REB-KLM
ANSWER OF DEFENDANT DATA PHYSICS CORPORATION
8

Exhibit 2, Page 8

TENTH AFFIRMATIVE DEFENSE

Plaintiff is barred from recovery by the release of Defendant for the alleged acts.

ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, are offset by the injury it caused to Defendant.

TWELFTH AFFIRMATIVE DEFENSE

Plaintiff failed to take reasonable steps to mitigate its damages, if any.

WHEREFORE, Defendant prays that Plaintiff take nothing by its Complaint and that the

Complaint be dismissed with prejudice, for reasonable attorneys' fees, for costs of suit; and for

such other and further relief as the Court deems just and proper.

Respectfully submitted,
LARIVIERE, GRUBMAN & PAYNE, LLP

Dated: February 4, 2008          /s/ Robert W. Payne
                                 Robert W. Payne
                                 Alan E. Engle
                                 Nicole A. Smith
                                 19 Upper Ragsdale Drive, Suite 200
                                 P.O. Box 3140
                                 Monterey, CA 93942
                                 Telephone: 831-649-8800
                                 Facsimile: 831-649-8835
                                 Attorneys for Defendant
                                 DATA PHYSICS CORPORATION

Dated: February 4, 2008          /s/ Herbert A. Delap
                                 Herbert A. DeLap
                                 DUFFORD & BROWN, P.C.
                                 1700 Broadway, Suite 2100
                                 Denver, CO 80290-2101
                                 Telephone: 303-861-8013
                                 Facsimile: 303-832-3804
                                 Attorneys for Defendant
                                 DATA PHYSICS CORPORATION

{00341632.1}
QUALMARK CORPORATION et al v. DATA PHYSICS CORPORATION
Civil Action No. 07-cv-02665-REB-KLM
ANSWER OF DEFENDANT DATA PHYSICS CORPORATION

**CERTIFICATE OF SERVICE**

I certify that on the 4th day of February, 2008, a true and correct copy of the **ANSWER OF DEFENDANT DATA PHYSICS CORPORATION** served via electronic mail to the following:

> Robert R. Brunelli    Rbrunelli@sheridanross.com
> Sabrina C. Stavish    sstavish@sheridanross.com
> Paul S. Cha          pcha@sheridanross.com
> Sheridan Ross P.C.
> 1560 Broadway, Suite 1200
> Denver, CO 80202-5141

*/s/ Carol J. Kelly*
Carol J. Kelly, Legal Assistant

{00341632.1}
QUALMARK CORPORATION et al v. DATA PHYSICS CORPORATION
Civil Action No. 07-cv-02665-REB-KLM
ANSWER OF DEFENDANT DATA PHYSICS CORPORATION

Exhibit 2 Page 10

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  07-cv-02665-REB-KLM

QUALMARK CORPORATION, and
QUALMARK LING CORPORATION, both Colorado corporations,

Plaintiffs,

v.

DATA PHYSICS CORPORATION, a California corporation,

Defendant.

---

## ORDER SETTING
## SCHEDULING/PLANNING CONFERENCE

---

The above captioned case has been referred to Magistrate Judge Kristen L. Mix pursuant to the Order of Reference entered by District Judge Robert E. Blackburn on December 27, 2007.

IT IS HEREBY **ORDERED** that a Scheduling/Planning Conference pursuant to Fed.R.Civ.P. 16(b) shall be held on **February 27, 2008**, commencing at **10:00 a.m.** in Courtroom A501, 5th Floor of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver. If this date is not convenient for any counsel/pro se party, he/she shall **file a motion** to reschedule the conference to a more convenient date, and shall  list dates in the motion which are available for all counsel/pro se parties.

**Absent exceptional circumstances, no request for rescheduling any appearance in this court will be considered unless a motion is made FIVE (5) business days in advance of the date of appearance.**

**The plaintiff shall notify all parties who have not entered an appearance of the date and time of the Scheduling/Planning Conference.**

IT IS **ORDERED** that counsel/pro se parties in this case are to hold a pre-scheduling conference meeting and **prepare a proposed Scheduling Order** in accordance with Fed.R.Civ.P. 26(f), as amended, and the instructions accompanying the form scheduling order on or before 21 days before the scheduling conference. Pursuant to Fed.R.Civ.P. 26(d), as amended, no discovery is to be exchanged until after the Rule 26(f) conference meeting.

No later than five (5) calendar days prior to the Scheduling/Planning Conference, counsel/pro se parties shall submit their proposed Scheduling Order in the format available on the Court's website at: www.cod.uscourts.gov under magistrate judges forms (**in PDF**) in compliance with the Court's Electronic Case Filing Procedures which are also available on the Court's website.

Exhibit 3, Page 1

An additional copy of the proposed scheduling order is to be provided to my chambers at Mix_Chambers@cod.uscourts.gov by **e-mail attachment** with the subject line stating "proposed Scheduling Order" and in **WordPerfect format**.

In addition to the instructions for completing the Scheduling Order, which may be found on the court's website with the scheduling order form, counsel and pro se parties should consider whether electronic discovery will be needed. Specifically, in those cases in which: (I) the parties' substantive allegations involve extensive computer-generated records; (ii) a substantial amount of disclosure or discovery will involve information or records in electronic form (i.e., e-mail, word processing, databases); (iii) expert witnesses will develop testimony based in large part on computer data and/or modeling; or (iv) any party plans to present a substantial amount of evidence in digital form at trial, the parties shall confer regarding what efforts will be needed to preserve computer records and data, facilitate computer-based discovery and who will pay costs, resolve privilege issues, limit discovery costs and delay, and avoid discovery disputes relating to electronic discovery. The parties shall include these issues, if appropriate, in the proposed scheduling order and shall be prepared to discuss them at the scheduling/planning conference.

Further, on or before 14 days after the Rule 26(f) pre-scheduling conference meeting, the parties shall comply with the mandatory disclosure requirements of Fed.R.Civ.P. 26(a)(1), as amended.

Parties who are pro se or do not have access to the internet may obtain the scheduling order form and instructions from the Clerk's Office, Room A105, in the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado, 80294. Scheduling Orders prepared by parties not represented by counsel, or without access to electronic case filing, are to be submitted to the Clerk of the Court on paper.

IT IS **FURTHER ORDERED** that at least five (5) calendar days before the Scheduling/Planning Conference, counsel/pro se parties shall submit a brief Confidential Settlement Statement to the Magistrate Judge **ONLY**, outlining the facts and issues involved in the case, and the possibilities for settlement, including any settlement authority from the client. Electronic case filing participants are to submit their Confidential Settlement statements to chambers at Mix_Chambers@cod.uscourts.gov. with the subject line stating "Confidential Settlement Statement" along with the case number and case caption. The Confidential Settlement statement should be submitted **in PDF** format and sent as an attachment to the e-mail. Documents with attachments totaling over 15 pages shall be submitted **to the Clerk's office** in an envelope labeled "Personal Materials" addressed to Magistrate Judge Kristen L. Mix.[1] Counsel/pro se parties should be prepared to discuss settlement at the Scheduling/Planning Conference and should obtain full settlement authority from the client, or have the client available either in person or by telephone.

All out-of-state counsel shall comply with D.C.COLO.LCivR 83.3 before the Scheduling/Planning Conference.

---

[1] **Do not label this envelope "confidential settlement statement" because you will risk the public filing of the document.**

Exhibit 3 Page 2

It is the responsibility of counsel/pro se parties to notify the Court of his/her entry of appearance, notice of withdrawal, notice of substitution of counsel, or notice of change of address, e-mail address, or telephone number by complying with the Court's Electronic Case Filing Procedures or paper-filing the appropriate document with the Court.

