LARIVIERE, GRUBMAN & PAYNE, LLP
Robert W. Payne (Ca Bar No. 073901)
Alan E. Engle (Bar No. 224779)
Nicole A. Smith  (Ca Bar No. 243823)
19 Upper Ragsdale Drive, Suite 200
P.O. Box 3140
Monterey, CA 93942-3140
Telephone: (831) 649-8800
Facsimile: (831) 649-8835

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DATA PHYSICS CORPORATION, a California corporation,<br><br>                  Plaintiff,<br><br>v.<br><br>QUALMARK CORPORATION, a Colorado corporation;<br>QUALMARK LING CORPORATION, a Colorado Corporation; and<br>DOES 5-50 inclusive,<br><br>                  Defendants. | No. C 08 01717 MMC<br><br>**DECLARATION OF ROBERT W. PAYNE IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER**<br><br>**Date:**      **May 23, 2008**<br>**Time:**      **9:00 a.m.**<br>**Courtroom: Courtroom 7** |

I, Robert W. Payne, hereby declare as follows:

1.  I am a partner at the law firm of LaRiviere, Grubman & Payne, LLP, counsel for

Plaintiff Data Physics Corporation in this action, and have personal knowledge

1     of each matter stated herein.

2.    Attached as Exhibit A is a true and correct copy of the complaint filed by Data

Physics in the San Jose Superior Court, removed to the San Francisco Division

of the  Northern District of California.

3.    Attached as Exhibit B is a true and correct copy of the Complaint filed in the

Colorado Federal Court by Qualmark Corporation.


Executed this 25th day of April, 2008 in Monterey, California.  I declare under

penalty of perjury under the laws of the United States that the foregoing is true and correct.


_____

Robert W. Payne
Attorney for Plaintiff

DECLARATION OF ROBERT W. PAYNE  IN OPPOSITION TO MOTION TO DISMISS
Case No. C 08 01717 MMC

2

## PROOF OF SERVICE

I am over 18 years of age and not a party to the within action. My business address is 19 Upper Ragsdale Drive, Suite 200, Monterey, California, 93940. On April 25, 2008, I served the following document:

### DECLARATION OF ROBERT W. PAYNE IN OPPOSITION TO MOTION TO DISMISS OR TRANSFER

by placing a true copy thereof enclosed in a sealed envelope and served in the manner described below to the interested parties herein and addressed to:

> Richard S. Falcone
> Payne & Fears LLP
> One Embarcadero Center, Suite 2300
> San Francisco, CA 94111

 X  **U.S. MAIL**: I caused such envelope(s) to be deposited in the mail at my business address, with postage thereon fully prepaid, addressed to the addresses(s) designated. I am readily familiar with the business' practice of collecting and processing correspondence to be deposited with the United States Postal Service on that same day in the ordinary course of business.

___  **HAND DELIVERY**: I caused such envelope(s) to be delivered by hand to the addressee(s) designated.

___  **BY FACSIMILE**: By use of facsimile machine telephone number (***) ***-****, I served a copy of the within document on the below parties at the facsimile number listed. The transmission was reported as complete and without error.

 X  **FEDERAL**: I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 25, 2008 at Monterey, California.

_Tabatha Morgan_
Tabatha Morgan
Paralegal

DECLARATION OF ROBERT W. PAYNE  IN OPPOSITION TO MOTION TO DISMISS
Case No. C 08 01717 MMC

# Exhibit A

1   LaRIVIERE, GRUBMAN & PAYNE, LLP
    Robert W. Payne (Bar No. 073901)
2   Alan E. Engle (Bar No. 224779)
    Nicole A. Smith (Bar No. 243823)
3   19 Upper Ragsdale Drive
    P.O. Box 3140
4   Monterey, California  93942-3140
    Telephone:  (831) 649-8800
5   Facsimile:  (831) 649-8835

6   Attorneys for Plaintiff

7

8                   SUPERIOR COURT OF CALIFORNIA

9                     COUNTY OF SANTA CLARA

10                      SAN JOSE DIVISION

11

12  DATA PHYSICS CORPORATION,          )   Case No.  1 0 8 C V 1 0 6 9 8 7
    a California Corporation,           )
13                                      )   COMPLAINT FOR CANCELLATION
                  Plaintiff,            )   OF CALIFORNIA TRADEMARK;
14                                      )   UNFAIR COMPETITION;
             v.                         )   INTENTIONAL INTERFERENCE
15                                      )   WITH PROSPECTIVE ECONOMIC
    QUALMARK CORPORATION, a Colorado    )   RELATIONS; NEGLIGENT
16  Corporation;                        )   INTERFERENCE WITH
    QUALMARK LING CORPORATION, a        )   PROSPECTIVE ECONOMIC
17  Colorado Corporation; and           )   RELATIONS; TRADE LIBEL; AND
    DOES 1 - 30, inclusive,             )   SLANDER OF TITLE
18                                      )
                  Defendants.           )   JURY TRIAL DEMANDED
19  _____ )

20

21       Plaintiff DATA PHYSICS CORPORATION ("Data Physics"), alleges:

22                            **PARTIES**

23       1.      At all times herein concerned, Plaintiff DATA PHYSICS CORPORATION

24  ("Data Physics") was and now is a corporation duly organized and existing under and by virtue of

25  the laws of the State of California, authorized to do and doing business in said state with its

26  principal place of business located at 1741 Technology Drive, Suite 260, San Jose, California

27

28  _____

                                   1

    COMPLAINT
    DATA PHYSICS  v. QUALMARK, et al.

1    95110.

2        2.      Plaintiff is informed and believes and upon such information and belief alleges

3    that Defendant QUALMARK CORPORATION is a Colorado corporation, currently organized

4    and existing under and by virtue of the laws of the State of Colorado with its principal place of

5    business located at 4580 Florence Street, Denver, Colorado 80238.