**The Parties are further advised that they shall not assume that the Court will grant the relief requested in any motion. Failure to appear at a court-ordered conference or to comply with a court-ordered deadline which has not been vacated by court order may result in the imposition of sanctions, under Rule 16(f), Fed.R.Civ.P.**

**Anyone seeking entry to the Alfred A. Arraj United States Courthouse will be required to show valid photo identification.** *See* **D.C.COLO.LCIVR. 83.2B. Failure to comply with this requirement will result in denial of entry to the courthouse.**

DATED: January 2, 2008 at Denver, Colorado.

BY THE COURT:

  s/ Kristen L.  Mix
Kristen L.  Mix
United States Magistrate Judge

**EXHIBIT 4**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 07-cv-02665-REB-KLM

QUALMARK CORPORATION, and
QUALMARK LING CORPORATION,
Both Colorado corporations,

      Plaintiffs,

v.

DATA PHYSICS CORPORATION,
a California corporation,

      Defendant.

---

**DEFENDANT DATA PHYSICS' MOTION TO TRANSFER VENUE**

---

      Pursuant to 28 U.S.C. § 1404(a) Defendant Data Physics Corporation moves for

an order transferring this action to the Northern District of California for the convenience

of the parties and witnesses, and in the interests of justice.  This Action concerns a

California state registered trademark, in connection with both cancellation thereof and a

priority dispute vis-à-vis a trade name registered in California, through incorporation by

Defendant in the state of California.  The dispute will be determined in accordance with

California state trademark law, in which Defendant and nearly all likely witnesses to the

priority and validity issues reside in California.

      This motion is based on this Motion to Transfer Venue, the accompanying

Memorandum in Support of Motion to Transfer Venue, the accompanying Declaration of

Sri Welaratna and exhibits attached thereto, the pleadings and other documents on file in this action, and any further evidence and oral argument that the Court may request with respect to this motion.

## I. BACKGROUND

### A. Procedural History

This case is essentially a trademark dispute involving the alleged infringement of a California registered trademark and two common law trademarks. Specifically, Qualmark and its subsidiary Qualmark Ling (collectively "Qualmark") allege that Data Physics, a California corporation, has infringed Qualmark's California state trademark. The state trademark registration No. 0111,646 is issued for the mark LING ELECTRONICS. See Complaint, Ex. 4. Plaintiff also asserts common law marks to LING and LING ELECTRONICS and alleges that Data Physics has committed various business torts connected to its alleged infringement.

Data Physics has asserted a number of affirmative defenses, including defenses based on its incorporation of a California subsidiary named "Ling Electronics" over two years prior to Qualmark's registration of the LING ELECTRONICS mark. Data Physics further contends that Qualmark's registration was improperly granted under California law and that it is invalid and unenforceable.

An action in the California state court is pending against Plaintiff regarding these state trademark and related issues. On February 28, 2008, Data Physics filed an action in Santa Clara Superior Court in California alleging invalidity of Qualmark's California

registration as well as various business torts related to the parties' dispute over rights to the names "Ling" and "Ling Electronics".

Data Physics now moves for an order transferring this action to the Northern District of California for the convenience of the parties and the witnesses and in the interests of justice.

### B. Factual Background

This action is intimately tied to California. Underlying the case are the dealings of a California company, Data Physics; Plaintiff Qualmark's California-registered trademark; Defendant's right to use its California trade name; and the prior actions of California businesses operating under the Ling name.

As Plaintiffs' Complaint shows, the names "Ling" and "Ling Electronics" have long been associated with electrodynamic shakers and other vibration testing equipment for military and industrial applications. Complaint 4, 5. From approximately 1960 to 2002, various California entities have sold Ling shakers and/or operated under the name Ling Electronics. *Id.* Only recently, in 2002, did Qualmark's predecessor in interest, SatCon, move manufacturing operations outside California to Worcester, Massachusetts. Declaration of Sri Welaratna at 2.

In 2003 Data Physics incorporated its own California subsidiary named "Ling Electronics" in connection with its exclusive distribution of SatCon shaker products. Welaratna Decl. at 2. Data Physics currently operates its own water-cooled shaker manufacturing facility in Corona, California. *Id.* In December 2005, Qualmark purchased SatCon's shaker manufacturing assets and transferred operations to West

Haven, Connecticut. *Id.* Finally, in 2006, Qualmark filed for the California trademark registration it is asserting in this action. *Id.* Thus, the legal and factual nexus of this case is squarely within California, and it would serve the convenience of the parties and the witnesses and the interests of justice for this action to be transferred to the Northern District of California.

## II. ARGUMENT

This Motion to Transfer should be granted for a number of reasons relating to convenience of the parties. However, unique to this case are the issues of California local law, which, as a matter of policy, compel transfer to California. These considerations include the interests of justice and convenience to both parties, this Court, and the California state regulatory and judicial system.

At the core of this dispute is a trademark registered under the California state trademark system and a trade name registered under the California incorporation system. Thus, there is a clash between rights granted or recognized by two administrative bodies under the California regulatory system.

While it may be possible for this Court to interpret and dictate how California should apply its laws in this sensitive area, the State of California has a strong governmental interest in having courts with jurisdiction and a body of jurisprudence concerning California regulatory and state-originated rights deciding those matters.

### A. Two-Part Test for Motions to Transfer Under 1404(a)

The transfer statute, 28 U.S.C. § 1404(a), states that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil

action to any other district or division where it might have been brought." This creates a
two-part test. First, the Court must determine whether this action "might have been
brought" in the district to which transfer is requested, which requires that personal
jurisdiction and venue are proper in the transferee court. Second, the Court must use
its discretion to decide whether the action should be transferred "[f]or the convenience
of the parties and witnesses, in the interest of justice." *Id.* This case satisfies both
criteria.

### B. Personal Jurisdiction and Venue are Available in the Northern District of California

Personal jurisdiction can be exercised by a transferee court over an out-of-state
defendant to the extent permissible by a state's long-arm statute. California's long-arm
statue is coextensive with the limits of due process. Cal. Civ. Code Pro. § 410.0. Thus,
jurisdiction is available in the Northern District of California to the extent consistent with
due process. On information and belief, Qualmark and Qualmark Ling have significant
contacts with the state of California and have purposefully availed themselves of the
privileges and benefits of California law through various activities, including advertising,
sales, and registration of the '646 mark. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,
472 (1985). Thus, personal jurisdiction is present in the northern District of California.

Venue in the Northern District of California is proper as well. Under 28 U.S.C.
1391(c), venue is proper in a judicial district where a corporation is subject to personal
jurisdiction. Defendants have contacts with the Northern District of California sufficient
to support personal jurisdiction. On information and belief, Defendants have sold
products within the Northern District, advertised within the Northern District, maintained

an interactive internet presence accessible from the Northern District, and committed

torts related to this action within the Northern District.

### C. Both Convenience and Justice would be Served by Transferring this Action to the Northern District of California

Section 1404(a) places discretion in the district Court to decide motions for

transfer according to an "individualized, case-by-case consideration of convenience and

fairness." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th

Cir. 1991). The Tenth Circuit has identified a number factors to guide a district court's

consideration:

> Among the factors [a district court] should consider is the [1] plaintiff's choice of forum; [2] the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; [3] the cost of making the necessary proof; [4] questions as to the enforceability of a judgment if one is obtained; [5] relative advantages and obstacles to a fair trial; [6] difficulties that may arise from congested dockets; [7] the possibility of the existence of questions arising in the area of conflict of laws; [8] the advantage of having a local court determine questions of local law; and, [9] all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id.*, quoting *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). An

assessment of these factors, in rough order of significance in this action, strongly favors

transfer.