6        3.      Plaintiff is informed and believes and upon such information and belief alleges

7    that Defendant QUALMARK LING CORPORATION is a Colorado corporation, currently

8    organized and existing under and by virtue of the laws of the State of Colorado with its principal

9    place of business located at 4580 Florence Street, Denver, Colorado 80238.  On information and

10   belief, Defendant Qualmark Ling Corporation is a wholly-owned subsidiary of Defendant

11   Qualmark Corporation that was formed to facilitate the transfer of SatCon's Ling assets to

12   Qualmark.

13       4.      Plaintiff is informed and believes and thereon alleges that Qualmark Ling is an

14   agent and an alter ego of Defendant Qualmark Corporation and, in doing the things herein

15   alleged, was acting within the scope of such agency and with the permission and consent of

16   Defendant Qualmark Corporation.  Upon information and belief, there exists and existed at all

17   relevant times herein a commonality of decision making between Qualmark and its subsidiary

18   Qualmark Ling such that Qualmark exercised complete domination and control of Qualmark

19   Ling and the companies were operated in all essential aspects as one corporation and enterprise.

20       5.      The true names or capacities, whether individual, corporate, associate or

21   otherwise, of Defendants named herein as DOE 1 through DOE 30 inclusive, are unknown to

22   Plaintiff who therefore sues said Defendants by such fictitious names and Plaintiff will amend

23   this complaint to show their true names and capacities when the same have been ascertained.

24                        **VENUE**

25       6.      At the time of the commencement of this action, Plaintiff Data Physics is a resident

26   of the City of San Jose, County of Santa Clara, State of California.  The injuries alleged herein have

27

28

2

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

1  occurred in this jurisdiction.

2  **GENERAL ALLEGATIONS**

3      7.      Since approximately 1984, Plaintiff Data Physics has been in the business of

4  producing and supplying analyzers and controllers for use in testing the quality, reliability, and

5  durability of equipment.  Information concerning specific products offered by Data Physics can

6  be found on its website located at www.dataphysics.com.

7      8.      On information and belief, Defendant Qualmark Corporation was founded in 1991

8  as a specialty manufacturer of equipment used to test the reliability, quality, dependability and

9  longevity of devices built by others.  Information concerning specific products offered by

10 Qualmark can be found on its website located at www.qualmark.com.

11     9.      This dispute is centered around the use of the name "Ling" and "Ling Electronics"

12 in connection with the sale of shakers and related vibration testing equipment.  The name "Ling"

13 has an extensive and varied history in the industry.

14     10.     Upon information and belief, entrepreneur James Ling founded an electronic

15 contracting business in Dallas, Texas in 1947.  That business operated under the name Ling

16 Electronic Company.

17     11.     Upon information and belief, Ling Electronic Company purchased United

18 Electronics of Newark, New Jersey and Caledyne Company of Winchester, Massachusetts in

19 about 1958.  Upon information and belief, these three companies were subsequently merged to

20 form Ling Electronics.  Upon information and belief, Ling Electronics designed and

21 manufactured vibration test equipment, known in the industry as electrodynamic shakers, which

22 were sold to companies throughout the United States and the world.

23     12.     Upon information and belief, Ling Electronics merged with Altec, a leading

24 acoustic company, in 1959.  The new company was registered in Delaware and operated under

25 the name Ling-Altec.  Upon information and belief, that company continued to sell

26 electrodynamic shakers and developed, manufactured and sold other related equipment all under

27

28

3

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

1    the name Ling and through a division known as Ling Electronics.

2        13.      Upon information and belief, Ling-Altec merged with Temco and Vought

3 (defense contractors) in about 1960, creating a new company named LTV Ling Altec.

4 Apparently, the new company moved to Anaheim, California and continued to manufacture and

5 sell existing products, as well as introduced a variety of new products to industry. Upon

6 information and belief, that company continued to sell electrodynamic shakers and related test

7 equipment throughout the United States and the world under the name Ling.

8        14.      Upon information and belief, LTV Ling Altec began selling corporate assets in

9 1972. The Ling Electronics assets were then, upon information and belief, assigned to a newly

10 formed company known as Altec Corporation. Altec Corporation operated for more than a

11 decade, but in 1983 filed for Chapter 11 bankruptcy. Upon information and belief, Altec

12 Corporation then sold its Ling Electronics division and related assets to Mechanical Technology,

13 Inc. ("MTI").

14        15.      Upon information and belief, MTI operated the Ling Electronics division out of

15 Anaheim, California, selling electrodynamic shakers and related test equipment to entities

16 located throughout the United States and the world. MTI sold its Ling Electronics operating unit

17 to SatCon Technology Corporation in 1999.

18        16.      On information and belief, SatCon gained its shaker manufacturing capabilities as

19 a result of its 1999 purchase of MTI's Ling division. On information and belief, SatCon

20 continued to operate MTI's Anaheim, California facility from approximately 1999 to 2002, when

21 the facility was moved to Worcester, Massachusetts.

22        17.      On information and belief, only a handful of employees made the move from

23 Anaheim to Worcester. Furthermore, on information and belief, in the process of transferring its

24 facilities SatCon lost critical suppliers, failing to pay some, and settled some accounts by

25 providing suppliers with equipment used to manufacture shakers. Consequently, the quality and

26 know-how associated with the previous Ling operation was seriously degraded under SatCon's

27

28

—————————————————————————————

4

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

1    control.  On information and belief, SatCon realized it needed qualified partner to increase its

2    distribution and market presence.

3         18.    In 2003, Data Physics began to discuss a strategic alliance with SatCon for the

4    exclusive sale and distribution of SatCon's shakers, amplifiers, and acoustic transducers.  This

5    deal enabled Data Physics to expand its business to include "turn key" vibration testing systems

6    in addition to instruments for control and analysis.  Beginning in approximately October 2003,

7    Data Physics was the exclusive distributor of SatCon's Ling shaker equipment, which Data

8    Physics integrated into complete vibration testing and analysis systems.  The previous Ling

9    Electronics corporation having been dissolved in 1982, Data Physics incorporated "Ling

10   Electronics" in California as a subsidiary in September 2003.

11        19.    Unfortunately, SatCon increasingly failed supply products of adequate quality in a

12   timely manner to Data Physics and the relationship suffered.  Among other things, the shakers

13   delivered by SatCon's Ling unit failed acceptance testing, a battery of tests performed on the

14   shakers to ensure they meet required quality standards.  Additionally, on at least one occasion,

15   SatCon falsified quality test results.  Because SatCon's shakers were below quality standards and

16   often delivered late, the products could not be integrated with Data Physics' high end products

17   for customers.  Data Physics and SatCon attempted to work through these problems and

18   eventually settled a litigation that arose out of difficulties encountered during their relationship.