### 1. Determination of Issues of Local Law

The central allegation of the Complaint is that Data Physics has infringed

Qualmark's LING and LING ELECTRONICS trademarks. While Qualmark pleads

infringement of these marks under federal law and common law, the only actual

trademark registration in this case has been granted by the State of California for LING

ELECTRONICS.  Complaint, Ex. 4.  Any district court may be capable of determining the parties' federal or common law rights, but a California-based court is particularly situated to determine rights and obligations arising under a specialized statutory scheme enacted by California.   Equally important, no court outside California can claim to have as strong a governmental interest in adjudicating those state-based rights. *Recovery Processes Int'l v. Hoechst Celanese Corp.*, 857 F. Supp. 863, 866 (D. Utah 1994), *quoting McDevitt & Street Co. v. Fidelity & Deposit Co. of Maryland*, 737 F. Supp. 351, 534 (W.D.N.C. 1990) (factors in transfer analysis include "the interest in having localized controversies settled at home; and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action."); *see also Lessman v. Esco Corp.*, 2006 U.S. Dist. LEXIS 19372, *3 (D. Colo. 2006) (judicial familiarity with the governing law as a factor to consider in §1404(a) analysis).

Indeed, it is perverse for a party to claim infringement of a California trademark in California and then to bring suit in a different jurisdiction.  This is the core of Plaintiff's claim of right, yet Plaintiff chose a jurisdiction which has no claim to the dispute other than being the "home court" of Plaintiff.

It is particularly clear that a court located in Californian should decide this case because Data Physics incorporated a subsidiary named "Ling Electronics" in California more than two years prior to Qualmark's application for registration of the LING ELECTRONICS mark.  Welaratna Decl. at 8.  This fact bears not only on the validity of the mark under California law, but also introduces defenses based on use of a term as a

trade name prior to registration as a mark under Cal. Bus. & Prof. Code § 14220 *et seq.*
It is clear that this case will significantly involve the interpretation and application of
California's administrative and statutory system of trademark registration and protection.

In addition, because Plaintiffs intentionally sought protection under California's
system of trademark registration and are asserting the trademark they received in this
action, they should not now be allowed to complain that California is not the appropriate
locale for this dispute.

While Qualmark has asserted a claim for violation of the Colorado Consumer
Protection Act, California courts are well-equipped to handle consumer protection
claims. *See Lessman at* *4 ("the 'relative simplicity' of the common law fraud and
contract claims involved reduce the significance of the familiarity factor."), *quoting
Scheidt v. Klien*, 956 F.2d 963, 966 (10th Cir. 1992). Of particular significance here is
that California's system of administrative law and trademark registration are implicated
by Qualmark's own purposeful acts.

## 2. Plaintiff's Choice of Forum

As a general rule, a plaintiff's choice of forum is entitled to deference. *Bailey v.
Pacific Railroad Co.*, 364 F.Supp. 2d 1227, 1229 (D. Colo. 2005). However, this factor
is accorded little weight when the chosen forum has only a limited connection to the
case. *Federated Rural Elec. Ins. Co. v. Nationwide Mut. Ins. Co.*, 874 F. Supp. 1204,
1209 (D. Kan. 1995) ("[W]here the facts giving rise to the lawsuit have no material
relation or significant connection to the plaintiff's chosen forum, the plaintiff's choice of
forum is given reduced weight."). In this case, the only connection to Colorado is that

Qualmark is headquartered here. Few, if any, of the underlying facts, including the creation of any federal or common law rights in LING or LING ENTERPRISES, is the result of activities in Colorado.

Qualmark purchased the Ling manufacturing operations from SatCon, a Massachusetts company, in December 2005. Welaratna Decl. at 2. Additionally, Qualmark Ling's operations are headquartered in West Haven, Connecticut, not Colorado. *Id.* Data Physics is located in California, with its headquarters in San Jose and shaker manufacturing facilities in Corona. Furthermore, various entities operating under the Ling name have existed within California for over forty years. *Id.* Thus, Qualmark's choice of forum should be given little deference because it has limited relation to the underlying case.

### 3. The Accessibility of Witnesses and Other Sources of Proof, including Compulsory Process

As indicated, Qualmark is alleging infringement of its California registration and whatever common law rights it has obtained to the marks LING and LING ELECTRONICS. To the extent any rights arose earlier than December 2005, when Qualmark purchased SatCon's Ling operations, such rights were obtained by prior users of the Ling name and (allegedly) obtained by Qualmark in the sale. Data Physics intends to offer a vigorous defense based, among other things, on the failure of Qualmark's predecessors in interest to establish trademark rights in the Ling name. Specifically, Data Physics will argue that prior "Ling" users failed to police the mark, failed to prevent third-party uses, and failed to properly use the name as a trademark.

As discussed in the Complaint, for approximately forty years prior to 2003 entities that used the Ling name in connection with vibration testing equipment were located in California. While discovery has not yet been taken in this action, based on its history in California, Data Physics is confident that individuals familiar with prior uses of the Ling name will be found in California. Data Physics expects to call witnesses from prior Ling operations to help establish its defenses. To these extent the individuals are within California, they will be within the subpoena power of the Northern District of California. FRCP 45(c)(3). These same witnesses will not, however, be subject to compulsory process in Colorado. *Id.*

Furthermore, the formal origins of this dispute can be traced to letters sent by Qualmark to the editors of TEST Engineering and Management Magazine, located in Oakland, California, within the Northern District of California. Attached as Exhibit B to the Declaration of Robert Payne is a September 12, 2007 letter from Eve Mattingley-Hannigan, editor and publisher of TEST, where she addresses a dispute between the parties over an advertisement that appeared in the magazine. Insofar as Qualmark expects to rely on the TEST magazine advertisement and events surrounding it as evidence of infringement, Ms. Mattingley-Hannigan's testimony will likely be an important aspect to this case. While she is subject to compulsory process from the Northern District of California, she would not be likewise subject from the District of Colorado.

Finally, a California state registered trademark by definition can only be infringed by acts within California. Thus, to the extent Qualmark wishes to introduce other

witnesses or evidence of infringement, it is highly likely that such evidence or witnesses will come from California. Moreover, other than agents or employees of Qualmark, Data Physics is not aware of any individuals residing in Colorado that are likely to serve as a witness in this case. Therefore, the accessibility of witnesses and the availability of compulsory process strongly supports transfer to California.

### 4. The Cost of Making the Necessary Proof

Because the center of gravity of this case is located squarely within California, the cost of conducting the necessary discovery, particularly that related to third parties, is likely to be lower in California. Moreover, as Qualmark Ling is located in Connecticut, the difference in travel expense between Colorado and California will be limited. On the other hand, travel and related expenses would be significantly higher for Data Physics if this action remained in Colorado. Thus, on balance this factor supports transfer.

### 5. Other Considerations

In addition to the considerations above, the Northern District is the more convenient venue because on February 28, 2008, Data Physics filed an action against Qualmark in the Superior Court of Santa Clara County, No. 108-CV-106987, alleging various torts including unfair competition, interference with prospective economic advantage, trade libel, and seeking cancellation of Qualmark's California registration for LING ELECTRONICS. To the extent evidence and witnesses overlap between this action and the California action, it would be more convenient and efficient for them to be adjudicated in the same geographic area.