19        20.    Upon information and belief, SatCon sold its Ling unit to Qualmark Corporation

20   or Qualmark Ling Corporation in December 2005.  Upon information and belief, Qualmark

21   informed one or more customers of Data Physics that it would not honor any contracts between

22   the former Ling unit and Data Physics.

23        21.    In February 2005, Data Physics acquired Gearing and Watson, a shaker

24   manufacturing company in the United Kingdom specializing in air-cooled shakers and was

25   seeking to setup another facility to manufacture water-cooled shakers for its integrated systems.

26   Many of the former employees from MTI's Ling operation and SatCon's prior Anaheim operation

27

28   _____

                                    5

COMPLAINT
DATA PHYSICS  v. QUALMARK, et al.

1    were working at Derritron, a recently formed company in Riverside, California, that built, among

2    other things, Ling-compatible shakers, amplifiers, and shaker spares. Around August 2005, Data

3    Physics entered into discussions with Derritron for a possible acquisition of its assets, and in

4    January 2006 Data Physics purchased the majority of its assets for building shakers. While

5    Derritron continued to make amplifiers, employees of Derritron who were engaged in shaker

6    manufacturing moved to Data Physics. These employees had and continue to have unique and in

7    depth knowledge and experience manufacturing Ling shakers.

8        22.    Upon information and belief, "Ling" is a widely used name in the electrodynamic

9    shaker industry and has been in use in one form or another in association with the sale of

10   electrodynamic shakers and related parts and accessories for approximately 50 years. This long

11   course of sales has resulted in an install base of thousands of "Ling" shakers in the United States

12   and abroad. On information and belief, various entities and business units have operated under

13   the name "Ling" and have sold "Ling" shaker systems and/or components, including Ling

14   Dynamic Systems, Derritron, Dodson, ACG, and Dongling (Eastern Ling) in China.

15   Additionally, individuals in the vibration testing field, including employees of Qualmark or its

16   Qualmark ACG subsidiary, have and continue to use the term "Ling" in a generic sense for

17   electrodynamic shakers. On information and belief, no entity had ever obtained a trademark

18   registration in the term "Ling" (or variations thereof) in connection with vibration testing

19   equipment until Defendant Qualmark filed for the "Ling Electronics" mark in California in 2006.

20       23.    Data Physics and Qualmark are competitors in the filed of vibration testing

21   equipment, often bidding on the same contracts. Recently Data Physics has had business

22   relationships and contracts disrupted by, among other things, statements from Qualmark and

23   Qualmark Ling and their agents and employees to the effect that Data Physics does not

24   manufacture genuine Ling shakers and has no right to use the Ling or Ling Electronics name in

25   connection with the sale of shakers. As a direct consequence of these false statements, Data

26   Physics has experienced difficulties and disruptions with its contracts and business relationships

27

28

6

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

1  with actual and potential customers.

2  **FIRST CAUSE OF ACTION**

3  **(Cancellation of California Trademark)**

4      24.    Plaintiff realleges and incorporates by reference all the allegations contained in

5  paragraphs 1 through paragraph 23 inclusive.

6      25.    On or about September 23, 2003, Data Physics registered LING ELECTRONICS

7  CORPORATION with the California Secretary of State.

8      26.    On or about March 28, 2006, Defendant Qualmark Corporation obtained a

9  California Trademark for the mark LING ELECTRONICS with the knowledge that Data Physics

10  was using the business trade name LING ELECTRONICS for the production of the same or

11  similar goods Defendants sought the California trademark to cover.

12      27.    California law governing the prosecution of California trademarks is found in

13  Business and Professions Code sections 14200 et seq. Pursuant to California Trademark Law,

14  the Secretary of State must cancel any registration on a finding by a court of competent

15  jurisdiction that the registered mark has been abandoned, that the registrant is not the owner of

16  the mark, that the registration was granted improperly, or that the registration was obtained

17  fraudulently.

18      28.    On information and belief, the mark LING ELECTRONICS could not be validly

19  registered as a mark due to significant third-party use and the fact that the term "Ling" had come

20  to generically signify Ling-compatible shakers and shaker parts, and because Defendants and

21  their predecessors failed to adequately police such third-party use of the term "Ling" and to

22  prevent the mark from obtaining a generic signification. Additionally, as shown in the General

23  Allegations, the term "Ling" is primarily merely a surname and thus not properly registerable as a

24  trademark. Thus, Defendants' LING ELECTRONICS trademark is invalid and without force and

25  effect.

26      29.    Business and Professions Code Section 14220(f) further prohibits registration of a

27

28

7

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

1  trademark if the trademark conflicts with a previously used trade name. Additionally, a party that

2  has filed articles of incorporation or obtained a certificate of qualification to do business in

3  California obtains a rebuttable presumption that it has an exclusive right to use its trade name, as

4  well as any confusingly similar name. Because Data Physics had already registered the LING

5  ELECTRONICS trade name with the California Secretary of State, Defendants' LING

6  ELECTRONICS trademark is invalid and without force and effect.

7      30.    Moreover, Defendants are barred from asserting the LING ELECTRONICS mark

8  against Data Physics because no service mark or trademark registered pursuant to the California

9  Trademark Law is enforceable under the provisions of Business & Professions Code §§ 14320,

10  14330, or 14340, against any party who has adopted and lawfully used the same or a confusingly

11  similar service mark in the rendition of like services or trademarks in the manufacture or sale of

12  like goods in the state of California from a date prior to the effective date of registration of the

13  service mark or trademark. Because Data Physics had lawfully used the mark LING

14  ELECTRONICS in connection with the sale of shaker products, parts, and accessories prior to

15  Qualmark's registration of the mark, Data Physics cannot be adjudged to infringe the mark.

16  Thus, the California trademark was wrongfully obtained and should be cancelled.

17                     **SECOND CAUSE OF ACTION**

18                  **(Unfair Competition under § 17200)**

19      31.    Plaintiff realleges and incorporates by reference all the allegations contained in

20  paragraphs 1 through paragraph 30 inclusive.