### 6. Factors Not Relevant in this Action

Data Physics submits that the following factors do not favor one forum over the other: questions as to the enforceability of a judgment; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; and the possibility of the existence of questions arising in the area of conflict of laws.

### III.    CONCLUSION

The legal and factual center of gravity of this action is squarely within California. Not only would transfer to California ensure that the most appropriate court determines the central issues in dispute, it would also serve the convenience of the parties and witnesses and promote the just and efficient resolution of this matter.  For these reasons and all those discussed above, the Court should use its discretion and transfer this action to the Northern District of California.

Respectfully Submitted,

Dated:  March 19, 2008                        __/s/ Herbert A. Delap____
                                              Herbert A. Delap
                                              DUFFORD & BROWN, P.C.
                                              cdelap@duffordbrown.com
                                              1700 Broadway, Suite 2100
                                              Denver, CO 80290-2101
                                              Telephone: 303-861-8013/Fax: 303-832-3804

                                              Robert W. Payne
                                              LaRIVIERE, GRUBMAN & PAYNE, LLP
                                              rpayne@lgpatlaw.com
                                              19 Upper Ragsdale Drive, Suite 200
                                              P.O. Box 3140
                                              Monterey, CA 93942
                                              Telephone: 831-649-8800/Fax: 831-649-8835

                                              Attorneys for Defendant
                                              DATA PHYSICS CORPORATION

# Exhibit A

Case 3:08-cv-01717-MMC     Document 9-5     Filed 04/04/2008     Page 15 of 19

Sep 13 07 09:12p    Data Physics Corporation    03/19/2008    p.1
Case 1:07-cv-02665-REB-KLM    Document 16-2    Filed 03/19/2008    Page 2 of 3



# TEST
### Engineering & Management

TEST
Published since *1959* / Keeps vital testing savvy alive! *2007*

September 12, 2007

TO:   Charlie Johnston, Qualmark          (all addresses on page 2)
      Andy Grimaldi, Jr., Qualmark
      Mark Reinhardt, Reinhardt & Associates
      Sri Welaratna, Data Physics
      Sabine Castagnet, Data Physics

*Sent certified, Return Receipt*
*Requested to all parties*

Dear Charlie, Andy, Mark, Sri, and Sabine:

This is in response to a letter from Reinhardt & Associates on behalf of Qualmark (copy attached). My apologies for taking so long to respond. Aside from wanting time to think all of this through, I was on vacation when the letter arrived, and subsequently (of course!) swamped with post-vacation work.

We all understand the basic raw data of the situation at issue; no need to detail it *ad nauseum.* Suffice it to say, the ad Data Physics ran in TEST's August/September 2007 issue contained a logo it seems they are no longer entitled to use—a logo that currently belongs to Qualmark. Data Physics apparently intended to use a *new* logo that they had had designed for their own company, but their graphic artist mistakenly plugged in the *verboten* logo. Qualmark is, quite reasonably, upset. It seems Data Physics didn't realize the ad used the wrong logo until several weeks after the magazine had been printed, bound, and mailed. And I believed the logo in the ad was the new one, because I hadn't seen it in image form (still haven't)—I'd only received a website link and download (see attached) that, to my non-lawyer's eye, appeared to justify Data Physics' right to the name "Ling Electronics Corp." and the use of the logo in the ad. I also hadn't looked at the old logo for considerably more than a year and, when the ad material arrived only a day before my intense issue deadline, I registered only that there was a Ling logo in the ad, thinking it was the new one: I saw what I was expecting to see.

That's all now water under the bridge, but however it came about, this is clearly a situation that needs correcting.

It seems to me the significant question is: In resolving this situation, what's the goal? I won't second-guess anyone else's goals, but for *my* part, I see the goal as the need to publicly set the record straight. I perceive my responsibility, as editor and publisher of TEST, to be to the *whole* of the test industry—most especially my readers. Left as it stands, this situation causes Data Physics to look questionable; Qualmark to lose some of the clarity of their new identity; and readers of TEST to simply not know what's true.

So I propose this as a resolution: I will provide space—something in the nature of a quarter page—in which Data Physics may (in letter form) acknowledge their mistake and clearly state who owns what—correct company names, with the logos associated with each—after first working out the details with Qualmark to their mutual satisfaction. Please understand that I am offering this space because I feel what has occurred has done a disservice to *all* of the industry—not because I bear responsibility for the error. I am offering the use of space in TEST magazine as a vehicle to serve my readers and their industry, in the nature of a public "forum."

This leads me to one specific aspect of Mark's letter. He has demanded (his word) that *I* retract the use of the incorrect logo. That is, literally, an impossibility—it's akin to demanding that I grow another inch or two!—because plain and simple, I can't retract what I didn't say. Advertisers, in effect, "rent" space in a particular issue of a magazine, and may use that space to say what they wish. Other than refusing ads altogether should they contain, say, violence or pornography, it is not within my purview to "vet" any ad's contents or claims. I would be totally astonished to find even a single reader who thinks a magazine or its publisher supports or promotes the claims and views expressed in an

*(more)*

**(510) 839-0909** • 3756 Grand Avenue, Suite 205, Oakland, CA 94610-1545 • **(510) 839-2950**
PHONE       **E-MAIL:** testmag@testmagazine.biz • **WEB:** www.testmagazine.biz       FAX

Case 3:08-cv-01717-MMC    Document 9-5    Filed 04/04/2008    Page 16 of 19

Sep 18 07 09:13p    Data Physics Corporation    14089705809    p.2
Case 1:07-cv-02665-REB-KLM    Document 16-2    Filed 03/19/2008    Page 3 of 3

— 2 —

ad—in fact, I think readers are extremely savvy about ad claims being strictly those of the advertiser. And since, through the use of the subject logo in their ad, it is Data Physics that made the "statement," not TEST magazine (or me), it is Data Physics that must do whatever retracting is done; I feel strongly that action by any other entity involved would merely appear silly and ineffective to readers. On the other hand, providing space for this as I have proposed—again, using TEST as a neutral *platform*—is an action I *can* take in the service of setting the record straight, one that seems entirely appropriate, and I'm happy to offer it.

Also, I must say I do not enjoy having my role in this particular situation characterized as "intentional," which is about as far from the truth as one can get. Nor do I like being placed in the middle of this disputed trademark territory between Data Physics and Qualmark—it's *your* quarrel, not mine. I have never (nor do I intend to start now!) favored one company over another, or deliberately disrespected any company or person in the industry. Why would I? What on earth would I stand to gain? And I am equally disturbed by the over-tones and insinuations of litigation in Mark's letter, for the same reasons. I have spent many long hours in my 44-year professional life considering what the fair and ethical choice is in hundreds—maybe thousands—of situations. My honor and integrity, despite being considered old-fashioned concepts these days, *still* matter to me. And my usefulness, such as it is, lies in publishing a magazine that is fair-minded, even-handed, and presented from as neutral a position as it's possible to achieve, edited for the interests of its readers and their industry, a platform for the expression of *all* views—not a vehicle for favoritism, bias, or side-taking.

One further note. Since this letter is in response to an attorney's letter, I want to make it clear that I am us-ing English in its non-legal form—please do not read legal definitions or implications into any of my statements and/or individual words.