21      32.    Defendants intentionally made false and disparaging statements regarding the

22  quality of Plaintiff Data Physics' products and the right of Data Physics to use the term "Ling" in

23  connection with the sale of shaker products to entities doing business with Data Physics, in

24  violation of Business and Professions Code Section 17200 et seq.

25      33.    Defendants' statements were false and unjustified and, as a result of such

26  statements, Data Physics was harmed via the disruption of various contracts, due to concerns that

27

28

8

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

1    Data Physics was infringing various intellectual property rights purportedly held by Defendants

2    and that Data Physics was not authorized to sell such products.

3        34.    Data Physics is entitled to relief, including full restitution and/or disgorgement of

4    all revenues, earnings, profits, compensation, and benefits which may have been obtained by

5    Defendants as a result of such unfair business acts or practices.

6        35.    Data Physics is informed and believes, and based thereon alleges, that

7    Defendants' unfair acts as described above are a serious and continuing threat to Data Physics

8    and the public.  If Defendants are allowed to continue their wrongful acts, Data Physics and the

9    public will suffer further immediate and irreparable injury, loss, and damage.  Unless restrained

10   by this court, Defendants will continue to engage in improper disparagement of Data Physics

11   rights to use the term "Ling" in connection with its sale of shaker products, as alleged above, in

12   violation of Section 17200 of the Business and Professions Code, and Data Physics and members

13   of the general public will have no adequate remedy at law to rectify such disparagement.

14                              **THIRD CAUSE OF ACTION**

15                          **(Unfair Competition under Lanham Act)**

16       36.    Plaintiff realleges and incorporates by reference all the allegations contained in

17   paragraphs 1 through paragraph 35 inclusive.

18       37.    Defendants intentionally made false and disparaging statements regarding the

19   quality of Plaintiff Data Physics' products and the right of Data Physics to use the term "Ling" in

20   connection with the sale of shaker products to entities doing business with Data Physics, in

21   violation of 15 U.S.C. § 1125.

22       38.    Defendants' statements were false and unjustified and, as a result of such

23   statements, Data Physics was harmed via the disruption of various contracts, due to concerns that

24   Data Physics was infringing various intellectual property rights purportedly held by Defendants

25   and that Data Physics was not authorized to sell such products.

26       39.    Data Physics is entitled to relief, including full restitution and/or disgorgement of

27

28

---

9

COMPLAINT
DATA PHYSICS  v. QUALMARK, et al.

1   all revenues, earnings, profits, compensation, and benefits which may have been obtained by

2   Defendants as a result of such unfair business acts or practices.

3        40.     Data Physics is informed and believes, and based thereon alleges, that

4   Defendants' unfair acts as described above are a serious and continuing threat to Data Physics

5   and the public.  If Defendants are allowed to continue their wrongful acts, Data Physics and the

6   public will suffer further immediate and irreparable injury, loss, and damage.  Unless restrained

7   by this court, Defendants will continue to engage in improper disparagement of Data Physics

8   rights to use the term "Ling" in connection with its sale of shaker products, as alleged above, in

9   violation of 15 U.S.C. § 1125, and Data Physics and members of the general public will have no

10   adequate remedy at law to rectify such disparagement.

11                  **FOURTH CAUSE OF ACTION**

12         **(Intentional Interference With Prospective Economic Relations)**

13        41.     Plaintiff realleges and incorporates by reference all the allegations contained in

14   paragraphs 1 through paragraph 40 inclusive.

15        42.     Plaintiff has had a long standing and ongoing economic relationship with its

16   customers with the strong probability of future economic benefit.  Qualmark knew of the

17   relationship between Data Physics and its customers and intentionally committed wrongful acts

18   designed to disrupt the relationship.  Specifically, Qualmark made misleading statements,

19   misrepresentations, and false statements to customers of Data Physics.

20        43.     As a consequence of Defendants' wrongful actions, the relationship between Data

21   Physics and its customers was disrupted and actual and ongoing damages have been suffered by

22   Data Physics.  Defendants wrongful conduct was a substantial factor causing harm to Data

23   Physics.

24                   **FIFTH CAUSE OF ACTION**

25         **(Negligent Interference With Prospective Economic Relations)**

26        44.     Plaintiff realleges and incorporates by reference all the allegations contained in

27

28

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

1 | paragraphs 1 through paragraph 43 inclusive.

2 |      45.    Defendant Qualmark negligently interfered with a relationship between Data

3 | Physics and its customers that probably would have resulted in an economic benefit to Data

4 | Physics.

5 |      46.    Data Physics and its customers were in an economic relationship that probably

6 | would have resulted in a future economic benefit to Data Physics.

7 |      47.    Defendant Qualmark knew or should have known of the relationship between

8 | Data Physics and its customers.

9 |      48.    Qualmark knew or should have known that this relationship would be disrupted if

10 | Qualmark failed to act with reasonable care, yet Qualmark failed to act with reasonable care.

11 |      49.    Qualmark engaged in wrongful conduct through its false and misleading

12 | statements, and misrepresentations to Data Physics customers, concerning Plaintiff Data Physics.

13 |      50.    The relationship between Data Physics and its customers was disrupted and Data

14 | Physics was harmed.  Qualmark's wrongful conduct was a substantial factor in causing Data

15 | Physics' harm.

## SIXTH CAUSE OF ACTION

### (Trade Libel)

18 |      51.    Plaintiff realleges and incorporates by reference all the allegations contained in

19 | paragraphs 1 through paragraph 46 inclusive.

20 |      52.    Defendants intentionally made false and disparaging statements regarding the

21 | quality of Plaintiff Data Physics products to entities doing business with Data Pahysics.  These

22 | untrue statements of fact caused specific pecuniary damage to Data Physics, including damaged

23 | business reputation, damaged business relationships and financial damages.

## SEVENTH CAUSE OF ACTION

### (Slander of Title)

26 |      53.    Plaintiff realleges and incorporates by reference all the allegations contained in

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

1  paragraphs 1 through paragraph 48 inclusive.