I hope you will all accept my proposed solution—it's straightforward, to the point, and relatively simple. To be most effective, to my mind this should happen in the next issue of TEST, the October/November 2007 issue. But please—everyone needs to understand that if you accept my solution as a good one *and* we are to include it in October/November, I must have the copy and/or logos by about September 24/25. Logos, if used as I think they should be, would need to be in the form of reproduction-quality digital files.

I look forward to your positive responses.

Cordially,

Eve Mattingley-Hannigan
Editor and Publisher


Charlie Johnston
Qualmark Ling
4580 Florence Street
Denver, CO 80238

Mark Reinhardt
Reinhardt & Associates
44- Williams Street
Denver, CO 80218

Amdy Grimaldi, Jr.
Qualmark Ling
232 Front Avenue
West Haven, CT 06516

Sri Welaratna
Data Physics
1741 Technology Drive, Suite 260
San Jose, CA 95110-1355

Sabine Castagnet
Data Physics
1741 Technology Drive, Suite 260
San Jose, CA 95110-1355

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02665-REB-KLM

QUALMARK CORPORATION, and
QUALMARK LING CORPORATION,
Both Colorado corporations,

     Plaintiffs,

v.

DATA PHYSICS CORPORATION,
a California corporation,

     Defendant.

## DECLARATION OF SRI WELARATNA IN SUPPORT
## OF DEFENDANT MOTION TO TRANSFER VENUE

    1.    My name is SRI WELARATNA, I am over the age of eighteen years and am otherwise competent to submit this affidavit in support of Defendant Data Physics' Motion to Transfer Venue.

    2.    I am President and Chief Executive Officer of Defendant Data Physics Corporation. I have personal knowledge of the following facts and could competently testify thereto.

    3.    I helped to found Data Physics in California in 1984. Continuously since that time, Data Physics has maintained its principal place of business within California. The current address of Data Physics is 1741 Technology Drive, Suite 260, San Jose, CA 95110.

4.     Data Physics is in the business of producing and servicing analyzers, controllers, shakers, and related systems for use in testing and measurement of the quality, reliability, and durability of military and industrial equipment.

5.     In 2003, Data Physics entered into a strategic alliance with SatCon, Qualmark's predecessor in interest, for the exclusive sale and distribution of SatCon's "Ling" shakers and acoustic transducers.  As part of the alliance, SatCon was to manufacture electrodynamic shakers and related parts for use with Data Physics' controllers and analyzers.

6.     Due to concerns that SatCon had failed to protect any intellectual property in connection with its manufacture and sale of Ling-branded shakers, Data Physics incorporated a subsidiary named "Ling Electronics" with the California Secretary of State in September 2003 to protect its investment in developing and expanding the moribund Ling brand.

7.     In the course of Data Physics' relationship with SatCon, I learned that SatCon had purchased its shaker manufacturing operations from Mechanical Technology, Inc. in 1999 ("MTI"), whose facilities were in Anaheim, California. MTI in turn had previously purchased its shaker manufacturing operations from Altec Corporation in approximately 1983.  The shaker manufacturing operations of Altec and its predecessors in interest had been located in Southern California since approximately 1960.  After forty years in California, SatCon moved its shaker manufacturing operations to Worcester, Massachusetts in approximately 2002.

8.    In late 2005, Plaintiff Qualmark Corporation purchased SatCon's shaker manufacturing operations and moved them to West Haven, Connecticut. Plaintiff Qualmark Ling apparently continues to operate out of Connecticut. In early 2006, Qualmark applied for and obtained a California trademark registration for LING ELECTRONICS, registration no. 0111646, which it is asserting in this action.

9.    Data Physics and its Ling Electronics division currently manufacture water cooled shakers in Corona, California under the SignalForce trademark. We also offer service and replacement parts for a variety of Ling-branded shakers from various sources.

10.    Attached hereto as Exhibit A is a true and correct copy of a September 12, 2007 letter from Eve Mattingley-Hannigan, editor of TEST Engineering and Management Magazine, to the parties in this action concerning a dispute over an advertisement that appeared in the magazine.


Executed in San Jose, California on March 14, 2008. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

_____
Sri Welaratna

# EXHIBIT 5

**UNITED STATES PATENT AND TRADEMARK OFFICE**
**Trademark Trial and Appeal Board**
**P.O. Box 1451**
**Alexandria, VA  22313-1451**

Mailed:  March 5, 2008

Opposition No. 91180543

Data Physics Corporation

v.

QualMark Ling Corporation

**Robert H. Coggins,**
**Interlocutory Attorney:**

On February 14, 2008, the Board informed opposer of applicant's previously filed - but unserved - motion to suspend proceedings pending outcome of a civil action between the parties, and allowed opposer twenty days in which to file a brief in opposition to the motion failing which the motion would be granted as conceded.  On February 27, 2008, opposer telephoned the Board and stated that no opposition to applicant's motion would be filed.

In view thereof, the motion to suspend proceedings pending final determination of a civil action between the parties is hereby granted as conceded.  *See* Trademark Rules 2.127(a) and 2.117(a).  Accordingly, proceedings are

Exhibit 5, Page 1

Opposition No. 91180543

suspended pending final disposition of the civil action
between the parties.[1]

Within twenty days after the final determination of
the civil action, the parties shall so notify the Board and
call this case up for any appropriate action.  During the
suspension period, the parties shall notify the Board of
any address changes for the parties or their attorneys.

**NEWS FROM THE TTAB**:

The USPTO published a notice of final rulemaking in the
Federal Register on August 1, 2007, at 72 F.R. 42242.  By
this notice, various rules governing Trademark Trial and
Appeal Board inter partes proceedings are amended.  Certain
amendments have an effective date of August 31, 2007, while
most have an effective date of November 1, 2007.  For
further information, the parties are referred to a reprint
of the final rule and a chart summarizing the affected
rules, their changes, and effective dates, both viewable on
the USPTO website via these web addresses:
http://www.uspto.gov/web/offices/com/sol/notices/72fr42242.pdf
http://www.uspto.gov/web/offices/com/sol/notices/72fr42242_FinalR
uleChart.pdf

By one rule change effective August 31, 2007, the Board's
standard protective order is made applicable to all TTAB
inter partes cases, whether already pending or commenced on
or after that date.  However, as explained in the final
rule and chart, this change will not affect any case in
which any protective order has already been approved or
imposed by the Board.  Further, as explained in the final
rule, parties are free to agree to a substitute protective
order or to supplement or amend the standard order even

---

[1] Civil Action No. 07-CV-02665-REB-KLM, styled *QualMark Corp. and
QualMark Ling Corp. v. Data Physics Corp.*, filed December 21,
2007 in the United States District Court for the District of
Colorado.