2      54.    Defendant Qualmark intentionally made false and disparaging comments, both

3  oral and written, regarding Data Physics' rights and title to the "Ling Electronics" name to parties

4  doing business with Data Physics.  These actions by Defendants caused actual pecuniary damage

5  to Data Physics.

6  PRAYER FOR JUDGMENT

7      55.    WHEREFORE Plaintiff prays for judgment as follows against all Defendants:

8      a.    That Defendants, their agents, servants, employees, and all others acting in

9      concert or participating with them be permanently enjoined from the

10      above-listed wrongful acts against Data Physics and its clients;

11      b.    For the cancellation of the wrongfully procured California Trademark

12      "LING ELECTRONICS";

13      c.    For damages, restitution and/or wrongful profits for the harm sustained by

14      Data Physics to conform to proof at trial;

15      d.    For punitive damages awarded to Data Physics as against Defendant

16      Qualmark in an amount to be determined at trial in a sum sufficient to

17      punish and make an example of Qualmark;

18      e.    For attorneys' fees and costs of suit; and

19      f.    For such other and further relief as this Court deems just and proper.

20

21  Dated: February 27, 2008        LARIVIERE, GRUBMAN & PAYNE, LLP

22

23

24  By _____

25      Robert W. Payne
    Attorney for Plaintiff
    Data Physics Corporation

26

27

28

COMPLAINT
DATA PHYSICS v. QUALMARK, et al.

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

QUALMARK CORPORATION, and
QUALMARK LING CORPORATION,
Both Colorado corporations,

       Plaintiffs,

v.

DATA PHYSICS CORPORATION, a California corporation,

       Defendant.

---

## COMPLAINT AND JURY DEMAND

---

For its Complaint against Defendant Data Physics Corporation ("DPC"), Plaintiffs

QualMark Corporation ("QC") and QualMark Ling Corporation ("QLC"), state and allege:

### I.  THE PARTIES AND DISPUTE OVERVIEW

1.    QC is a Colorado corporation having a principal place of business at 4580

Florence Street, Denver, Colorado 80238. QC was founded in 1991 as a specialty manufacturer

of equipment used to test the reliability, quality, dependability and longevity of devices built by

others. QC is now a world leader in designing, manufacturing and marketing such equipment.

Information concerning specific products offered by QC can be found on its website located at

www.qualmark.com, selected pages of which are attached as Exhibit 1 and which are

incorporated herein by reference.

2.      SatCon Power Systems, Inc., a division of SatCon Technology Corporation (NASDAQ: SATC) ("SatCon"), operated a business unit under the name LING Electronics. That business unit sold electronic shaker and related testing equipment under the name LING for several years.  QC purchased from SatCon the LING Electronics operating unit in December 2005, being assigned the LING and LING Electronics trademarks and service marks.  QC continues to sell electronic shaker and related testing equipment under LING and LING ELECTRONICS nationally and internationally. Information concerning SatCon and acquisition of its LING Electronics business unit by QC can be found on the SatCon website located at www.satcon.com, selected pages of which are attached as Exhibit 2 and which are incorporated by reference.

3.      QLC is a Colorado corporation located at 4580 Florence Street, Denver, Colorado 80238.  QLC is a wholly-owned subsidiary of QC formed to facilitate the transfer of SatCon's LING Electronics assets to QC.

4.      DPC is a California corporation having a place of business at 1741 Technology Drive, Suite 260, San Jose, California  95110.  DPC sells a variety of products, including equipment used to test the reliability, quality, dependability and longevity of devices built by others.  For several years, DPC purchased for resale electronic shaker equipment branded with the name LING and LING ELECTRONICS from SatCon.  Upon information and belief, DPC resold that equipment under a distribution agreement it had with SatCon.  Upon information and belief, DPC did not acquire any rights in and to the marks LING or LING ELECTRONICS through its relationship with SatCon.  DPC nevertheless continues to sell shaker testing and related equipment under the marks LING and LING ELECTRONICS.  Information concerning

2

these products and DPC's sales channels is available on DPC's website located at www.dataphysics.com, several relevant pages of which are attached as Exhibit 3 and incorporated herein.

## II. JURISDICTION AND VENUE

5.    The present action includes claims for a declaration of trademark ownership, federal and common law trademark infringement and other related claims. The Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201-2202, and 15 U.S.C. § 1121.

6.    DPC does business in and committed tortious acts in this judicial district and thus is subject to personal jurisdiction in this judicial district.

7.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## III. RELEVANT FACTS

8.    Upon information and belief, entrepreneur James Ling founded an electronic contracting business in Dallas, Texas in 1947. That business operated under the name Ling Electronic Company.

9.    Upon information and belief, Ling Electronic Company purchased United Electronics of Newark, New Jersey and Caledyne Company of Winchester, Massachusetts in about 1958. Upon information and belief, these three companies were subsequently merged to form LING Electronics. Upon information and belief, LING Electronics designed and manufactured vibration test equipment, known in the industry as ED shakers, which were sold to companies throughout the United States and the world.

10.     Upon information and belief, LING Electronics merged with Altec, a leading acoustic company, in 1959. The new company was registered in Delaware and operated under the name LING-Altec. Upon information and belief, that company continued to sell ED shakers and developed, manufactured and sold other related equipment all under the name LING and through a division known as LING Electronics.

11.     Upon information and belief, LING-Altec merged with Temco and Vought (defense contractors) in about 1960, creating a new company named LTV LING Altec. Apparently, the new company moved to Anaheim, California and continued to manufacture and sell existing products, as well as introduced a variety of new products to industry. Upon information and belief, that company continued to sell ED shakers and related test equipment throughout the United States and the world under the trademark LING through its LING Electronics operating division.

12.     Upon information and belief, LTV LING Altec began selling corporate assets in 1972. The LING Electronics assets were then, upon information and belief, specifically assigned to a newly formed company known as Altec Corporation. Altec Corporation did well for more than a decade, but in 1983, filed for Chapter 11 bankruptcy. Upon information and belief, Altec Corporation then sold its LING Electronics division and related assets to Mechanical Technology, Inc. ("MTI").