Exhibit 5, Page 2

Opposition No. 91180543

after August 31, 2007, subject to Board approval.  The
standard protective order can be viewed using the following
web address:
http://www.uspto.gov/web/offices/dcom/ttab/tbmp/stndagmnt.htm

3

# EXHIBIT 6

1  LARIVIERE, GRUBMAN & PAYNE, LLP
   Robert W. Payne (Bar No. 073901)
2  Alan E. Engle (Bar No. 224779)
   Nicole A. Smith (Bar No. 243823)
3  19 Upper Ragsdale Drive
   P.O. Box 3140
4  Monterey, California 93942-3140
   Telephone: (831) 649-8800
5  Facsimile: (831) 649-8835

6  Attorneys for Plaintiff

7

8              **SUPERIOR COURT OF CALIFORNIA**

9               **COUNTY OF SANTA CLARA**

10                **SAN JOSE DIVISION**

11

12 DATA PHYSICS CORPORATION,          )  Case No.
   a California Corporation,          )
13                                    )  **COMPLAINT FOR CANCELLATION**
                                      )  **OF CALIFORNIA TRADEMARK;**
14            Plaintiff,              )  **UNFAIR COMPETITION;**
                                      )  **INTENTIONAL INTERFERENCE**
15      v.                            )  **WITH PROSPECTIVE ECONOMIC**
                                      )  **RELATIONS; NEGLIGENT**
16 QUALMARK CORPORATION, a Colorado   )  **INTERFERENCE WITH**
   Corporation;                       )  **PROSPECTIVE ECONOMIC**
17 QUALMARK LING CORPORATION, a       )  **RELATIONS; TRADE LIBEL; AND**
   Colorado Corporation; and          )  **SLANDER OF TITLE**
18 DOES 1 - 30, inclusive,            )
                                      )  **JURY TRIAL DEMANDED**
19            Defendants.             )
   _____)

20

21      Plaintiff DATA PHYSICS CORPORATION ("Data Physics"), alleges:

22                        **PARTIES**

23      1.      At all times herein concerned, Plaintiff DATA PHYSICS CORPORATION

24 ("Data Physics") was and now is a corporation duly organized and existing under and by virtue of

25 the laws of the State of California, authorized to do and doing business in said state with its

26 principal place of business located at 1741 Technology Drive, Suite 260, San Jose, California

27

28 _____
                                          1
   COMPLAINT
   DATA PHYSICS v. QUALMARK, et al.

1  95110.

2      2.     Plaintiff is informed and believes and upon such information and belief alleges

3  that Defendant QUALMARK CORPORATION is a Colorado corporation, currently organized

4  and existing under and by virtue of the laws of the State of Colorado with its principal place of

5  business located at 4580 Florence Street, Denver, Colorado 80238.

6      3.     Plaintiff is informed and believes and upon such information and belief alleges

7  that Defendant QUALMARK LING CORPORATION is a Colorado corporation, currently

8  organized and existing under and by virtue of the laws of the State of Colorado with its principal

9  place of business located at 4580 Florence Street, Denver, Colorado 80238.  On information and

10  belief, Defendant Qualmark Ling Corporation is a wholly-owned subsidiary of Defendant

11  Qualmark Corporation that was formed to facilitate the transfer of SatCon's Ling assets to

12  Qualmark.

13      4.     Plaintiff is informed and believes and thereon alleges that Qualmark Ling is an

14  agent and an alter ego of Defendant Qualmark Corporation and, in doing the things herein

15  alleged, was acting within the scope of such agency and with the permission and consent of

16  Defendant Qualmark Corporation.  Upon information and belief, there exists and existed at all

17  relevant times herein a commonality of decision making between Qualmark and its subsidiary

18  Qualmark Ling such that Qualmark exercised complete domination and control of Qualmark

19  Ling and the companies were operated in all essential aspects as one corporation and enterprise.

20      5.     The true names or capacities, whether individual, corporate, associate or

21  otherwise, of Defendants named herein as DOE 1 through DOE 30 inclusive, are unknown to

22  Plaintiff who therefore sues said Defendants by such fictitious names and Plaintiff will amend

23  this complaint to show their true names and capacities when the same have been ascertained.

24  <div align="center">**VENUE**</div>

25      6.     At the time of the commencement of this action, Plaintiff Data Physics is a resident

26  of the City of San Jose, County of Santa Clara, State of California.  The injuries alleged herein have

27

28

2

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

1  occurred in this jurisdiction.

2  **<u>GENERAL ALLEGATIONS</u>**

3  7.     Since approximately 1984, Plaintiff Data Physics has been in the business of

4  producing and supplying analyzers and controllers for use in testing the quality, reliability, and

5  durability of equipment.  Information concerning specific products offered by Data Physics can

6  be found on its website located at www.dataphysics.com.

7  8.     On information and belief, Defendant Qualmark Corporation was founded in 1991

8  as a specialty manufacturer of equipment used to test the reliability, quality, dependability and

9  longevity of devices built by others.  Information concerning specific products offered by

10 Qualmark can be found on its website located at www.qualmark.com.

11 9.     This dispute is centered around the use of the name "Ling" and "Ling Electronics"

12 in connection with the sale of shakers and related vibration testing equipment.  The name "Ling"

13 has an extensive and varied history in the industry.

14 10.    Upon information and belief, entrepreneur James Ling founded an electronic

15 contracting business in Dallas, Texas in 1947.  That business operated under the name Ling

16 Electronic Company.

17 11.    Upon information and belief, Ling Electronic Company purchased United

18 Electronics of Newark, New Jersey and Caledyne Company of Winchester, Massachusetts in

19 about 1958.  Upon information and belief, these three companies were subsequently merged to

20 form Ling Electronics.  Upon information and belief, Ling Electronics designed and

21 manufactured vibration test equipment, known in the industry as electrodynamic shakers, which

22 were sold to companies throughout the United States and the world.

23 12.    Upon information and belief, Ling Electronics merged with Altec, a leading

24 acoustic company, in 1959.  The new company was registered in Delaware and operated under

25 the name Ling-Altec.  Upon information and belief, that company continued to sell

26 electrodynamic shakers and developed, manufactured and sold other related equipment all under

27

28
_____
3

COMPLAINT
DATA PHYSICS  v. QUALMARK, et al.

1    the name Ling and through a division known as Ling Electronics.

2        13.    Upon information and belief, Ling-Altec merged with Temco and Vought

3    (defense contractors) in about 1960, creating a new company named LTV Ling Altec.

4    Apparently, the new company moved to Anaheim, California and continued to manufacture and

5    sell existing products, as well as introduced a variety of new products to industry.  Upon

6    information and belief, that company continued to sell electrodynamic shakers and related test

7    equipment throughout the United States and the world under the name Ling.

8        14.    Upon information and belief, LTV Ling Altec began selling corporate assets in

9    1972.  The Ling Electronics assets were then, upon information and belief, assigned to a newly

10   formed company known as Altec Corporation.  Altec Corporation operated for more than a

11   decade, but in 1983 filed for Chapter 11 bankruptcy.  Upon information and belief, Altec

12   Corporation then sold its Ling Electronics division and related assets to Mechanical Technology,

13   Inc. ("MTI").

14       15.    Upon information and belief, MTI operated the Ling Electronics division out of

15   Anaheim, California, selling electrodynamic shakers and related test equipment to entities

16   located throughout the United States and the world.  MTI sold its Ling Electronics operating unit

17   to SatCon Technology Corporation in 1999.

18       16.    On information and belief, SatCon gained its shaker manufacturing capabilities as

19   a result of its 1999 purchase of MTI's Ling division.  On information and belief, SatCon

20   continued to operate MTI's Anaheim, California facility from approximately 1999 to 2002, when

21   the facility was moved to Worcester, Massachusetts.

22       17.    On information and belief, only a handful of employees made the move from

23   Anaheim to Worcester.  Furthermore, on information and belief, in the process of transferring its

24   facilities SatCon lost critical suppliers, failing to pay some, and settled some accounts by

25   providing suppliers with equipment used to manufacture shakers.  Consequently, the quality and

26   know-how associated with the previous Ling operation was seriously degraded under SatCon's

27

28

---

4

COMPLAINT
DATA PHYSICS  v. QUALMARK, et al.

1    control.  On information and belief, SatCon realized it needed qualified partner to increase its

2    distribution and market presence.