13.     Upon information and belief, MTI continued to operate the LING Electronics division, selling ED shakers and related test equipment to entities located throughout the United States and the world under the trademark LING. MTI sold its LING Electronics operating unit, specifically including its LING trademarks, to SatCon in 1999.

4

14.    Upon information and belief, SatCon continued operating the LING Electronics division, selling ED shakers and related test equipment under the LING trademark for several years.

15.    DPC filed with the California Secretary of State an application to incorporate "Ling Electronics Corporation" as a wholly-owned subsidiary on September 23, 2003.

16.    Upon information and belief, SatCon entered into a world sales agent and distribution agreement with DPC in October 2003.  Upon information and belief, under that agreement SatCon manufactured ED shakers and related testing equipment, providing that equipment to DPC for resale.  The agency/distribution agreement between SatCon and DPC ended in October 2005.

17.    On December 13, 2005, QLC entered an Asset Purchase Agreement with SatCon. Pursuant to that Agreement, QLC purchased SatCon's LING Electronics operating unit, specifically including the trademarks LING and LING ELECTRONICS and related logos. Shortly thereafter, QC began selling ED shakers and related test equipment under the marks LING and LING ELECTRONICS and with the approval of QLC.  QC has continued to sell such products under these marks ever since.

18.    QC filed for and was granted a California trademark registration for the mark LING ELECTRONICS to be used on or in connection with ED shakers and amplifiers for testing electronics and electromechanical devices.  The Registration was issued in March of 2006 and remains valid and enforceable until March 2016.  A copy of that Registration is attached as Exhibit 4 and is incorporated by reference.

19.    QLC filed an application to register LING for electrical and scientific apparatus, namely, a vibration table and control apparatus for use in testing industrial, electronic and electromechanical components and part, ED shakers and amplifiers, vibration and environmental test equipment and components and parts therefor with the United States Patent and Trademark Office ("USPTO") on March 14, 2006. A copy of that application is attached as Exhibit 5 and is incorporated by reference.   The application was subsequently allowed by the USPTO and published for opposition.  DPC filed several Notices for Extension of Time to Oppose.  Copies of these Notices are attached as Exhibit 6 and are incorporated by reference.

20.    Counsel for Plaintiffs subsequently contacted counsel for DPC by letter dated August 29, 2007, a copy of which is attached as Exhibit 7 and which is incorporated by reference.  In that letter, Plaintiffs relevantly stated:

> QualMark and its predecessors-in-interest have claimed the trademarks LING and LING ELECTRONICS, in addition to stylized versions of these marks, (collectively, the "LING trademarks"), and used them in conjunction with the sale of their shaker products since the 1940s.  QualMark has a California registration on the mark LING ELECTRONICS . . . and, as you know, has applied for federal registration of the mark LING. . . . Data Physics' use of these marks, as well as its use of a stylized version of the LING ELECTRONICS mark, also belonging to QualMark, constitutes federal and state trademark infringement under the Lanham Act . . . and under the California Business and Professional Code §§ 14320, *et seq.*
>
> . . . .
>
> As you know, Data Physics formerly distributed LING shakers manufactured by SatCon . . . , QualMark's predecessor-in-interest.  It would appear that when that relationship dissolved, Data Physics continued to use the LING trademarks with shakers of other origins.  These actions deceived customers and took unfair advantage of the previous relationship with SatCon.  It would be hard to conceive of a more nefarious form of trademark infringement.
>
> . . . .
>
> In view of the foregoing, we demand that Data Physics immediately take the following actions:

6

1.  Publish a retraction in every online or print publication in which Data Physics has used any of the LING trademarks (including but not limited to Data Physics' home page), properly attributing trademark ownership to QualMark.

2.  Notify all customers and potential customers with whom Data Physics has used any of the LING trademarks that such trademarks are owned by QualMark, and that Data Physics does not manufacture or sell LING products.

3.  Refrain from any further representation stating or implying that any LING trademark is owned or may be used by Data Physics Corporation or any person other than QualMark.

4.  Identify and return to QualMark all intellectual property of SatCon and QualMark (including all copies thereof) in the possession of Data Physics, or in the possession of third parties as a result of actions by Data Physics.

5.  Cease the marketing and sale of any products incorporating any intellectual property of SatCon or QualMark.

21.    By letter dated September 9, 2007, a copy of which is attached as Exhibit 8 and which is incorporated by reference, counsel for DPC responded.  There, counsel requested specific information concerning Plaintiffs' ownership of the LING and LING ELECTRONICS trademarks and suggested that DPC had the right to use LING on and in connection with ED shakers and related test equipment based upon its filing of Articles of Incorporation for LING Electronics Incorporated.

22.    Plaintiffs responded by letter of October 12, 2007, providing requested information and rebutting positions asserted by DPC.  A copy of that letter is attached as Exhibit 9 and is incorporated by reference.  Apparently, DPC did not accept Plaintiffs' position, choosing to file a Notice of Opposition with the Trademark Trial and Appeal Board ("TTAB") of the USPTO, seeking to preclude issuance of QLC's federal trademark application for LING.

23.    In its Notice, DPC claimed that it would be damaged by registration of LING on the following grounds:

> Data Physics, since 2003, has owned a subsidiary California corporation named LING Electronics Corporation, [which allegedly] sells and provides services for various different types of vibration testing equipment including shakers [under the name LING].

> . . . .

> The term "ling" as applied to shakers or to services for shakers is primarily merely the surname of the founder, i.e., James J. (Jimmy) Ling, of at least one of QualMark's predecessor(s) in interest LING Electronics Company and/or LING Electronics, Inc., and consequently 15 U.S.C. § 1052(e)(4) bars Applicant QualMark's registration of the surname "ling" as a trademark for shakers or service mark for shaker services.

> . . . .