3         18.    In 2003, Data Physics began to discuss a strategic alliance with SatCon for the

4    exclusive sale and distribution of SatCon's shakers, amplifiers, and acoustic transducers.  This

5    deal enabled Data Physics to expand its business to include "turn key" vibration testing systems

6    in addition to instruments for control and analysis.  Beginning in approximately October 2003,

7    Data Physics was the exclusive distributor of SatCon's Ling shaker equipment, which Data

8    Physics integrated into complete vibration testing and analysis systems.  The previous Ling

9    Electronics corporation having been dissolved in 1982, Data Physics incorporated "Ling

10   Electronics" in California as a subsidiary in September 2003.

11        19.    Unfortunately, SatCon increasingly failed supply products of adequate quality in a

12   timely manner to Data Physics and the relationship suffered.  Among other things, the shakers

13   delivered by SatCon's Ling unit failed acceptance testing, a battery of tests performed on the

14   shakers to ensure they meet required quality standards.  Additionally, on at least one occasion,

15   SatCon falsified quality test results.  Because SatCon's shakers were below quality standards and

16   often delivered late, the products could not be integrated with Data Physics' high end products

17   for customers.  Data Physics and SatCon attempted to work through these problems and

18   eventually settled a litigation that arose out of difficulties encountered during their relationship.

19        20.    Upon information and belief, SatCon sold its Ling unit to Qualmark Corporation

20   or Qualmark Ling Corporation in December 2005.  Upon information and belief, Qualmark

21   informed one or more customers of Data Physics that it would not honor any contracts between

22   the former Ling unit and Data Physics.

23        21.    In February 2005, Data Physics acquired Gearing and Watson, a shaker

24   manufacturing company in the United Kingdom specializing in air-cooled shakers and was

25   seeking to setup another facility to manufacture water-cooled shakers for its integrated systems.

26   Many of the former employees from MTI's Ling operation and SatCon's prior Anaheim operation

27

28

5

COMPLAINT
DATA PHYSICS  v. QUALMARK, et al.

1  were working at Derritron, a recently formed company in Riverside, California, that built, among

2  other things, Ling-compatible shakers, amplifiers, and shaker spares. Around August 2005, Data

3  Physics entered into discussions with Derritron for a possible acquisition of its assets, and in

4  January 2006 Data Physics purchased the majority of its assets for building shakers. While

5  Derritron continued to make amplifiers, employees of Derritron who were engaged in shaker

6  manufacturing moved to Data Physics. These employees had and continue to have unique and in

7  depth knowledge and experience manufacturing Ling shakers.

8       22.    Upon information and belief, "Ling" is a widely used name in the electrodynamic

9  shaker industry and has been in use in one form or another in association with the sale of

10  electrodynamic shakers and related parts and accessories for approximately 50 years. This long

11  course of sales has resulted in an install base of thousands of "Ling" shakers in the United States

12  and abroad. On information and belief, various entities and business units have operated under

13  the name "Ling" and have sold "Ling" shaker systems and/or components, including Ling

14  Dynamic Systems, Derritron, Dodson, ACG, and Dongling (Eastern Ling) in China.

15  Additionally, individuals in the vibration testing field, including employees of Qualmark or its

16  Qualmark ACG subsidiary, have and continue to use the term "Ling" in a generic sense for

17  electrodynamic shakers. On information and belief, no entity had ever obtained a trademark

18  registration in the term "Ling" (or variations thereof) in connection with vibration testing

19  equipment until Defendant Qualmark filed for the "Ling Electronics" mark in California in 2006.

20       23.    Data Physics and Qualmark are competitors in the filed of vibration testing

21  equipment, often bidding on the same contracts. Recently Data Physics has had business

22  relationships and contracts disrupted by, among other things, statements from Qualmark and

23  Qualmark Ling and their agents and employees to the effect that Data Physics does not

24  manufacture genuine Ling shakers and has no right to use the Ling or Ling Electronics name in

25  connection with the sale of shakers. As a direct consequence of these false statements, Data

26  Physics has experienced difficulties and disruptions with its contracts and business relationships

27

28

---

6

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

1  with actual and potential customers.

2  **FIRST CAUSE OF ACTION**

3  **(Cancellation of California Trademark)**

4     24.  Plaintiff realleges and incorporates by reference all the allegations contained in

5  paragraphs 1 through paragraph 23 inclusive.

6     25.  On or about September 23, 2003, Data Physics registered LING ELECTRONICS

7  CORPORATION with the California Secretary of State.

8     26.  On or about March 28, 2006, Defendant Qualmark Corporation obtained a

9  California Trademark for the mark LING ELECTRONICS with the knowledge that Data Physics

10  was using the business trade name LING ELECTRONICS for the production of the same or

11  similar goods Defendants sought the California trademark to cover.

12     27.  California law governing the prosecution of California trademarks is found in

13  Business and Professions Code sections 14200 et seq.  Pursuant to California Trademark Law,

14  the Secretary of State must cancel any registration on a finding by a court of competent

15  jurisdiction that the registered mark has been abandoned, that the registrant is not the owner of

16  the mark, that the registration was granted improperly, or that the registration was obtained

17  fraudulently.

18     28.  On information and belief, the mark LING ELECTRONICS could not be validly

19  registered as a mark due to significant third-party use and the fact that the term "Ling" had come

20  to generically signify Ling-compatible shakers and shaker parts, and because Defendants and

21  their predecessors failed to adequately police such third-party use of the term "Ling" and to

22  prevent the mark from obtaining a generic signification.  Additionally, as shown in the General

23  Allegations, the term "Ling" is primarily merely a surname and thus not properly registerable as a

24  trademark.  Thus, Defendants' LING ELECTRONICS trademark is invalid and without force and

25  effect.

26     29.  Business and Professions Code Section 14220(f) further prohibits registration of a

27

28

<center>7</center>

COMPLAINT
DATA PHYSICS  v. QUALMARK, et al.

1  trademark if the trademark conflicts with a previously used trade name.  Additionally, a party that

2  has filed articles of incorporation or obtained a certificate of qualification to do business in

3  California obtains a rebuttable presumption that it has an exclusive right to use its trade name, as

4  well as any confusingly similar name.  Because Data Physics had already registered the LING

5  ELECTRONICS trade name with the California Secretary of State, Defendants' LING

6  ELECTRONICS trademark is invalid and without force and effect.

7       30.    Moreover, Defendants are barred from asserting the LING ELECTRONICS mark

8  against Data Physics because no service mark or trademark registered pursuant to the California

9  Trademark Law is enforceable under the provisions of Business & Professions Code §§ 14320,

10  14330, or 14340, against any party who has adopted and lawfully used the same or a confusingly

11  similar service mark in the rendition of like services or trademarks in the manufacture or sale of

12  like goods in the state of California from a date prior to the effective date of registration of the

13  service mark or trademark.  Because Data Physics had lawfully used the mark LING

14  ELECTRONICS in connection with the sale of shaker products, parts, and accessories prior to

15  Qualmark's registration of the mark, Data Physics cannot be adjudged to infringe the mark.

16  Thus, the California trademark was wrongfully obtained and should be cancelled.

17  <div align="center">**SECOND CAUSE OF ACTION**</div>

18  <div align="center">**(Unfair Competition under § 17200)**</div>

19       31.    Plaintiff realleges and incorporates by reference all the allegations contained in

20  paragraphs 1 through paragraph 30 inclusive.

21       32.    Defendants intentionally made false and disparaging statements regarding the

22  quality of Plaintiff Data Physics' products and the right of Data Physics to use the term "Ling" in

23  connection with the sale of shaker products to entities doing business with Data Physics, in

24  violation of Business and Professions Code Section 17200 et seq.