> The mark sought to be registered, LING, has lost its significance as an indication of source for the sales of shakers and/or as an indication of source for providing services for shakers due to Applicant QualMark's predecessor(s) in interest failing for many years in the past to:

> (a) exercise exclusive rights in the term "ling" standing alone, when applied to shakers and/or services for shakers; and

> (b) control the quality of:

> (i) shakers being sold by others under trade name(s) which include the term "Ling"; and/or

> (ii) shaker repair, maintenance and/or installation services being provided by others under trade name(s) which include the term "Ling"; and/or

> (c) on information and belief, oppose use of the term "Ling" in connection with:

> (i) the sale of shakers by competitor(s) of Applicant's predecessor(s) in interest; and/or

> (ii) providing shaker repair, maintenance and/or installation services by competitor(s) of Applicant's predecessor(s) in interest; and

therefore, pursuant to 15 U.S.C. § 1127, upon information and belief, Applicant QualMark's predecessor(s) in interest have abandoned exclusive rights in the term, Ling, for the sales of shakers and/or for providing services for shakers.

A copy of the Notice of Opposition is attached as Exhibit 10 and is incorporated by reference.

24.    Through years of uninterrupted use of the marks LING and LING ELECTRONICS on or in connection with ED shakers and related testing equipment, Plaintiffs' predecessors-in-interest developed strong common law trademark rights in and to those marks. Indeed, the marks have acquired strong secondary meaning as to source and affiliation for ED shaker and related testing equipment.    Further, upon information and belief, Plaintiffs' predecessors-in-interest did practice adequate quality control of products and did police products and services offered under the name LING to maintain protectable rights in and to the mark. Plaintiffs thus own protectable trademark and service mark rights in and to LING and LING ELECTRONICS for use on or in connection with ED shakers and amplifiers, vibration and environmental testing equipment, components and parts therefor and services to be provided to others relating to such equipment.

25.    DPC has and continues to use the LING and LING ELECTRONICS trademarks without authorization from Plaintiffs and with knowledge of Plaintiffs' preexisting rights in and to those marks.    Upon information and belief, DPC purposely chose to identify itself with Plaintiffs by use of their trademarks to more easily reach Plaintiffs' established customers, to penetrate their market and to otherwise free ride on Plaintiffs' business values and goodwill. DPC's misappropriation and use of Plaintiffs' goodwill and reputation, by unauthorized use of Plaintiffs' trademarks, trade names, etc., was simply to provide DPC with a proven identity and to make the sale of its ED shaker and related test equipment easier.

26.    DPC's actions are likely to and have caused actual consumer confusion or mistake and/or have deceived the public as to the source and/or quality of products and services offered under LING and LING ELECTRONICS.

27.    DPC's continued unauthorized use of Plaintiffs' trademarks, trade names, etc., will deceive the relevant purchasing public as to the source, origin or affiliation of DPC's products which are being sold under and in connection with Plaintiffs' property. DPC's actions have been motivated exclusively by financial gain, have been taken with full knowledge of Plaintiffs' superior legal rights and/or without regard to the public policy right of consumers to be free from confusion as to the source or origin of products and services. DPC's continued infringing use of Plaintiffs' property evidences a wrongful intent to trade upon Plaintiffs' goodwill and reputation.

28.    DPC has been put on notice of its infringing and improper use of Plaintiffs' property as early as August 2007. Despite actual notice, DPC has continued to willfully infringe and impinge upon Plaintiffs' superior rights.

### IV.  FIRST CLAIM FOR RELIEF
### (Declaration of Trademark Ownership)

29.    Plaintiffs incorporate and reallege paragraphs 1-28 as though fully set forth herein.

30.    DPC disputes Plaintiffs' ownership of the LING and LING ELECTRONICS trademarks.

31.    Plaintiffs request that the Court resolve that trademark ownership dispute by declaring that Plaintiffs are the true and correct owners of the LING and LING ELETRONICS trademarks.

10

## V. <u>SECOND CLAIM FOR RELIEF</u>
### (Federal Trademark Infringement)

32.    Plaintiffs incorporate and reallege paragraphs 1-31 as though fully set forth herein.

33.    DPC promoted and sold and continues to promote and sell in interstate commerce ED shaker and related testing equipment under Plaintiffs' LING and LING ELECTRONICS trademarks. In so doing, DPC has falsely described and misrepresented its goods to the consuming public.

34.    DPC's actions have created a likelihood of consumer confusion as to the affiliation, connection or association of themselves with Plaintiffs and as to the origin, sponsorship or approval of DPC's goods with or by Plaintiffs.

35.    DPC's unauthorized use of Plaintiffs' LING and LING ELECTRONICS trademarks in connection with the marketing and sale of competing ED shakers and related equipment is a violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

36.    DPC adopted and continues to use Plaintiffs' LING and LING ELECTRONICS trademark with full knowledge of Plaintiffs' superior rights, but without their authorization. DPC's tortious acts constitute willful and deliberate trademark infringement under 15 U.S.C. § 1114 and are in willful and wanton disregard of Plaintiffs' established and superior rights.

37.    As a result of DPC's unlawful actions, Plaintiffs have suffered commercial harm.

38.    Plaintiffs have also been, and continue to be, harmed irreparably by DPC's unlawful actions and Plaintiffs have no adequate remedy at law.

## VI. <u>THIRD CLAIM FOR RELIEF</u>
### (Common Law Trademark Infringement)

11

39.    Plaintiffs incorporate and reallege paragraphs 1-38 as though fully set forth herein.

40.    DPC's actions as described above have caused and are likely to cause confusion with Plaintiffs' established and superior trademark rights in and to LING and LING ELECTRONICS and otherwise unfairly compete with Plaintiffs.  As such, DPC's actions constitute unfair competition and trademark infringement under Colorado common law.

41.    DPC's unlawful actions were committed with willful and wanton disregard for Plaintiffs' superior rights.

42.    As a result of DPC's unlawful actions, Plaintiffs have suffered commercial harm.

43.    Plaintiffs have also been, and continue to be, harmed irreparably by DPC's unlawful actions and Plaintiffs have no adequate remedy at law.

## VII.    FOURTH CLAIM FOR RELIEF
### (Violation of the CCPA)

44.    Plaintiffs incorporate and reallege paragraphs 1-43 as though fully set forth herein.

45.    By its actions described above, DPC has engaged in deceptive trade practices, as defined by the Colorado Consumer Protection Act ("CCPA"), C.R.S. §§ 6-1-105.