25       33.    Defendants' statements were false and unjustified and, as a result of such

26  statements, Data Physics was harmed via the disruption of various contracts, due to concerns that

27

28

<div align="center">8</div>

COMPLAINT
DATA PHYSICS  v. QUALMARK, et al.

1  Data Physics was infringing various intellectual property rights purportedly held by Defendants

2  and that Data Physics was not authorized to sell such products.

3       34.    Data Physics is entitled to relief, including full restitution and/or disgorgement of

4  all revenues, earnings, profits, compensation, and benefits which may have been obtained by

5  Defendants as a result of such unfair business acts or practices.

6       35.    Data Physics is informed and believes, and based thereon alleges, that

7  Defendants' unfair acts as described above are a serious and continuing threat to Data Physics

8  and the public.  If Defendants are allowed to continue their wrongful acts, Data Physics and the

9  public will suffer further immediate and irreparable injury, loss, and damage.  Unless restrained

10  by this court, Defendants will continue to engage in improper disparagement of Data Physics

11  rights to use the term "Ling" in connection with its sale of shaker products, as alleged above, in

12  violation of Section 17200 of the Business and Professions Code, and Data Physics and members

13  of the general public will have no adequate remedy at law to rectify such disparagement.

14  <center>**THIRD CAUSE OF ACTION**</center>

15  <center>**(Unfair Competition under Lanham Act)**</center>

16       36.    Plaintiff realleges and incorporates by reference all the allegations contained in

17  paragraphs 1 through paragraph 35 inclusive.

18       37.    Defendants intentionally made false and disparaging statements regarding the

19  quality of Plaintiff Data Physics' products and the right of Data Physics to use the term "Ling" in

20  connection with the sale of shaker products to entities doing business with Data Physics, in

21  violation of 15 U.S.C. § 1125.

22       38.    Defendants' statements were false and unjustified and, as a result of such

23  statements, Data Physics was harmed via the disruption of various contracts, due to concerns that

24  Data Physics was infringing various intellectual property rights purportedly held by Defendants

25  and that Data Physics was not authorized to sell such products.

26       39.    Data Physics is entitled to relief, including full restitution and/or disgorgement of

27

28

<center>9</center>

COMPLAINT
DATA PHYSICS  v. QUALMARK, et al.

Exhibit 6 Page 9

1 | all revenues, earnings, profits, compensation, and benefits which may have been obtained by

2 | Defendants as a result of such unfair business acts or practices.

3 |       40.    Data Physics is informed and believes, and based thereon alleges, that

4 | Defendants' unfair acts as described above are a serious and continuing threat to Data Physics

5 | and the public. If Defendants are allowed to continue their wrongful acts, Data Physics and the

6 | public will suffer further immediate and irreparable injury, loss, and damage. Unless restrained

7 | by this court, Defendants will continue to engage in improper disparagement of Data Physics

8 | rights to use the term "Ling" in connection with its sale of shaker products, as alleged above, in

9 | violation of 15 U.S.C. § 1125, and Data Physics and members of the general public will have no

10 | adequate remedy at law to rectify such disparagement.

11 | **FOURTH CAUSE OF ACTION**

12 | **(Intentional Interference With Prospective Economic Relations)**

13 |       41.    Plaintiff realleges and incorporates by reference all the allegations contained in

14 | paragraphs 1 through paragraph 40 inclusive.

15 |       42.    Plaintiff has had a long standing and ongoing economic relationship with its

16 | customers with the strong probability of future economic benefit. Qualmark knew of the

17 | relationship between Data Physics and its customers and intentionally committed wrongful acts

18 | designed to disrupt the relationship. Specifically, Qualmark made misleading statements,

19 | misrepresentations, and false statements to customers of Data Physics.

20 |       43.    As a consequence of Defendants' wrongful actions, the relationship between Data

21 | Physics and its customers was disrupted and actual and ongoing damages have been suffered by

22 | Data Physics. Defendants wrongful conduct was a substantial factor causing harm to Data

23 | Physics.

24 | **FIFTH CAUSE OF ACTION**

25 | **(Negligent Interference With Prospective Economic Relations)**

26 |       44.    Plaintiff realleges and incorporates by reference all the allegations contained in

27 |

28 |

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

1  paragraphs 1 through paragraph 43 inclusive.

2      45.    Defendant Qualmark negligently interfered with a relationship between Data

3  Physics and its customers that probably would have resulted in an economic benefit to Data

4  Physics.

5      46.    Data Physics and its customers were in an economic relationship that probably

6  would have resulted in a future economic benefit to Data Physics.

7      47.    Defendant Qualmark knew or should have known of the relationship between

8  Data Physics and its customers.

9      48.    Qualmark knew or should have known that this relationship would be disrupted if

10  Qualmark failed to act with reasonable care, yet Qualmark failed to act with reasonable care.

11      49.    Qualmark engaged in wrongful conduct through its false and misleading

12  statements, and misrepresentations to Data Physics customers, concerning Plaintiff Data Physics.

13      50.    The relationship between Data Physics and its customers was disrupted and Data

14  Physics was harmed.  Qualmark's wrongful conduct was a substantial factor in causing Data

15  Physics' harm.

16                    **SIXTH CAUSE OF ACTION**

17                          **(Trade Libel)**

18      51.    Plaintiff realleges and incorporates by reference all the allegations contained in

19  paragraphs 1 through paragraph 46 inclusive.

20      52.    Defendants intentionally made false and disparaging statements regarding the

21  quality of Plaintiff Data Physics products to entities doing business with Data Pahysics.  These

22  untrue statements of fact caused specific pecuniary damage to Data Physics, including damaged

23  business reputation, damaged business relationships and financial damages.

24                  **SEVENTH CAUSE OF ACTION**

25                        **(Slander of Title)**

26      53.    Plaintiff realleges and incorporates by reference all the allegations contained in

27

28

_____

11

COMPLAINT
DATA PHYSICS  v. QUALMARK, et al.

1    paragraphs 1 through paragraph 48 inclusive.

2        54.     Defendant Qualmark intentionally made false and disparaging comments, both

3    oral and written, regarding Data Physics' rights and title to the "Ling Electronics" name to parties

4    doing business with Data Physics.  These actions by Defendants caused actual pecuniary damage

5    to Data Physics.

6                            PRAYER FOR JUDGMENT

7        55.     WHEREFORE Plaintiff prays for judgment as follows against all Defendants:

8            a.     That Defendants, their agents, servants, employees, and all others acting in

9                   concert or participating with them be permanently enjoined from the

10                  above-listed wrongful acts against Data Physics and its clients;

11           b.     For the cancellation of the wrongfully procured California Trademark

12                  "LING ELECTRONICS";

13           c.     For damages, restitution and/or wrongful profits for the harm sustained by

14                  Data Physics to conform to proof at trial;

15           d.     For punitive damages awarded to Data Physics as against Defendant

16                  Qualmark in an amount to be determined at trial in a sum sufficient to

17                  punish and make an example of Qualmark;

18           e.     For attorneys' fees and costs of suit; and

19           f.     For such other and further relief as this Court deems just and proper.

20

21   Dated: February 27, 2008              LARIVIERE, GRUBMAN & PAYNE, LLP

22

23

24                                  By  _____
25                                         Robert W. Payne
                                           Attorney for Plaintiff
26                                         Data Physics Corporation

27

28   _____
                                       12
     COMPLAINT
     DATA PHYSICS  v. QUALMARK, et al.