46.    DPC's wrongful actions were committed with willful and wanton disregard of the laws of the state of Colorado and Plaintiffs' superior rights.

47.    As a result of DPC's unlawful actions, Plaintiffs have suffered commercial harm.

48.    Plaintiffs have been and will continue to be harmed irreparably by DPC's unlawful actions and Plaintiffs have no adequate remedy at law.

12

## VIII.   FIFTH CLAIM FOR RELIEF
### (Misappropriation of Business Values)

49.     Plaintiffs incorporate and reallege paragraphs 1-48 as though fully set forth herein.

50.     Plaintiffs have, through the expenditure of time, effort and money, acquired substantial business values in and to LING and LING ELECTRONICS.  These names are thus protectable business values of Plaintiffs.

51.     DPC has taken, without compensation to Plaintiffs, one or more of their protectable business values.

52.     As a result of DPC's unlawful actions, Plaintiffs have suffered commercial harm.

53.     DPC's wrongful actions were committed with willful and wanton disregard of the laws of the State of Colorado.

## IX. SIXTH CLAIM FOR RELIEF
### (Unjust Enrichment)

54.     Plaintiffs incorporate and reallege paragraphs 1-53 as though fully set forth herein.

55.     DPC has received benefits at Plaintiffs' expense by marketing ED shaker and related testing equipment under the names LING and LING ELECTRONICS.

56.     Plaintiffs have suffered damages as a result of DPC's conduct and are entitled to, *inter alia*, actual economic damages and other consequential damages and interest for DPC's unjust enrichment, all in amounts to be proven at trial.

57.     It would be inequitable for DPC to retain the benefits conferred by Plaintiffs to DPC without payment.

## X.  SEVENTH CLAIM FOR RELIEF
### (Infringement of California Trademark Registration)

58.     Plaintiffs incorporate and reallege paragraphs 1-57 as though fully set forth herein.

59.     QC owns a valid California trademark registration for the mark LING ELECTRONICS.

60.     DPC has willfully infringed upon QC's California trademark registration by unauthorized use of the mark LING ELECTRONICS and thus causing marketplace confusion.

61.     As a result of DPC's unlawful actions, QC has suffered commercial harm.

62.     DPC's wrongful actions were committed with willful and wanton disregard of the laws of the State of California or the preexisting rights of QC.

63.     QC has been and will continue to be harmed irreparably by DPC's unlawful actions and has no adequate remedy at law.

## XI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment in its favor and against DPC as follows:

A.     That the Court declare Plaintiffs to be the true, proper and only owners of protectable trademark and service mark rights in and to the marks LING and LING ELECTRONICS for use on or in connection with ED shaker and related testing equipment, parts therefore and services related thereto;

B.     That DPC, its agents, servants, officers, directors, employees, attorneys, privies, representatives, successors, assigns and parent and subsidiary corporations or other related entities, and any and all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

14

(1)    any further use of Plaintiffs' LING and LING ELECTRONICS trademarks or any other mark which is confusingly similar thereto in connection with the advertising or sale of electronic shaker testing and related equipment;

(2)    directly or indirectly using Plaintiffs' LING and LING ELECTRONICS trademarks or any confusingly similar mark or material, either alone or in combination with other marks, symbols or trade dress;

(3)    any further use of Plaintiffs' LING and LING ELECTRONICS trademarks or any element thereof, in connection with the marketing or sale of electronic shaker testing and related equipment;

(4)    performing any action or using any name, mark, symbol, imagery or slogan which is likely to cause confusion or mistake, or to deceive or otherwise mislead the trade and/or the public into believing that Plaintiffs and DPC are one and the same, or in some way connected, or that Plaintiffs are the sponsor of DPC, or that DPC is in some manner affiliated or associated with, or under the supervision or control of, Plaintiffs, or that DPC's services originate with Plaintiffs, or are connected or offered with the approval, consent, authorization, or under the supervision of Plaintiffs;

(5)    manufacturing, marketing or selling any product or material containing or utilizing Plaintiffs' intellectual property and/or business values; or

(6)    any other conduct constituting unfair competition with or misappropriation of Plaintiffs' property or values;

C.    That DPC be ordered to deliver up to Plaintiffs for destruction, or certify destruction of, all products that contain Plaintiffs' LING and LING ELECTRONICS trademarks

15

used in connection with the manufacture, marketing or sale of electronic shaker testing and related equipment;

D.    That DPC be ordered to file with the Court and serve on Plaintiffs, within thirty (30) days after the entry of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which DPC have complied with any ordered injunction;

E.    That DPC pay Plaintiffs a sum sufficient to cover the cost of corrective advertising necessary to alleviate any existing confusion resulting from DPC's unauthorized use of Plaintiffs' LING and LING ELECTRONICS trademarks;

F.    That Plaintiffs be awarded damages in an amount to be determined at trial;

G.    That the Court declare Plaintiffs to be the sole and exclusive owners of the LING and LING ELECTRONICS trademarks;

H.    That Plaintiffs be awarded treble actual damages and attorneys' fees;

I.    That Plaintiffs be awarded pre-judgment and post-judgment interest;

J.    That Plaintiffs be awarded costs and expenses incurred in prosecuting this action, including expert witness fees and attorney's fees; and

K.    That such other and further preliminary and permanent relief be awarded to Plaintiffs as the Court deems appropriate.

## XII.    <u>DEMAND FOR JURY</u>

Plaintiffs requests a jury on all issues so triable.

Respectfully submitted,

Dated: December 21, 2007

By: s/ Robert R. Brunelli
    Robert R. Brunelli
       rbrunelli@sheridanross.com
    Sabrina C. Stavish
       sstavish@sheridanross.com
    Paul S. Cha
       pcha@sheridanross.com
    SHERIDAN ROSS P.C.
    1560 Broadway, Suite 1200
    Denver, Colorado  80202-5141
    Telephone:   303-863-9700
    Facsimile:   303-863-0223
    E-mail:      litigation@sheridanross.com

ATTORNEYS FOR PLAINTIFFS
QUALMARK CORPORATION and QUALMARK
LING CORPORATION